OFFENDER NAME:  HALL, JOHN
TOMIS ID:  00238941
INSTITUTION NAME:  RIVERBEND MAXIMUM SECURITY INSTITUTION
UNIT ID:  2D1
CELL ID:  03

INCIDENT
※ INCIDENT ID:  01052914
      INCIDENT DATE:  10/22/2013              INCIDENT TIME:  16:11:00
      INCIDENT TYPE:  ASSAULT-STAFF-MINOR INJURY
      DISCIPLINARY CLASS:
      INFRACTION TYPE:  ASSAULT ON STAFF
      WEAPON USED:  CLOSED FIST
      VIOLENCE COMMITTED:  PHYSICAL, NO WEAPONS
      PREPARED BY STAFF ID:  GIBBSP01
      REPORTED BY STAFF ID:  GIBBSP01

WITNESSES/VICTIMS/PERSONS INVOLVED
    PERSON ID:  GIBBSP01
      PERSON TYPE:  S
      INJURED (Y/N):  Y
    PERSON ID:  00238941
      PERSON TYPE:  O
      INJURED (Y/N):  Y

OTHER PERSONS INVOLVED:
      OFFICER BRIGHT

Note: Dispostion Not Guilty ID # 01052914
Other: Pisposition Guilty ID # 1052852
       Ed @ Lawsuit page 22, § 59.

※ Blackmon v. Wilson 709 SW2d @ 602
(TN App. 1986) (Statement of Fact supporting claims
must be true.)

※ Lawsuit: Page 20, § 53-59
Note: Never convicted of write-up
On Assault of C/o Bright

TOMIS ID:  00238941        INCIDENT ID:  01052914
OFFENDER NAME:  HALL, JOHN

DESCRIPTION:
    ON 10/22/2013 AT APPROXIMATELY 1611, OFFICER BRIGHT CAME TO ASSIST
    CPL. GIBBS, WHO WAS PHYSICALLY STRUGGLING WITH INMATE HALL #238941
    WHICH IS HOUSED IN UNIT 2 D 103.  DURING THE PHYSICAL ALTERCATION,
    INMATE HALL STRUCK OFFICER BRIGHT IN THE FACE WITH A CLOSED FIST.
    THEREFORE I/M HALL IS BEING CHARGED WITH ASSAULT ON STAFF. REVIEWED BY
    LT. CASTILE

    PREPARED BY STAFF ID:  GIBBSP01  GIBBS, SPENCER
    REPORTED BY STAFF ID:  GIBBSP01  GIBBS, SPENCER

I HAVE BEEN GIVEN A COPY OF THIS REPORT AND HAVE BEEN TOLD ABOUT MY LIMITED
RIGHT TO REMAIN SILENT AND TO BE REPRESENTED BY AN OFFENDER ADVISOR.


_____          _____
OFFENDER SIGNATURE                        DATE/TIME
HALL, JOHN                                         00238941

OFFENDER WAS GIVEN COPY OF REPORT AND ADVISED OF RIGHTS BUT REFUSED TO
SIGN REPORT.

_____          _____
EMPLOYEE INITIALS, IF REPORTING           DATE/TIME
EMPLOYEE; OTHERWISE, FULL NAME.

TOMIS ID:  00238941        INCIDENT ID:  01052914
OFFENDER NAME:  HALL, JOHN

*GIBBSP01*
_____              _____
REPORTING OFFICIAL                      10·22·13 / 1911
                                        DATE/TIME

*GIBBSP01*
_____              _____
PREPARED BY                             10·22·13 / 1911
                                        DATE/TIME

_____              _____
REVIEWING DESIGNATED SUPERVISOR         10-22-13 / 1911
                                        DATE/TIME

IF PLACED IN SEGREGATION:


_____              _____
SENIOR SECURITY OFFICER                 DATE/TIME


_____              _____
WARDEN (SEGREGATION PENDING INVESTIGATION)  DATE/TIME

# MEMORANDUM OF LAW

## I. STATEMENT OF FACTS: RE VENUE CHANGE (MATERIAL RES GESTAE EVIDENCE).

THE RECORDS SHOW THAT HALL DID NOT PERSONALLY AGREE TO A CHANGE OF VENUE TO MADISON COUNTY. THE STATE'S FRAUDULENT CONDUCT TWISTING THE FACTS AND MISAPPLYING TN.R.CRIM.P. RULE 21, AS OCCURRED IN THIS CASE, MADE THE COURT ERR BY USING EVIDENCE OUTSIDE THE TRIAL RECORD TO NEGLECT THE LAW. THE PETITIONER'S CLAIMS HAVE NOT BEEN HEARD ON THEIR MERITS. THE RECORD IS VOID (NO ORAL OR WRITTEN VENUE CHANGE CONSENT ON RECORD; NO VENUE CHANGE "CAUSE" AFFIDAVITS; & NO VENUE CHANGE HEARING TRANSCRIPTS), THE SINE QUO NON OF T.C.A § 20-4-203 & 20-4-209.

1. Although Petitioner submitted a pro-se motion for a change of venue six months before Jesse Ford & Clayton Mayo were appointed as counsel, it specified 'outside the 26th judicial district,' and was void under Burkhart, and had no affidavits to support it. See post-conviction Rec., Vol. 14, Page 220-223 Ex. # 16 (5/2/95 motions expressed factor 'outside the 26th district,' for consideration.) Madison County is located 'inside the 26th judicial district.'

2 Six months BEFORE the court ordered the case moved to Madison Co.Sept. 23, 1996, attorney's Ford & Mayo, had Hall moved to another jurisdiction for a hearing one month AFTER being appointed. Madison Co.Clerk file p.118-119 (motion hearing in Madison Co. on 4/9/96.)

3. At no time did Petitioner consent to a change of venue to Madison County. In fact, the record shows counsel had problems communicating with Petitioner, when counsel filed the void Motion To Renew Motion For A Change Of Venue. SEE: Trial Tech. Record, Vol. 2, P. 156, § 2 and P. 157, § 11; Trial Tech. Record, 10/1/96 motion for a continuance, grounds.)

4. The Court in bad faith, did not hold a hearing to address Hall about a trial by Henderson Co., jury before venue was moved to Madison Co, Sept. 23, 1996; nor did Hall personally forgo this right.

5. The 'Motion To Renew Motion For A Change Of Venue,' filed by Jesse Ford, only cites a previous motion filed by counsel, as grounds for change (already denied 11/8/95), and fails to rely upon affidavits supporting a change by "respectable and disinterested persons," requests no hearing, nor makes any reference to "consent by the defendant." Thus, the motion is void under Rule 21(a), & 21(b) or T.C.A. § 20-4-203 (Application). SEE: Trial Tech. Rec., Vol. 2, P. 150; (Counsel's 9/3/96 venue motion). NO CAUSE - NO DISCRETION T.C.A. § 20-4-204 & 20-4-209.

6. On Sept. 6, 1996 (ADA) Alfred Earl's submitted his 'Motion To Determine Prior To Trial The Competency Of Witnesses,' addressed to and filed in another jurisdiction (filed by Madison Co. Clerk on 9/18/96); BEFORE THE COURT CHANGED THE VENUE TO Madison Co., Tn. on Sept. 23, 1996. SEE: Trial Tech. Rec., Vol. 2, P. 151; (State's 9/6/96, motion filed 9/18/96). 28 U.S.C. § 1359.

- 1 -

**Summary Judgment**
**Exhibit [7]**
**Memo of Law 9 Page**

*Gaye Neene*
*01/15/2019*

7. On Sept. 23, 1996 the Court's venue Order simply found: "... the Court finds that the motion is well taken & should be granted. "Weakley ex rel Ussery v. Pearce 52 Tn. 401 (1871) (The Order must show legislative acts were obeyed). SEE: TRIAL Tech. Rec., Vol. 2, P. 152 (9/23/96 Order). NOTE: Trial Trans. of Evidence, Vol. 1, Pages 13 & 19 (**JUDGE lies on record**, claiming that **publicity** in Henderson Co., by Lexington Progress, a weekly paper; was worse than the daily paper, The Jackson Sun (Tenn.R. Evid., Rule 201 & 202). COMPARE: Atty. Ford's file, Bate's file p. 266-283 (News) & P. 00572; (Lexington Progress memo, RE: Publicity); & DA File, Pages 7/31/94; 8/1/94; 8/23/94; P. 269 (7/29/95); 317-318 (11/9/95 447; 474-482 (11/05/95). Trial Tech. Rec., V. 1, P 60 (Hall refused to waive kidnap); V. 2, P. 166-167 (motion To Quash). In violation of Tn.R.Crim.P Rule 1(e), 18(a) & 21.

8. The Petitioner was **not informed** the Court changed venue. Because, counsel was ignoring their client. Trial Tech. Rec., Vol. 2, P. 170-73 (Nov. 1996 **pro-se motions filed in Henderson county** a month **after venue changed,** (reply to State's 11/5/95 response). Trial Tech. Rec, V. 2, P 169).

9. The objection made at trial, is the best evidence to contradict parol evidence offered by Petitioner's trial counsel at post-conviction. SEE: Trial Tech., Rec., Vol. 1, P. 7-8 (Hall: Objection, "I can't understand why we're holding this hearing in Madison Co., when I was charged in Lexington.")

10. The record shows **petitioner wrote attorneys** Ford and Mayo, on 2/24/97, to back his pro-se post-trial motions attacking jurisdiction and said: "If you really care, you will show me by **getting me my records** I have requested several times, along with a copy of this trial transcript **motions hearing transcript,** (which have to be included into the record for appellate review.") SEE: Trial Tech. Rec., Vol. 2, P. 201 (Attorney / Client privilege mail attached to motion to withdraw; Re: Hall on 11/8/95 transcript & support pro-se motions.) RELEVANCE: Post-con. Rec., Ex. 21. (11/8/95 venue change hearing; denied **no affidavits** by (3) neutral residents for consideration).

11. But the 11/8/95 motion **hearing transcript was not put on record,** and counsel did not attack jurisdiction. SEE: Post-con. Rec., V. 11, P. 377-380 (Hall v State 2005 WL 22951 *12 (Tn.Cr.App.) ("Mr. Mayo could not recall why opening & closing arguments & a hearing on the motion for a change of venue were **not transcribed (LIE-Smith file)** for purposes of creating an appellate record.")

12. Public record shows counsel ignored Hall's decision to attack the Court's jurisdiction. Tn. v Hall 8 SW3d 593 (Tn 1999). Counsel's collusion denied Hall his 6th amend. & due process rights under amend 14, Tn.R.Crim.P. Rule 23(a) & 43(a) to present a defense. Tn v Brown 29 SW3d 432 (Tn 2000).

13. The record shows **counsel waived Hall's right** to hearing on kidnap charge, over an **objection,** that was **suppressed** by State, (before venue was summarily changed), a pattern of conduct. See: e.g.

    a. On Aug 22, 1994, Petitioner was **denied right to preliminary hearing** on a kidnap charge; and then denied an actual record of what happened during the 8/22/94 hearing by the state's unlawful **SUPPRESSION** of what really happened. See: [Motion to Dismiss all supra Indictments, with Ex. A thru G]. [Trial Tech. Record, Vol., 1, Pages 34-63).

- 2 -

b. On August 23, 1994, the Jackson Sun news paper reported: "Hall appeared belligerent and agitated during the 45 minute hearing Monday. At one point he refused to sign a form to waive his kidnapping charge to the grand jury. **'I'm not signing nothing,' Hall said** to his attorney, Jack Hinson of the district public defender's office"). See: [Motion to Dismiss All Supra Indictments, exhibit B] at Madison Co. # 96-589. [Trial Tech. Rec., Vol. 1, Page 60]; (Exhibit B, 8/23/94 Jackson Sun Newspaper public record, regarding 8/22/94 proceedings; Hall refused waiving kidnap charge). ONLY **COUNSEL** DECIDED TO **WAIVE** HEARING!

c. The preliminary hearing transcripts shows that the **State produced transcript** petitioner was provided, denied him a complete and accurate record of what transpired on 8/22/94. The record provided Hall, **shows counsel's waiver** to a hearing, **but does not show Hall's refusal** to waive kidnap preliminary hearing. SEE: [Motion to Dismiss All Supra Indictments, supporting exhibit A at Madison Co. # 96-589 Trial Rec, Vol. 1, Pages 58-59) (preliminary hearing transcript; RE: State record shows kidnap case waived by counsel, **CONCEALING** PETITIONER'S **OBJECTION TO COUNSEL'S** IMPROPER **WAIVER** OF RIGHTS).

NOTE: P.C.R., Volume 7, P. 1070-1080 (Trial Transcripts of evidence is not complete also.)

14. Petitioner's claims are supported by 'Affidavit Supporting Denial of Due Process and Improper Waiver of Trial in Henderson County. See: Affidavit marked filed Oct. 10, 2003 (State Habeas Corpus, 03C-2887; Appeal No. M2005-00572-CCA-R3-HC, Rec., Vol. 1, pages 14-19; ; and its supporting 'Appendix.' pages 20-77). This sworn affidavit verify facts surrounding the change of venue, with res gestae prooof regarding the venue change.

15. **The Petitioner challenged the preconditions of factors applying for a change of venue** under Tn.R.Cr.P., Rule 21, T.C.A. § 20-4-203, & § 20-4-209; and **off point judge made law,** in Nichols, 877 S.W.2d 722, 728 (Tn. 1994). On 7/19/06, the Appeals Court was **DUPED** by **Jennifer Smith's story** that **void venue motions** (without consent, or "cause" affidavits), was **valid to find**: "the trial court **AUTHORIZED** the change to Madison Co. **UNDER RULE 21** of Tn Cr. P." **Utilizing a statement** In Tn. v. Hall, 8 SW3d 593 (Tn 1999) (A claim **NOT supported by the RECORD** used as presumption) Hall v. Bell, 2006 WL 2000502 *2 (7/19/06 Appeal Opinion: **"Trial couurt authorized change under Tn.R.Crim. Procure, Rule 21.)** The facts of the **opinion violates Tn.R.Evid. Rule 703** & **901(a)** and **indicate a lack of trustworthiness.** Deloit 964 SW2d 909, 913 (Tn. 1997) **(No presumption of validity).**

16. On April 29, 1998, the Court of Criminal Appeals affirmed the judgment and conviction of the trial court. State v. Hall, No. 02C01-9703-CCA-0095 (Tn.Crim.App. 4/29/98); 1998 WL 208051.

17. On Nov. 15, 1999, the Tenn. Supreme Court affirmed. State v Hall, 8 SW3d 593 (Tn. 1999).

- 3 -

18. On Dec. 5, 2002, Alfred Earl's (ADA), filed the State's **FIRST DEFENSE** about **venue change** saying: "The issue here is not the **IMPROPRIETY** of the **granting or filing of the motion for a change of venue.**" [12/5/02 Earl's Brief] Hall v State W2003-00669-CCA-R3-PD **(P.C.R. V. 3, P. 377).**

19. On Oct. 10, 2003, **Hall filed his FIRST writ of Habeas Corpus** in Davidson Co., Tn., **giving notice** of specific references, (supra Pg 3, § 15) proving claim that **CHANGE OF VENUE LAWS WERE NOT FOLLOWED** in Hall v State / Bell 2006 WL 2000502 * 2 (7/19/06).

20. On Nov. 6, 2003, Respondent, Ricky Bell's, agent Jennifer Smith (DAG), filed a Motion To Dismiss 10/10/03 writ of habeas corpus, with a supporting "Memorandum Of Law," that contained the State's **SECOND DEFENSE,** regarding the venue, that claimed **RULE 21 WAS FOLLOWED, when it was not.** (Relying on **presumption** on limited powers). The State's second defense perpetrated a fraud on the court. See: (Motion To Dismiss [Resubmitted 8/10/10]; [H.C.T.R.II., VOL. 3, Pages 251-256].

Litigants should not be allowed to obtain an advantage or attempt to do so by **PLEADING INCONSISTENT FACTS** within their knowledge in two different lawsuits with the possibility of **prevailing in both lawsuits** Leatherwood, 708 S.W.2d 396, 402 (Tn.App. 1985). McInturff, 565 SW2d 478, 482 (Tn.1976) (two **inconsistent opinions** *resolve no conflicts* and is no verdict at all).

21. The relevant part of the (6) page memo of law showing **the State's SECOND DENSE** that **duped the Court's,** relied on the exercise of a special jurisdiction, a jurisdiction of judge made common-law, the court cannot exercise; [discussed in State v. Nichols, 877 SW2d 722, 728 (Tn. 1994) (venue motion constitutes waiver of venue rights)]; which violates T.C.A. § 39-11-203 (e)(2) (common-law defenses abolished). See: Richardson v. Mitchell, 237 S.W.2d 577, 585 (Tn. 1950) (exercise of a special jurisdiction - a jurisdiction which by the principles of common-law, he could not have exercised). Also, her memo claimed: "Moreover, Tn.R.Crim.P. **Rule 21 gave the trial court authority to grant a change of venue** on motion of the defendant," **AS OCCURRED IN THIS CASE,"** which relied upon bogus dictum, as a conclusive presumption and was used to deny relief in Hall v. State / Bell, 2006 WL 2000502 * 2 (7/19/06 Nash. Tn) ("Finding Rule 21 followed," when it was not).

22. The State's first venue defense admitted: "The issue here is not the **IMPROPRIETY** of granting or filing of the motion for a change of venue." [12/5/02 Al Earl's Brief at close of evid.] at Hall v State W2005 WL 22951* 13 (1/5/05 Jackson, Tn.) (PCR, V. 3, P. 377); violating estoppel laws, that litigants cannot plead inconsistent statements (TCA § 39-16-707) in two lawsuits to prevail in both.

23. On Jan. 5, 2005, **the Criminal Court of Appeals of Tennessee,** Joseph Tipton, delivered opinion, in which David Hayes & James Witt, Jr., joined and **claimed:** "Mr. Ford stated that: **Judge Lafon granted the change without a hearing.**" Hall v State no. W2003-00669-CCA-R3-PD; 2005 WL 22951 * 13 (Tn.Crim.App.) [H.C.T.R.II., VOL. 1, Page 67]. Thus, **"without a hearing," is an expressed barrier as a matter of law,"** for a Court **to find,** that Tn.R.Crim., Rule 21 (f) and / or T.C.A. § 20-4-205, & § 20-4-209, the rule of law **authorized the change of venue.**

- 4 -

Public records estop the State from relying on FRAUDULENT TN.R.CRIM.P., RULE 21 AUTHORITY DEFENSE. Werne v. Sanderson, 954 S.W.2d 742 745 (Tn.App. 1997) (estops a party from playing fast & Loose with Courts by contradicting a previous position in a subsequent action.)

24. On July 19, 2006, the Tn. Court of Criminal Appeals joined in denying relief; **the court used Jennifer Smith's story to find:** "The State apparently consented to the second of these motions and the trial court **authorized the change** to Madison Co., Tenn. **under Rule 21** of the Tenn.Rules of Crim. Procedure." Hall v State / Bell 2006 WL 200502 * 2 (Nash., Tn.Cr.App.).

25. On ___, ___, 2007, Judge Merritt, said DAG **JENNIFER SMITH committed a fraud upon the court** in Bell v. Cone 492 F.3d 765, 766 (Tn. 2007) (Tn. Atty. General's Office falsified record by asserting Brady claims were both never raised & previously determined, **both claims cannot possibly both be true**). Adopted by U.S. S.Ct. in Cone v. Bell, 129 S.Ct. 1769, 1779 (2009).

26. On the first case before a court, the **FIRST OPINION** made on venue on Jan. 5, 2005, the Crim. Appeals court said: "Mr. Ford stated that Judge Lafon granted a change "**without a hearing**." Hall v. State, 2005 WL 22951 * 13 (Jackson 1/5/05). "Without a hearing," absolutely violates T.C.A. § 20-4-209 & Rule 21 (f). Hall **alleged prejudice**. PCR. V.8, P. 1026-27 (denied right to present a defense).

27. On the second case before the court, the **SECOND OPINION** made on venue on July 19, 2006, the Nash, Tn. Criminal Appeals said: "The state apparently consented to the second motion and the trial court **authorized change** to Madison Co., Tenn. **under Rule 21** Tenn.R.Crim. Procedure." Relying on dictum (not binding), as **it's conclusive presumption** taken from State v. Hall, 8 S.W.3d 593 (Tn. 1997) (Venue was changed under Rule 21); as discussed in State v. Ritchie, 20 SW3d 624, 630, n.12 (Tn 2000) (Presumption of validity). Note: Ritchie, n. 14 (Presumption reversed in **special jurisdiction**).

28. The circumstantial evidence of an insufficient underlying **"sparse trial record;"** [not being supported by any **affidavit(s)** as required by T.C.A. § 20-4-203; and the lack of any **venue hearing transcripts** as required by the mandatory provisions under T.C.A. § 20-4-209, to determine the legitimacy of Judge Lafon's discretion under T.C.A. § 20-4-204]; on a special common-law jurisdiction, in **ultra vires** proves Madison County's judgment (T.T.R. V. 2, P. 179: JUDGMENT); is in **want of jurisdiction** (in personam & subject-matter), over a Henderson County laid indictment (T.T.R. V. 1, P. 2; INDICTMENT). The judgment of conviction and sentence in this matter, is facially **void**.

29. The lack of consent, Trial Trans. of Evid., V. 1, P. 7-8 (Objection; locus of venue & vicinage; TCA § 20-4-105), on face of trial record, **is a cognizable claim.** Lewis v. Metro Gen. Sessions Ct., 949 SW2d 696, 703 (Tn 1996) (Consent); State v Denton, 1869 WL 2584 * 3 (Tenn.) (objection is fatal). State v. Upchurch 620 SW2d 540 (Tn 198) (Venue change over objection - conviction is void).

30. The Court's venue order(s), and subsequent opinions indicate a **lack of trustworthiness,** under Tn.R.Evid., Rule 703 & 901(a); and do not enjoy a **Presumption of Validity),** in violation of TCA § 40-35-401(d) & § 40-35-402(d) (Prsumption of Correctness; conviction & sentence). TRAP 13(d) & (e).

- 5 -

Gaye Nease
01/18/2019

## II. ARGUMENT: (ISSUES AND RULES)

A. Transfer of Proceedings:

**COMPLIANCE MUST BE HAD WITH STATUTES** REGULATING THE PROCEEDINGS FOR **TRANSFER OF A CRIMINAL CAUSE FROM ONE COURT TO ANOTHER,** IN ORDER TO EFFECT A VALID TRANSFER.

As a general rule, in order that a Court may acquire jurisdiction over causes presented by indictment or other charge in another court, *they must be transferred properly* from the one to the other *in compliance with the requirements of the statutes.*[1] The burden is on the state to show the regularity of such transfer.[2] The burden of proving the illegality of the transfer, however is on the accused.[3] The petitioner must show that a Court rendering a judgment, disregarded the limitations prescribed by statute, considered necessary to authorize transfers, is in want of jurisdiction. By usurpation of power, by making a decree, not within the powers granted by law of it's organization, (derived by statutes) whereby accused is imprisoned, is void.[4] The proceedings for such transfer are *limited by statute,* were mandatory, and *must be followed scrupulously.*[5] The rule for a judgment of special **equity** or limited jurisdiction derived from Tn.R.Civ.P, 19.02, is that every jurisdictional fact must affirmatively appear on record.[6] The jurisdictional defects on record are then construed strictly against a state and liberally in favor of accused, since a defective judgment is a *facially void contract.[7]*

1. TCA § 39-11-103 (a) (Territorial jurisdiction; Tn. Const. Art. 1, §§ 6, & 9); 18 U.S.C. § 3235 (Offenses punishable by death; County / Art. III., § 2, Cl. 3). Claim raised by all petitions made.
2. Tenn.R.Crim.P., Rule 1(e), 18 (a), and 21 (a), (b), & (f), rules created by statute T.C.A. § 20-4-203 (3 **Affidavits,** *by disinterested citizens of* Henderson County); TCA § 20-4-204 (**discretion;** upon due consideration); and 20-4-209 (**Records;** transmission); TCA § 30-11-201 (e) (Burden of Proof); State v Smith, 906 SW2d 6, 10 (Tn.Cr. 1985) (TCA § 20-4-203, & Rule (b), *prerequisites contemplate proof of "cause" be made of* **record;** and **venue must be proven** to decide case on the merits).
3. The right to habeas corpus **relief is guaranteed** in Article I, § 15 of the Tennessee Constitution. **Relief is available** when it appears *a convicting court is* without **jurisdiction,** or **authority** to sentence a defendant ... Archer v State, 851 SW2d 157, 164 (Tn 1993) (facially void; TCA § 29-21-101 et. seq.)
4. State v. Hill, 847 S.W.2d 544, 545 (Tn.Cr.App. 1992) ("*A court may not try an individual* on **indictment issued by another county,** because such a trial would necessarilly violate the court's jurisdictional limits; that is either *the indictment would be outside the jurisdiction* of the court in which *returned it,* or the trial would be conducted **outside the jurisdiction of the court** in which **the trial would be conducted."** T.C.A. § 39-11-103 (a) (**Territorial jurisdiction;** Tn. Const. Art. 1, § 9). 18 USC § 1359.
5. Austin 655 S.W.2d 148 (Tn. 1983) (Application of **Written law;** "Sic lex scripta and **obey it.**")
6. Richardson v Mitchell, 237 SW2d 574, 584 (Tn 1951) (**Rule for judgment** of limited jurisdiction, every jurisdictional fact **must appear** on the record, or **the judgment is void.** e.g. must show venue change **affidavit(s).** TCA § 40-13-210 (Jurisdiction to support alleged judgment).
7. State v Bigbee 885 SW2d 797, 815 (Tn 1994) (Before a man can be punished, his case must be plainly & unmistakenly within statute. As **liberty and perhaps life** are involved, every reasonable doubt **must** *be resolved* **in favor of accused**). Davis 892 SW2d 588, 599 (Tn 1992) (Liberty defined); Union Indemnity v Bruce Bros, 44 Ariz. 454, 467-68, 38 P2d 653-54 (1934) ("The law will not **support a claim** built on its **violation.** Where contamination reaches it destroys. When facts show beyond doubt a contract falls in a statute, the **question of abstract justice** or effect of law **is not for us.**" CITE: Black's law dictionary: **void contract**). NOTE: Supra f.n. 5 (Austin: Sic Lex Scripta & obey it.)

.- 6 -

## B. Court Of General Jurisdiction: Presumptions - a Legal Fiction:

ORDINARILY, A COURT OF GENERAL JURISDICTION PROCEEDING WITHIN THE SCOPE OF ITS POWERS WILL BE PRESUMED TO HAVE JURISDICTION TO GIVE THE JUDGMENT IT RENDERS, AND THE BURDEN IS ON THE ACCUSED AFFIRMATIVELY TO SHOW THAT IT HAD NO JURISDICTION, *UNLESS FACTS SHOWING WANT OF JURISDICTION APPEAR AFFIRMATIVELY ON THE RECORD.*

A court of general jurisdiction T.C.A. § 16-10-101 (General Jurisdiction), proceeding within the scope of its powers will be presumed to have jurisdiction, to give the judgment and decrees it renders, until the contrary appears.[8] So a court of general jurisdiction, is presumed to have acted within its powers, and the **burden is on the accused** to affirmatively to show it had no jurisdiction, unless *facts showing a* **want of jurisdiction** *in the court assuming to render judgment, appear on the record.*[9] Such presumptions, arises from the fact that the court acted, when a court (having accused before it in person),[10] proceeded to judgment, it will be **conclusively presumed**,[11] to have decided it had jurisdiction. When a court of record or general jurisdiction **exercise special equity power** *arising under* on **joinder** *ignoring* **criminal laws** *derived by* **statutes**,[12] in excess of general jurisdiction, it becomes *judge made law,*[13] and jurisdiction will not be presumed.[14] *Where* "**substantive parts of a proper record**" *are wanting, existence* **cannot be supplied by assuming** *all things were done right.*[15]

---

8. TCA § 16-15-730 ("**Presumption** of Regularity of Execution;" Presumption, in absence of proof to contrary is that execution was issued & steps done regular) TCA § 16-3-403 (Rules not to affect rights).

9. Hall v. State / Ricky Bell, 2006 WL 2000502 *2 (Nash., Tn.Crim.App. 7/19/06) (Citing State v Ritchie, 20 S.W.3d 624, 633 (Tn. 1999) (Where petitioner must introduce proof beyond the record to establish the invalidity of his conviction, then the conviction by definition is merely voidable ... Because a conviction is either *void* on its face for **want of jurisdiction**, or it is not. Id. at 633.

10. State v. Ellis, 953 S.W.2d 216, 221, n.7 (Tn.Crim. 1997) ("Where the court did not address defendant as to his right to a jury trial, *nor did Hall personally forgo this right,* defendant did not relinquish his right to a jury trial *by acquiesence of* **attorney**." Tn.R.Crim.P., Rule 23(a) & Rule 43(a) State v Muse 967 SW2d 764, 767 (Tn 1998) (Right to be present); Johnon v Zerbst 304 US 458 (1938) (*Court cannot* **presume** waiver *on silent* **record**) PROBLEM: Tn.R.**Civ.** P, 19 Special **summary manner**.

11. State v. Ritchie 20 SW3d 620, 630 n. 12 (Tn 1999) (conclusive presumtion). In the case sub judice, **a conclusive presumption** from **dictum** (not binding), in State v Hall 8 SW3d 593 (Tn 1999); said: "Tn.R.Crim.P, Rule 21 was followed," *when it was* **not**, and the underlying record, is misleading.

12. Richardson v. Mitchell, 237 S.W.2d 577, 584 (Tn. 1950) (Court was exercising a special or common law, special jurisdiction not expressly granted by **criminal** law: to determine e.g. venue change. The rule for limited jurisdiction, is that every jurisdictional fact **must** affirmly appear on record, or judgment is **void**. TCA § 40-13-210). Why are there no venue application **affidavit(s)** on **record**?

13. Tn v Nichols 877 SW2d 722, 728 (Tn 1994) (motion constitutes waiver). See: Supra P. 3, § 15.

14. TCA § 39-11-203(e)(2) (Common law defense void); Tn Farmer's Mutual Ins. Co. v Hinson 651 SW2d 235 (Tn 1983) (Fact may be inferred by **circumstantial evidence** and *such* **fact** *may be* **basis of** a a **deduction** on **ultimate fact.**) Trial Tran. of Evid., V. 1, p. 7-8 (**objection**). TCA § 20-4-105 (objection).

15. Odell v. Koppee, 52 Tenn. 88 (1871) (**Presumption** will not be extended to point of violating requirements of other statutes). For example: A **defective affidavit** (venue change application) *renders an attachment* **void**, citing: New York Casualty Co. v Lawson, 24 S.W.2d 881, 885 (Tn. 1930). Richardson v. Mitchell, 237 S.W.2d 577, 584 (Tn. 1950) (**The rule** for special or limited jurisdiction is, every jurisdictional fact **must** *affirmly appear on record, or the judgment is* **void**. TCA § 40-13-210).

Case 3:19-cv-00628   Document 1-9   Filed 07/24/19   Page 10 of 50 PageID #: 90

## III. APPLICATION:

Here, the Madison County record, fails to show acts were done to comply with statutory mandates. The court in absence of accused, in collusion with court officer's, granted a **void** venue motion lacking "cause" affidavits & lost subject-matter jurisdiction of offense, & accused. The **burden of proof** of TCA § 39-11-201(e), quoted in State v Smith 906 SW2d 6, 10 (Tn 1985) (Holds: **Rule 21**, contemplates "cause" be shown on record, and venue must be proved to determine case on its merits); e.g. Mandatory provision of T.C.A. § 20-4-203, § 20-4-204, § 20-4-209. A trial record is insufficient under Tn.R.Evid, 103(d), & 901(a): (identification of a **condition precedent** *to support trier of fact,* **a matter in question** e.g. **face of record;** if it is not **what proponent claims.**) Odell v Koppee 52 Tn. 88 (1871) (Presumption will not be formed to point of violating demands of other statutes). A legal presumption is a assumption for convenience. When proof to contrary is made, an assumption is waived, for **its not logical to assume fact** *rebutted by* **plain data.** Rasey 571 SW2d 822, 827 (Tn 1978) (Tn.R.Evid. 103(d))

**Consent** is a dispotive question, and a **genuine issue** *for summary judgment* issues, when the shoe is on the district attorney's feet. See: e.g. Lewis v. Metro Gen. Sessions Ct. 949 SW2d 696, 703 (Tn.Cr.App. 1996) ("The general sessions court would have no authority to dispose of the case absent the **CONSENT** of the district attorney general or his representative. All that rendered the judgment as facially valid.") In that light, the pre-trial objection regarding a venue change, on the face of the trial record, (Trial Tran. of Evid., P. 7-8; TCA § 20-4-105); & (Trial Tech.Rec, P. 153-155), and the reversed presumption of validity on **underlying record;** *prove insufficient* **"sparse record," is facially void.** It is essential for the order made (Tr.Tech.Rec., V 2, Pg. 152; 9/16/96 Venue Change Order), that **Hall** was actually notified, or the error is shown by the record, the papers or in the minutes of a hearing, that consent was given. This record exposes, an loss of subject-matter jurisdiction over a Henderson Co. indictment (Tr.Tech.Rec. V. 1, P. 2; indictment) on Madison Co. Judgment (Tr.Tech. Rec V. 2, P. 179 Judment). This is a **cognizable claim.** Tn.R.Evid. 103(d), 402, 703 & 901(a); TRAP 13(b) & (e)[!]

*This record shows,* that the States proof of regularity relies on a bogus **conclusive presumption** taken from dictum, that is not binding authority. The courts have **misapplied the dictum** to impermissably **shift burden of proof.** Raybin V. 9, § 16.71 (Burden of Proof; Presumptions) states: A statute may make proof of one fact, evidence of another fact, by way of presumption.[1] In some cases, (like here), it **impermissably shifts the burden** from the state to an accused, and thus terms are invalid, [e.g. TCA § 16-15-728 (Proceeding presumed valid)] a **violation of due process.**[2] Note 1 State v Runion 654 SW2d 407 (Tn 1983). NOTE: 2. Allen, 99 S.Ct. 2213 (1979). In State v Ritchie 20 SW3d 624, 630, n.14 (Tn 1999) the Court said; "Presumptions are reversed in special or limited jurisdiction." The rule for a judgment like this, is: *Every jurisdictional fact must affirmatively appear on reccord, or* **the judgment is void;** for **want of jurisdiction.**) TCA § 40-13-210 (Every jurisdictional fact must appear on record).

- 8 -

## IV. CONCLUSION:

*None* of the essential requisites of T.C.A. § 20-4-203, §20-4-204, & § 20-4-209, affirmatively **appear on the record**, or order changing venues from Henderson County, to Madison County, Tennessee. The **condition precedents**, declare that certain preconditions <u>shall</u> <u>be</u> <u>made</u>, that is: (1) three (3) affidavit(s) are **demanded** under TCA § 20-4-203; and (2) venue hearing transcripts mandated under TCA § 20-4-209, as expected by Tn.R.Evid., 103(d), 402, 703 & 901(a) to show **consent**; a cognizable claim **on record**, to support finding by fact-finder; the matter in question, <u>is</u> <u>what</u> <u>the</u> <u>State</u> <u>claims</u>; e.g. that **Rule 21 was followed**. To be valid, a **presumption** must meet rigors of Tn.R.Evid., Rule 103(d), 402 & 703 (Legal expert testimony) for entry *on FOUNDATIONAL REQUIREMENTS;* that underlying **facts** or **record** are trustworthy. Evidence must be relevant. Tn.R.Evid. 402. These **demands on technical evidence,** hold concerns over a witness who offers results, is **qualified to interpret them** 103(d), 703, & 901(a), when the STATE rely on records. **A genuine claim.** Tn.R.Crim.P Rule 1(e).

Both cognizable claims, i.e. **Rule 21 not followed**; and **lack of consent claims,** shown on the face of the record, are contrary to the law, and the **miscarriage of justice** made in prior proceedings: i.e. <u>State v. Hall</u>, 2006 WL 2000502 *2 (7/16/06 Nash.); demand habeas corpus relief. Because, these claims have been decided on **misleading dictum** and <u>not</u> <u>on</u> <u>the</u> <u>merits</u>! **Remove** the **bogus dictum,** and **presumption** that cannot meet tests under Tn.R.Evid. Both the <u>record</u> and <u>circumstantial</u> **facts** clearly preponderates against the prior judgments. The *burden of proof* **shifts** to show regularity on <u>actual</u> <u>records</u> <u>appearing</u> <u>on</u> <u>the</u> <u>face</u> <u>of</u> <u>the</u> <u>record</u>, in a **special** territorial court **in want of jurisdiction.** <u>Dunn</u>, 877 F2d 1275, 1277 (6th 1989) (Burden shifts). T.R.A.P Rule 13 (b) & (e). A trial record is facially **void**, or it isn't !

Put up the sine quo non (indispensible records; showing "cause," and "consent"), from the face of the trial record under Tn.R.Evid., 103(d), 402, 703 & 901 (a). **Inconsistent opinions,** are a miscarriage of justice **(supra pg. 5, § 25-27)**. Hall's conviction & sentence is facially <u>void</u>. Hall is innocent Tn.R.Crim.P., Rule 13(b) & (e) on the claimed Madison County judgment. <u>Byrd v Hall</u> 847 SW2d 208, 214 (Tn 1993) (Put up **sine quo non** [indispensible records, TCA § 20-4-203 & § 20-4-209], or shut up. **Evaluating Summary Judgment** Tn.R.Civ.P., Rule 56.01). **Persecution** *is the infliction of* **suffering or harm** *upon those who differ* (in **political opinion** e.g. those whom impugn the integrity of the court). <u>Delosa v Ashcroft</u> 378 F3d 907, 913 (9th 2004). Nearly 25 year(s) of misrepresention of records, prove the need for judicial reform in Nation of Laws. So American constituents can rely on a government purpose. Applying law as required by United States Constitution. To protect citizens from lawless persecution by swearing oath to God to apply laws fairly. TCA § 17-1-104! Respectfully submitted,

*[signature]*

FIRAC: Legal Analysis — 9 — Prisoner # 238941 RMSI

I.   DID THE CHAIRPERSON CONSTRUCTIVELY AMEND THE MATERIAL ALLEGATIONS IN
     WRITE-UP INCIDENT I.D. # 01355928, VIA WRITTEN COMMENT: THAT PREJUDICED
     THE CLAIMANTS OBJECTIVE RIGHT TO MAKE A DEFENSE; AFTER THE EVIDENCE
     PROVED MATERIALLY DIFFERENT FROM THE RELEVANT WRITTEN CLAIMS RAISED?

### ARGUMENT:

On the face of TDOC Tomis Disciplinary Report against Jon Hall, on incident I.D. # 01355928,
the DESCRIPTION; States:

> "ON 10/30/2018 AT 1430 CORPORAL EDWARD MAZON PERFORMED A REASONABLE
> SUSPICION CELL SEARCH ON 2A207 WHICH HOUSES INMATE HALL, JOHN #238941
> DURING THE SEARCH INMATE HALL HAD BROKEN TELEVISION PARTS, A HOMEMADE
> BONG 1.3 OUNCES OF A SUBSTANCE THAT TESTED POSITIVE FOR HEROINE THEREFOR
> INMATE HALL IS BEING ISSUED A DISCIPLINARY FOR CONTRABAND. THIS INCIDENT
> HAS BEEN REVIEWED BY CAPTAIN ROBERT MOSLEY.

> PREPARED BY STAFF ID: O'BRJA01     O'BRIEN, JASON
> REPORTED BY STAFF ID: MAZOED01     MAZON, EDWARD          **WAR EXHIBIT PAGE 9.**

Chairperson, Dee Scott, abused her discretion by constructively amending the material claims
raised on the face of the write-up, and made a clear error of judgment, (against policy guidelines
under 502.01, VI. f, 1 @ page 19 of 36), by regarding bogus inapplicable claims, after evidence
offered at the hearing, proved facts materially different, than those cited in the write-up. A statement
of fact in a party's pleading is a Judicial admission that facts existed as stated. Blackmon v Estate
of Wilson 709 SW2d 596, 602 (Tn 1986). TDOC policy 502.01 (Uniform Disciplinary Procedures) §
VI f, 1, in part, states: "A disciplinary report which fails to adequately state an offense, contains
errors, or has not been properly completed **shall be dismissed** by the board/hearing officer."

DEE SCOTT'S COMMENT; Stated:

> "WE ARE NOT HERE TO TALK ABOUT THE DRUG BCOS YOU DIDN'T GET A DISCIPLINARY
> FOR DRUGS YOUR DISCIPLINARY WAS FOR CONTRABAND ALL THE SCREWS, TV AND
> ALL THE MISC. PARTS A HARD DRIVE TO A COMPUTER ETC."     **WAR EXHIBIT PAGE 22.**

Dee Scott's intentions, were contrived to thwart claimant's ability to defend himself against the
material claims, by making new extrinsic claims of contraband, without obeying due process notice
demands to the claimant's prejudice. Thus, trying to breath life into a void claim, by diverting bogus
irrelevant extrinsic claims she made, to make a decision against logic or reasoning, causing the
resulting injustice. Spicer v. State 12 SW3d 438, 443 (Tn 2000). Abuse of discretion is shown when
a lower court makes a clear error of judgment, by weighing irrelevant factors. McBee v Bomar 296
F2d 235, 237 (6th Cir. 1961). The court must decide, if the **board**, the **Warden**, and **Commissioner**,
made a decision based on the material claims in the write-up; or irrelevant claims made by Scott,
without notice or a foundation, violating Tn.R.Evid. Rule 402 (Irrelevant evidence is inadmissible).

- 1 -

The main focus of this case and the appeal, derives from facts exclusively made on the face of the written notice / write-up. **The gist of this matter,** was unlawfully diverted by the disciplinary board chairperson, Sgt. Dee Scott with a **constructive amendment** made by written comment @ **WAR EXHIBIT 22**, and thus all extrinsic claims made by Sgt. Scott, are irrelevant under TDOC Policy 502.01 § VI. f, 1, @ page 19 of 36) (Dismissal: contains errors), and Tn.R.Evid., Rule 402 (Irrelevant evidence inadmissible). So, the real issue / claims before the Court will be if Mazon's testimony supported the record to find: (1) do the material facts shown on the record establish the **"broken television parts,"** to actually exist on the record?; (2) was 1.3 ounces of a substance found to test positive as **heroine**, exist as stated?; and (3) a homemade **bong**, is not shown on the minutes of the hearing. **If any of the three items listed: (1) "broken television parts;"** (2) **heroine**, and **(3) bong**, does not exist as stated in the shotgun write-up, *then the entire write-up is void*, for failure to state a claim on which relief can be granted, since each item essentially becomes an element of the claim.

Review of the Warden's appeal, and the Commissioner's appeal, is required to determine if the issues were applied to the merits of the grievant's claims for relief. However, in both decisions made by the **Warden**, and the **Commissioner**, applying the dispositive questions on material claims, are written in terms way too vague or broad; to discern if either of them actually considered relevant material facts, required to decide the claims before them. See: e.g. the vague & broad statement of facts & conclusions of law, in the dispositions by the **Warden** and the **Commissioner**, which state:

(1) On 12/11/2018, **Warden** Mayes, found: The reason(s) for disposition: "Items were discovered & recovered from your cell on Oct. 30, 2018 by Cpl. Mazon. Conviction of case is affirmed."

(2) TDOC **Commissioner** Tony Parker, on 1/14/19 found: The reason(s) for disposition: "Upon reviewing your disciplinary appeal and documentation, the infractions for which an inmate within the custody of the Tennessee Department of Corrections (TDOC) may be disciplined and/or criminally charged are outlined in TDOC Policy 502.05. You have failed to support your allegations that the warden reached an incorrect decision when reviewing your appeal. The charges of contraband is affirmed with this appeal being denied."

**WOW:** *"Items"* violate **policy; and** under **policy** inmates may be **charged** with **66 offenses.** Here, **my claims were narrowed to one offense**, *as clearly stated* in the **write-up**, marked filed under TDOC Policy 502.05, § V, & VI, A. # 13 **CONTRABAND**, (pg. 2 of 7). It's too bad agents have failed to **consider references** to policy violations by focusing on **claims of errors** offered on appeal, with a **fair** statement of facts & conclusions of law. The State ignored the fact, where contamination reaches, it destroys, even the **right** to a fair hearing before a fair judge. **This describes** how the **leader** *viewed this **bogus policy** in this case!* These bogus reviews, clearly show an arbitrary & capricious decision, that **shifted burden again**, *to prove* the *Chair, **Warden & Commissioner** acted on whim & self-interest to avoid* **duty** to guard **Hall** from both fraudulent **void records**.

- 2 -

These rulings prove a lack of sincerity in the position held, and a lack of integrity in the process. Traits of a shyster, rather than the hallmarks of true leader. Making the President of the ACA oversight, and appointing him as TDOC Commissioner from the ranks of correctional officer's; and a Warden from a secret society of Masons, is not really a good idea! You would think, a leader of a billion dollar a year budget, would not be so inept. Incapable of truly resolving simple questions of law before them, as a quasi judicial review board member, unless there agenda has an interest in the outcome. Their legal view is, rubber-stamp anything without applying the Rules of Evidence, in a quasi judicial setting. Thus, failing to get a job done right the first time as oversight comm. chair. Ravaging valuable funds required for legal affairs in Attorney General's Office, by wasting taxpayer expenditures on undue legal fees. No wonder there's a high employee turnover rate at this prison. Leaders don't care how day to day business operations are handled. State residents cannot expect to keep good, honest people working in a position of trust, for this sort of governmental purpose!

**Rather than right a wrong** after **actual notice** was **given to State employees** Michael Keys, from STG Fish, and forwarded to Counselor Firestein, and presented to Disciplinary Chairperson Dee Scott, all having actual notice that 1.3 ounces of a substance claimed by corporal Mazon to be heroine, <u>was</u> <u>not</u> <u>heroine</u>. All employees involved neglected their duty, to correct a wrong and instead furthered their cause with active concealment to convict Hall on a bogus write-up, to persecute Hall out of spite. See black's law dictionary for legal term: **active concealment**, and reflect on *how it applies to these* **fraud cases here,** *making its way to* **top leaders** *in* **executive department.** Then, show integrity in breathing life in **void judgments! WAR EXHIBIT PAGES 3-6 (ATTACHED).**

The Motion For Summary Judgment / Fraud Upon the Court, marked **exhibit [3]**; (backed by **exhibit [5]**, other exhibits absent, since gist cited in motion), *shows the **persecution** here arising under **dual sovereignty**, Title 18 USC § 1367; TCA § 16-3-504.* **Arising under** the **law of the flag** 22 USC § 454. New Deal Legislation by FDR 1933, turned Jefferson theory; *the Government can do* **only** *what was* <u>*explicitly*</u> **enumerated by** *the* <u>*Constitution;*</u> to *the Government can* **do anything** <u>*it*</u> <u>*wants*</u> **as long as** <u>it is</u> <u>not</u> specifically **prohibited** by the **Constitution**, abusing U.S. Const. **Art. 1, § 8 cl 3; commerce clause;** & **(Art. 1, § 8,** cl **11, war powers;** & **Art. 1, § 8,** cl **18, make laws necessary & proper);** *creating* **criminal / civil hybrid laws** to view cases **summarily**, in **ultra vires** under mask of **discretion,** violating **Ninth Amendment.** *By* <u>*construing laws*</u> to prejudice <u>rights</u> *with scheme to* <u>*defraud*</u> Title 18 USC § 1346. *Treating citizen's as* **chattel,** *via* **Monroe Doctrine** by **presidential** <u>*War*</u> *against* <u>*crime*</u> *policy,* TCA § 16-3-403; *to deny public* **rights.** Making **strict construction of statutes inapplicable,** TCA § 39-11-203(e); by **equity courts,** *using* **implied contracts** inside Court's bar. Abusing **inferior powers** and **misled citizens** *with* **contempt** <u>refusing</u> **State** <u>**rights**</u> secured by **Tenth** Amendment. <u>See</u>: **Magevny v Karsch** 65 SW2d @ 565 (Tn 1933) (Powers; **strict construction irrelevant;** *burden shift* **presumptions**); & <u>Hall</u> 8 SW3d 593, 603-04 n.6 (Tn 1999) (Flag).

- 3 -

# THE LAW OF AGENCY

**Agency** - A relationship in which one person acts for on behalf of another person at the other person's request. Actual agent; exclusive agent; implied agent; intervening agent; ostensible agent.

**Agency by Estoppel** - An agency created by appearances which lead people to believe that the agency exists. It occurs when the principal, through **negligence**, permits her agent to exercise **powers** she never gave him, *even though she has* **no knowledge** *of his conduct.* Estoppel; apparent authority; implied agency; implied authority.

**Actual Agency** - An agency created by an explicit agreement between the **principal** and the **agent**; an **express agency.**

**Exclusive Agent** - A contract of **agency** under which the principal gives the agent the sole right to sell.

**Implied Agency** - An **actual agency**, the existence of which is proven by deductions or inferences and circumstances of the situation, including the words and conduct of the parties. **Compare**: agency by estoppel; apparent authority; **compare;** actual authority. **Implied Agreement.**

**Innocent Agent** - A person who at the **discretion** of his principal, *engages in an act* in violation of the law but who *incurs no legal guilt,* either *because he lacks the* **capacity** to commit a crime or he was *entirely unaware of the circumstances that made his act a crime.*

**Intervening Agent** - An act or omission that interrupts the connection between cause and effect. Intervening cause.

**Ostensible Agency** - An **agency** created by a course of conduct. EXAMPLE: The agency of a husband to make purchases on his wife's credit card, established as a result of her **consent** to his doing so on numerous occasions in the past. **Ostensible Authority** - Al-Haddad, 852 S.W.2d 245, 248 (1992) (When an agent acts within the scope of his **"apparent authority"** or **"ostensible authority"**

**Participate** - To have a part or share of something in common with others; to experience in common with others; take part in. **Mutual assent** - meeting of minds. The mutual assent of the parties to a contract with respect *to all of the principal terms* of the **contract. A meeting of minds** is essential to *the creation of a legally enforceable contract.* Scandlyn, 895 SW2d 342, 345 (1994).

# THE DOCTRINE OF VICARIOUS LIABILITY

The **doctrine of vicarious liability / responsibility** in connection with **joint enterprise** rests upon an analogy to the *law of partnership.* In a law of partnership, there is more or less a **permanent business arrangement,** creating a **mutual agency between the partners** for the purpose of carrying on some general business so that *the acts of one are charged against another.* Note: See; Andrews v Bible 812 SW2d 284, 291 (Tn. 1991) (*Attorney acts as a client's representative,* and *officer of the court,* thus having a *duty* to *serve both masters)* A "**joint enterprise**" is something like a partnership, for a more **limited period of time,** and a more *limited purpose.* It is an undertaking to carry out a *small number of acts or objectives, that* is *entered in by the associates under such circumstances* that all have **an equal voice** in *directing the conduct of the enterprise.* The law then considers that each is the agent or servant of the others, and the *act of anyone within the scope of the enterprise* is to be *charged vicariously* against the rest. W. Page Keeton, et. al., Prosser and Keeton on the law on torts, § 72, at P. 516-517 (5th Ed 1984). Fain v McConnel, 909 SW2d 790, 792 (1995).

# THE DOCTRINE OF IMPLIED NEGLIGENCE

... In a joint enterprise, in order to impute the **negligence** of one of the parties to the other, each **must** have **authority** to control the means or **agencies** employed to **execute** the common purpose. ..

Parties cannot be said to be engaged in a "joint enterprise," within the meaning of the **law of negligence,** unless there be a **community of interest** in the **objects** or **purpose of the undertaking** and a **legal right** to direct and govern the movements and conduct of each other with respect thereto. Each **must** have some **voice** and **right to be heard** *in its control* **and** *management.* Fain v. McConnel, 909 S.W.2d 790, 792 (Tn. 1995).

The court is responsible for every aspect of the trial. State v Gibson 973 SW2d 231, 245 (1997),

TOMIS ID:   00238941     HALL, JOHN
CAF Date:   07/02/2019

*Nanes    JoN*

This is to inform you that your classification hearing will be held
on 07/11/2019 at RIVERBEND MAXIMUM SECURITY INSTITUTION

Classification Date:
Classification Type:   CL   CLASSIFICATION

*Bogus Process*

1. *Level System 503.03 = No Meaningful SD*

2. *Disciplinary Criteria = Meaningless Void OF Valid Review (Partial)*

3. *No Appeals = Void Due Process*

4. *No Assistance*

## COLLUSION DELUSION - PRETEND LEGISLATION - POWER GRABS
### TCA § 16-3-502 (Supervisory Power); and TCA § 16-5-503 (Inherent Powers)

There comes a point when the courts <u>must</u> **intervene** *to correct a great wrong,* particularly one of their **own creation**; *because the political branches of Government cannot or will not act.* Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686. *This case is such a crossroads in history.* This court **cannot** further *"avert its gaze,"* Sosa, 124 S.Ct. at 2764-2765, *without becoming an accomplice to this monumental injustice* to ... Igartua - De La Rosa v US 417 F.3d 145, 183 ( 2005)

Tennessee has created an illegal system of Government that disregards the safeguards designed to protect its own residents. The **legislative branch** has improvidently delegated its power to the **executive branch**. Fite v. State ex. Rel. Snider, 114 Tenn. 646, 88 SW 941 (1905)(A statute may not give one branch of Govt. authority over which another has authority. Tn. Const., Art. II, § I). The rulemaking authority for the Tennessee Department of Corrections (TDOC), a government agency, was improvidently granted to the Executive Department, was not delegated out as **remedial measure**, but in **BAD FAITH**. A fixed statute granting **unlimited powers**, designed to do an **end run around the checks & balances** established by the separation of powers.

The State erroneously relies upon the LIMITED **implied WAR powers** of the United States Constitution, which temporarily grants the power of one agency to utilize the power of another, to preserve its integrity and to function properly on a case-by case bases, under exceptional circumstances. Here, the Tennessee Legislature has vested **unlimited** power to the **Executive Department** to create <u>all</u> its own agency rules, then execute its own agencies laws, & adjudicate its own agencies rule on their own cases, **an unchecked absolute power** delegated entirely to one branch of power. The unchecked rules created by the Executive Department, promote invidious discrimination against a suspect class (death row inmates), and deny equal protection of the laws. Their classification is designed to prejudice, while imposing **conflicts of interests** in its enforcement. Including **indeterminite punishment** for rule violations, in excess from the inmate population at large (TCA § 40-20-108). There is no determinative standards towards abandoning punishment under Tennessee's death row Level Programs **discretion**, permitting abusive mistreatment of hated inmates by the **Executive Department**. The Legislature exceeded its authority granting carte blanch **power**, only because its **useful**, not because it was **necessary**. *Chambers v Nasco* 111 SCt 2123, 2131-32, & 34 n 12 (1991) (**inherenT WAR power** <u>is</u> <u>not</u> a <u>broad</u> **resovoir of power** ready at an imperial hand, but a **limited source** - - - necessary only in a sense of being **useful**). **NOTE: SEE POWER DENIED STATES: SECTION 10. - <u>States prohibited from exercise of certain powers</u>.**
### ARTICLE I, SECTION 8. - Powers of Congress.

(1) The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

(2) To Borrow Money on the Credit of the United States;

(3) **To regulate Commerce** of foreign Nations, & among the States, & with the Indian Tribes;

(4) To establish Rule of Naturalization, & Laws on Bankruptcies throughout the United States;

(5) To coin Money, regulate Value of foreign Coin, & fix Standard of Weights & Measures;

(6) To provide for Punishment of counterfeiting the Securities & current Coin of United States;

(7) To establish Post Offices and post Roads;

(8) To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

(9) To constitute Tribunals **inferior to the supreme Court;**

(10) **To define & punish** Felonies committed on high Seas, & Offences against Nations;

(11) **To declare War,** grant Marques & Reprisal, **& make Rules concerning Captures on Land;**

(12) To raise & support Armies, but no Seizure of Money shall be longer than two Years;

(13) To provide and maintain a Navy;

(14) **To make Rules for the Government** and Regulation of the land and naval Forces;

(15) To provide **Militia to execute the Union Laws,** suppress Insurrections & repel Invasions;

(16) To provide organizing, arming, & disciplining Militia, & governing such Part of them as employed in Service of United States, reserving to the States respectively, the Appointment of thand the Authority of training the Militia according to the discipline prescribed by Congress;

(17) **To exercise exclusive Legislation in all Cases whatsoever,** over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; --- And

(18) **To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers,** and all other Powers **vested by this Constitution** of the United States.

**ARTICLE I, SECTION 9.** - Provisions as to migration or importation of certain persons. HABEAS CORPUS, BILLS OF ATTAINDER, etcetra. Taxes how apportioned. No export duty. No commercial preference. Money, how drawn from Treasury, etcetera. No titular nobility. Officers not to receive presents, etcetera.

(1) The Migration or Importation of such Persons as any of the States now existing shall think proper to admit, shall not be prohibited by the Congress prior to the Year one thousand eight hundred and eight, but a Tax or duty may be imposed on such Importation, not exceeding ten dollars for each Person.

**(2) The Privilege of the Writ of Habeas Corpus shall not be suspended,** unless when in Cases of Rebellion or Invasion the public Safety may require it.

**(3) No Bill of Attainder or ex post facto Law shall be passed.**

(4) No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken.

(5) No Tax or Duty shall be laid on Articles exported from any State.

(6) No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another: nor shall Vessels bound to, or from, one State, be obliged to enter, clear, or pay Duties in another.

(7) No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law; and a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time.

(8) No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.

**SECTION 10.** - **States prohibited from the exercise of certain powers.**

**(1) No State shall** enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; **pass any Bill of Attainder, ex post facto Law, or Law impairing a Obligation of Contracts,** or grant any Title of Nobility.

**(2) No State shall,** without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be **absolutely necessary for executing its** inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; **and all such Laws shall be subject to the Revision and Controul of the Congress.**

**(3) No State shall,** without Consent of Congress, lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into Agreement with another State, or with a foreign Power, or **engage in War, unless actually invaded,** or in such imminent Danger as will not admit of delay.

**ARTICLE II.**

SECTION 1. - President: his term of office. Electors of President; number and how appointed. Electors to vote on same day. Qualification of President. On whom his duties devolve in case of his removal, death, etcetera. President's compensation. HIS OATH OF OFFICE.

**Executive (WAR) Power shall be vested in President of the United States. NOTE:** A *trial court does not have authority to embark on* **non-adversarial** fact-finding **mission.** Tn. Sup. Ct. Rule 10, Canon 3; such orders **create** an air of **secrecy.** State v Ray 973 SW2d 246, 249 (Tn.Cr.App. 1997) **KEY: INVOKING WAR POWER** (Equity / Civil law) Chambers 501 U.S. @ 59-60, 111 S.Ct. @ 2140 (1991) (Powers assigned only to President - U.S. Const. Art. 1, § 10 (Power denied Stae) **OTHER:** Using war / **federal civil equity power** in criminal case violates the 9th Amend. U.S.C.A.

TOMIS ID:           00238941
Offender Name:      HALL, JOHN
Institution Name:   RIVERBEND MAXIMUM SECURITY INSTITUTION

Classification Type: CLASSIFICATION                 CAF Date: 07/02/2019

Status at time of Hearing: Gen.Pop.____  AS____  PC____  Other _Mandatory 8y_

Incompatibles: Yes _✓_ No___   Inmate agrees to waive 48 hr. hearing notice: ____
_RMSI 2010 3_
Scored CAF Range: MINIMUM        Current Custody Level: MAXIMUM

Panel's  Majority  Recommendation:

     Facility  Assignment: _RMSI_   Transfer: Yes___  No _✓_ Explain Below:

     Custody Level: _Maximum_        _First Degree Murder_

     Override Type: _MGCR_

     Justification, Program Recommendations, and Summary:

_Annual Review, FED-09/02/06, EXP Death. He scored a 5 on_
_the CAF sheet which placed him on MSR. This will be override_
_to maximum security due to his sentence. No program review_
_also due to his sentence. He continue on Level C due to behavior_
_on Unit 2 and is presently not working._
Updated Photo Needed:  Yes ____  No _✓_      _Misuse of Federal Implied Powers_
                                              _Denial of Classification_
Offender Signature: ___Not contracting with Tn.___  Appeal: Yes _✓_  No ___
_Over-ride Fraud / collusion Delusion_ If Yes, provide appeal & copy to Inmate

Panel Member Signatures:      Date: _____


_____    _____    _____
Chairperson                Security Member            Treatment Member

If panel member disagrees with majority recommend, state specific reasons:

_____
_____
_____

Approving Authority:
                                                      Approve ____  Deny ____
_____
    Signature                         Date

If denied, reasons include: _____
_____

_No Detainer_
_No OTC_
_No GTC_
_no arm ___

# CLASSIFICATION APPEAL

for Hall #238941
RMSI U-2-A-207

Appeal To: Classification
Director of
Programs:
Mr. Ferguson

✗ ① See attached: Tennessee Department of Correction - Offender Classification Summary
**(CLASSIFIED: MINIMUM RANGE)**        Exhibits
② See also:   *Collusion Delusion - Pretend Legislation (Declaration of Independence).*

   Overriding mandatory law under T.C.A. § 41-21-202 (classification); to apply Unit-Two Level Program (Policy 404.11-1 & 503.03), is an illegal policy **without a review process**. Promotes invidious discrimination of inmates - different from prison population. **SEE:** TDOC/ RMSI Policy (eff. 12/1/14) 502.01 VI., L., 5., a., (7) (page 17 of 36) provides in-part: "no period of punitive segregation may exceed (60) days." **A determinative maximum sentence in isolation.** Level program denies humane treatment violating due process & equal protection. **Level policy assigns prolong isolation & creates a risk of damage to health.**
   Power unwisely delegated to Executive Dep't., to make policy under guise of liberal interpration, (an unconstitutional grant of power and violate the separation of powers clause). By granting TDOC authority to make rules to carry out the functions of the Department of Correction; develops legal rights & liberty interests, (at same time may suspend legal rights or interests, that apply policy as a Bill of Attainder; & constitute Ex Post Facto Laws). An absolute unchecked power structure (Rulemaking authority; Police Power; & Adjudication), violating due process & equal protection laws, without aid of counsel, ensures ipse dixit claims. See attached: *Collusion Delusion - Pretend Legislation (Declaration of Independence).* State vex. rel. Snider, 114 Tn 646, 88 SW 941 (1905) (Statute may not give one branch of power which another has authority TN. Const. Art. 2, § 1).
   Standardless discretion on isolation as punishment TCA § 40-20-108, takes advantage of psychological effects of isolation abusing this suspect class on death row, without treatment or rehabilitation programs (are incapable of discerning proper placement.) A policy that focuses on daycare rules (e.g. cleanliness as deciding factors, ignore the frustration / emotional quotient, & rigors of depression caused by **undue mistreatment in isolation as punishment.** Creates a punishment that is more taxing than one issued by the jury, creating risk of suicide. In re Medley, 134 US @ 166 (1890) (Ex post facto law- relief).

TYPED DUPLICATE COPY
To whom it May Concern:
  I viewed Jon Hall's
Original "Classification Appeal"
with its (2) Supporting Exhibits
as specified Above. this was
Done to Show that I Recived
his Original Copy of Appeal for
Proper In-house Submission on
This the 19 day of July 2019.

Recieved for Submission
Sgt Denning 7-19-19

See attached: Tenn. Dep't. of Correction - Offender Classification Summary
**(CLASSIFIED: MINIMUM RANGE)**
See also: ***Collusion Delusion; Pretend Legislation (Declaration of Independ.)***

Overriding mandatory law under T.C.A. § 41-21-202 (classification); to apply Unit-Two Level Program (Policy 404.11-1 & 503.03), is an illegal policy **without a review process.** Promotes invidious discrimination of inmates - different from prison population. **SEE:** TDOC/ RMSI Policy (eff. 12/1/14) 502.01 VI., L., 5., a., (7) (page 17 of 36) provides in-part: "no period of punitive segregation may exceed (60) days." **A derterminative maximum sentence in isolation.** Level program denies humane treatment violating due process & equal protection. **Level policy assigns prolong isolation & creates a risk of damage to health.**

Power unwisely delegated to Executive Dep't., to make policy under guise of liberal interpration, (an unconstitutional grant of power and violate the separation of powers clause). By granting TDOC authority to make rules to carry out the functions of the Department of Correction; develops legal rights & liberty interests, (at same time may suspend legal rights or interests, that apply policy as a Bill of Attainder; & constitute Ex Post Facto Laws). An absolute unchecked power structure (Rulemaking authority; Police Power; & Adjudication), violating due process & equal protection laws, without aid of counsel, ensures ipse dixit claims. See attached: ***Collusion Delusion - Pretend Legislation (Declaration of Independence).*** State vex. rel. Snider, 114 Tn 646, 88 SW 941 (1905) (Statute may not give one branch of power which another has authority TN. Const. Art. 2, § 1).

Standardless discretion on isolation as punishment TCA § 40-20-108, takes advantage of psychological effects of isolation abusing this suspect class on death row, without treatment or rehabilitation programs (are incapable of discerning proper placement.) A policy that focuses on daycare rules (e.g. cleanliness as deciding factors, ignore the frustration / emotional quotient, & rigors of depression) caused by **undue mistreatment in isolation as punishment.** Creates a punishment that is more taxing than one issued by the jury, creating risk of suicide. In re Medley, 134 US @ 166 (1890) (Ex post



# MEMO

Inmate Name: _____John Hall_____     TDOC Number: ___238941_____

Institution: _____RMSI_____     TOMIS Grievance Number: _332802_

Title VI Tracking Number: T6-19-5997

**Level II-Title VI Coordinator's Response and Reasons:**

Upon receipt and review of the *Title VI Grievance #332802*, a determination was made that inmate Hall's (#238941) contention of a Title VI violation could not be substantiated. Per the findings, inmate Hall (#238941) fails to support his allegation of discriminatory treatment based on the grounds of race, color, or national origin.

Nonetheless, there was no evidence found to substantiate that discriminatory treatment was practiced or that any policy violations occurred.

☑ **Concur with Associate/Assistant Warden** ☐ **Concur with Supervisor** ☐ **Remedy**

_____03/21/19_____     Vashti McKinney
**Date**     Vashti McKinney, TDOC Title VI Coordinator

Note: Attachment for this Grievance
was a copy of Criminal Justice
6th Ed. by Joel Samaha "Informal
+ Informal Justice, chapter one
Lawsuit Pg 38 ⸤ 105

Department of Correction · 6th Floor Rachel Jackson Building · 320 Sixth Avenue North · Nashville, TN 37243 · Tel: 615-253-8155 · Fax: 615-532-8281 · tn.gov/Correction

# CRIMINAL JUSTICE; Sixth Edition: By Joel Samaha.
## FORMAL AND INFORMAL CRIMINAL JUSTICE: Chapter One.

KEY TERMS: Adversary Process; Case Attrition; Crime Control; Criminal Justice System; Discretion; Discretionary Decision Making; Diversion; Due Process; Felonies; Formal Criminal Justice; Hydraulic Effect; Informal Criminal Justice; and Presumption of Guilt.

PREVIEW:

A Native American found drinking cheap red wine and eating a tuna fish sandwich in a city park was arrested and **found guilty** of the offense of **"drinking in the park."** In the same city, a gourmet club, which had prepared a meal of salmon mousse and brought an expensive imported white wine to go with, dined in another park that provided "the right atmosphere." *The police saw the event but didn't arrest anyone.* On the following Sunday, the society page even wrote a glowing description of the club's event. A local public defender, with tongue and cheek, quipped. "What's the problem? They were both eating and drinking in the park, even from the same food groups." - MINNEAPOLIS IN THE MID 1970's (AUTHOR'S RECOLLECTION)

As a young law graduate *I found that* the *real world of the prosecutor's office differed sharply from what one would expect if formal law was applied* in practice. Prosecutor's used informal, **extralegal methods** for dealing with minor frauds and other community that *affected the poor,* who were unable to afford legal assistance. In handling a case involving a poor person who had been defrauded by conduct that may or may not have constituted a violation of the criminal law, the prosecutor commonly notified the suspect that a criminal prosecution was being considered. The hope was that the suspect would respond by returning the money obtained from the poor victim. Ultimately the **objective** was to **solve the problem.** *It was thought less important to decide whether the problem was a criminal fraud...* FRANK REMINGTON (REMINGTON 1993, 73-74) Scheme to Defraud

[Three criteria for decision making in criminal justice] ... play a persistent and major role 18 USC throughout the system: the seriousness of the offense, the prior record of the offender. Other § 1346 [criteria] are also influential ... but none characterizes the process to a greater degree. MICHAEL GOTTFREDSON & DON GOTTFREDSON (GOTTFREDSON & GOTTFREDSON 1988 257-258)

## INTRODUCTION: Discretionary Decisions — WAR Power

The three quotes above deal with something you're going to be reading a lot about in the pages and chapters that follow. It's called **discretion**, meaning decision making according to professional judgment based on training and experience. The third identifies criteria for *good* decision making.

Throughout the book we concentrate on discretionary decision making in different criminal justice agencies - police, courts, and corrections. As we focus on these differences in decision making in these agencies, it's easy to lose sight of four common characteristics of **discretionary decisions** throughout criminal justice:  Means - Intent to violate (Separation of Powers) Administrative Law

Action at Law  1. **Decision making operates on two levels** - formal decision making **"by the book,"** according to see Equitable  written rules, and informal decision making **"in action,"** based on training and experience of criminal Action ...  justice professionals. **NOTE:** Rules **not adopted** in compliance with T.C.A. § 4-5-216, shall be **void**.

2. *Decision making is complicated* because it has to respond to an almost endless variety of people and circumstances, involving delicate matters calling for sensible judgments by criminal justice personnel.  — Legislative Powers

3. *Decision making is interdependent* because decisions made in one agency affect decisions made in the other agencies.

4. **Decision making boils down to four main criteria** - the three noted in the GOTTFREDSON quote (the seriousness of the offense, the criminal history of the offender, the relationship between the victim and offenders ) and the strength of the legal case against suspects and defendants.

- 1 -

# FORMAL AND INFORMAL CRIMINAL JUSTICE

**Formal criminal justice** - is criminal justice "by the book;" **informal justice** is criminal justice "in action." The book refers to written rules:
1. U.S. and state constitutions;
2. Statutes (written laws) created by U.S. Congress, State Legislators, and City Councils;
3. Court decisions of state and federal courts;
4. Rule books and other written policies of criminal justice agencies.

**Formal criminal justice is public,** and its decisions are usually written and almost always published. One famous example of formal decision making is so embedded in our culture almost everybody can recite it - the miranda warnings - and if we watch crime news stories or dramas on TV, were likely to see these rules followed or talked about (chapter 6 - police & the law). Formal criminal justice *represents the need for certainty and predictability* - we should *know what to expect and be able to count on it happening* (Walker 1993, 18-20).

Criminal justice **in action** (informal criminal justice) consists of decision making by professionals who **rely on their specialized training** and real world experience. This informal decision making is **barely visible,** and the **rules** *it applies are* underlined. Informal criminal justice **recognizes the need for flexibility** *because individual cases don't fit neatly in the* **rule books.** So, there's a need to **"play in the joints"** of formal criminal justice, or **discretionary decision making** (a phrase you're going to see alot in this book). Discretionary decision making lies at heart of the day-to-day reality of criminal justice.

Despite the emphasis on discretionary decision-making in this book and its importance in day-to-day criminal justice, *remember two important points.* **First,** both informal and formal decision making are essential. Criminal justice "rests on, indeed is created and enabled by ... law" wrote one of the great authorities on criminal justice decision making and author of his own criminal justice textbook, the late Donald J. Newman (Remington 1993, 279). **Second,** just because the rules aren't in writing and decision making according to them is *invisible doesn't mean discretion is bad,* as we'll shortly see and be reminded of throughout this book. **INVISIBLE** - *makes people act* **oblivious** to violations.

Decision making is a complicated business in the real world of criminal justice. The "book" doesn't have a list of simple rules telling police officers, prosecutor's, defense lawyers, judges, and correction officers how to solve most of *the problems they run into.* Only **judgment,** hopefully developed through *training and experience (with maybe a little luck thrown in)* will do.

*Also, the goals of criminal justice are multiple, vague, and often in conflict.* **Prosecutors** are formally *told to do justice.* **Informally,** they pursue other goals like winning cases, cracking down on specific crimes, improving efficiency, and saving the people's tax dollars. **Judges** have to impose sentences that are supposed to **punish,** *incapacitate,* and **reform** *individual defendant's* while protecting the community by *sending a message* to prevent criminal wannabes from committing crimes. Probation officer's are supposed to police and counsel offenders in the community. **Correction officer's** are supposed to maintain order and prevent escapes from prison, discipline prisoner's, and turn them into into people who can return to society ready to work and play by the rules. Adding further to their difficulties, professionals don't have the luxary of time to consider their decisions. They have to decide right now how to accomplish their goals. By now, I think you're beginning to see how complex decision making in criminal justice really is. There are no simple solutions written in books to solve most of the problems criminal justice professionals have to deal with in their daily work (Walker, 1992, 47). **INCAPACITATE - Disable.**

## CRIMINAL JUSTICE: STRUCTURE AND PROCESS

Criminal justice is both a structure and a process. The structure consists of criminal justice agencies and the professionals in who work in the agencies. The decision makers include law enforcement officers and management, prosecutors, judges, court professionals who aren't lawyer's, and corrections professionals. The process also includes the people decisions directly affect - suspects, defendant's, convicted offender's, and victims (Figure 1.1) (Bottomly 1973, xiii).

- 2 -

Law enforcement, courts, and corrections agencies exist at all three levels of government: Local, State, and Federal.

## State and local agencies:

The principal state and local justice agencies include:

1. *Law enforcement:* Municipal police departments and county sheriff's offices;
2. *Courts:* Lower criminal courts, criminal trial courts, state courts of appeall, and probation offices;
3. *Corrections:* County and municipal jails, state prisons, & community corrections agencies.

Local agencies employ 60 percent of all criminal justice employees; most are law enforcement officers (figure (1.2).

## Federal agencies:

Criminal justice is (and it's supposed to be) a state and a local affair. But the role of federal criminal justice has grown steadily since the 1960's; it increased more quickly during the 1980's and 1990's when new federal drug, gun, and violent crime laws were passed. The increasing federal role in law enforcement is sure to continue in the wake of the September 11, 2001, attacks on the World Trade Center and the Pentagonn and the spread of anthrax cases in several states that followed. These acts produced the "largest criminal investigation in the government's history" - 7000 agents and employees were put on the case (Savage and Lichtblau 2001). The **American Patriot Act,** signed by President George W. Bush in October 2001, expanded the definitions of federal terrorist crimes and the power of the FBI to investigate and apprehend suspects in these cases. At the signing of the act, the president said federal law enforcement's highest priority would be to prevent, investigate, and bring violator's of terrorist laws to justice.

These federal law enforcement agencies include familiar names: FBI, DEA, and ATF. Anyone who watches many TV cop shows and movies knows that turf wars exist between the "feds" and local law enforcement. Rivalry between federal and local law enforcement is old and natural in our federal system, which divides power between national and state and local governments. So, it's not surprising the new emphasis on federal enforcement of laws against terrorism immediately caused a turf war in the investigation of the September 11 attack.

The federal court system consists of names that probably aren't as familiar to you as federal law enforcement agencies:

* U.S. Attorney's offices:
* U.S. Public Defender's offices:
* U.S. Marshal's: The federal law enforcement officer's responsible for transporting and supervising federal suspects and defendant's.

## THE FEDERAL COURTS INCLUDE:

* U.S. Magistrates Judicial officer's who issue warrant's and conduct pretrial proceedings;
* U.S. District Courts: The federal criminal trial courts;
* U.S. Court of Appeals: The federal intermediate court of appeals; they hear both from federal district courts and often from state courts involving constitutional questions;
* U.S. Supreme Court: The nation's court of last resort.

## FEDERAL CORRECTIONAL AGENCIES INCLUDE:

* **U.S. Probation Office:** Supervises persons convicted of federal offenses who aren't sentenced to prison;
* **Federal Bureau of Prisons:** Supervises incarcerated federal offenders.

- 3 -

# THE PROCESS OF CRIMINAL JUSTICE

The process of criminal justice of a series of decision points (Figure 1.1). Law enforcement starts the process by deciding whether to investigate crime and apprehend suspects. Prosecutors continue the process by deciding whether to charge suspects and what crimes to charge them with. Next, prosecutors, defense counsel, and judges all **participate** in deciding bail, disposition (trial or plea of guilty), and sentencing of offenders in their custody and **participate** in deciding if, when, and how prisoners return to society. *The process boils down to deciding whether to move people further into the system and when and under what conditions to remove them from it (Table 1.1).*

## THE CRIMINAL JUSTICE "SYSTEM."

The structure and process of criminal justice together are what we call the **criminal justice system**. The dictionary defines a system as a "collection of parts that make up a whole." The parts of criminal justice - police, courts, and corrections - fit this definition: Together, they make up the structure, or public agencies, engaged in crime control; and they process people as part of their efforts to control crime. Like most processes, decisions in **criminal justice produce "products."** *What are the products," and who makes them?*

* **Law enforcent** - Officers *produce* **suspects** when they arrest them;
* **Prosecutors** - *produce* **defendant's** when they charge suspects with crimes:
* **Courts** - *produce* **offenders** when they convict defendant's.
* **Corrections** - *produce* **ex-offenders** when they release them from custody. (Remington et. al. 1976, 19-20)

The parts of the system are interdependent because decisions of one agency affect decisions in other agencies. For example, state laws that say police officers have to arrest suspects in all alleged domestic assault cases. Before mandatory arrests laws, police took things like age, mental illness, & amount of aggressiveness into account to decide whether to arrest. So, now do things like age, mental illness, & amount of aggressiveness matter? However, now prosecutors, rather than police officer's, use their discretionary decision whether to charge arrested men (assailants are mostly men) with assault. We call this *shifting of discretion from one agency to another the* **hydraulic effect**. It means if you compress discretion at one point, it'll pop up somewhere else. Criminologist Lloyd E. Ohlin, sums up **independence** in criminal justice a system, describing it as:

"A system of complex individualization of justice, adaptively balanced, not easily controlled, and certainly not inevitably improved by attempts to mandate choices, remove discretion, or impose well-meaning but simplistic panaceas on such a highly complex process." (Ohlin 1993, 10)

"System" isn't a completely true description of criminal justice for **two reasons. First,** *criminal justice agencies have a lot of* **independence**. They get their **authority** and their **budgets** from **different sources.** Police departments get their power and money from **cities and towns.** Sheriff's departments, prosecutors, public defender's, jails, & trial courts get their power & money from **county** budgets. Appeals courts & prisons get theirs from the **state.**

**Second,** agencies set their **own policies**, rarely if ever coordinating them with other agencies. And even *less individuals within these agencies* **think about the effects of their decisions** on other agencies. For example, when police officers arrest suspected drunk drivers, child molester's, burglars, and thieves, **they're not thinking** about how their arrests are going to affect the "system" (giving prosecutors more work, courts heavier case loads, & prisons more prisoners). Why? Probably because the **consequences** of their decision are too far down the line to worry about them. So, each agency becomes *its own little subcriminal justice system. In reality, Prof. Ohlin writes:*

" *[T]he criminal justice process reduces cases processed from its broadest net of police intervention to final incarceration. Cases going all the way exhibit the system as a system. But absent rigid legislative mandtes or other external controls on discretion, most ... criminal cases are not subject to maximum processing. Full enforcement exists, but other abbreviated system exist to deal with problems & infinite variety of persons dealt with by govt. agents. (ohlin 1993, 11).*

- 4 -

Case 3:19-cv-00628 Document 1-9 Filed 07/24/19 Page 27 of 50 PageID #: 107

## MODELS OF CRIMINAL JUSTICE:

Some useful models help us picture the essence of the criminal justice system. Keep in mind models are simplifications of reality, because to highlight the essentials they dim the details of total reality. Let's look at the crime control model and the due process model.

In an influential article written in 1964, Stanford University law professor, Herbert Packer, built two models of criminal justice on two values of our constitutional democracy - crime control and due process (Packer 1964, 113). According to the value of crime control, criminal justice *exists to reduce crime for the good of the whole society.* According to the value of due process, criminal justice *exists to guarantee fair procedures for every individual.* Most people put crime control high on their list of priorities when it comes to criminal justice. But crime control doesn't mean controlling crime at any price. We have to respond to crime within limits placed *on government power* by the values of our constitutional democracy. So, officials fighting crime have to respect the life, liberty, privacy, property, and dignity of all people no matter how much we hate them or what they do.

## THE CRIME CONTROL MODEL

The crime control model *focuses on the need to protect* people and their property, partly for the victim's sake but also for the good of society. If people don't feel safe, they *lose their capacity to function* and enjoy the rewards that should come from playing by the rules. At the end of the day, crime control guarantees social freedom by protecting people and their property. To make good on this guarantee, criminal justice *decisions have to sort out the guilty from the innocent,* let the innocent go as soon as possible, and convict and punish the guilty, also soon as possible. Notice *speedy decisions aren't enough; they have to be right too.* We don't want to convict innocent people and let guilty ones go free, not just because it's unfair but also because it leads to time wasting, expensive second-guessing of decisions already made. In other words, we also *want decisions to be right* because *we want them to be final.* (packer 1968, 158).

Informal decision making is the best way to ensure speed and accuracy. In Professor Packer's words, "[T]he process must not be cluttered up with [the] cerimonious rituals" of a formal legal contest. For example, *police interrogations gets to the truth faster and better than examination and cross-examination during a trial.* Negotiations out of court between prosecutor's and defense lawyer's are *more efficient and fairer than* time-consuming, formal court proceedings. According to Packer, the crime control model *operates like*

"an assembly line conveyor belt down which moves an endless array of cases, never stopping, carrying the cases to worker's who stand at fixed stations and who perform on each case as it comes by the same small but essential operation that brings it one step closer to being a finished product, or, to exchange the metaphor, a closed file. (Packer 1968, 159) (Fig. 1.5)

*The presumption of guilt* (people caught up in criminal justice are probably guilty) fits with the premium *placed on fast* and *accurate crime control.* The *presumption* comes from notion *police wouldn't have arrested a suspect & prosecutors wouldn't have charged her unless she'd done something wrong.* Court's shouldn't "handcuff" *police and stymie prosecutor's* by setting up costly, *time-consuming hurdles on their efforts to find the truth.* Give police officer's leeway to detain, search, & interrogate suspects so they can sort guilt from innocence. Let prosecutor's bargain for guilty pleas to get guilty punished & redeemed as soon as possible. As you can see, the *crime control model emphasizes the early stages* in criminal justice - police investigation & guilty pleas.

One final point: *The model isn't too worried about* mistakes and unfairness. Why? First, *because of three (3) assumptions* based upon confidence *in government power;* police and prosecutors *rarely make mistakes; they don't base their decisions on personal prejudices* even if they are prejudiced; and *most suspects really are guilty of something.* Second, the need for crime control outweighs the suffering of the few innocent people *who get caught up in the system* - it's better a few innocent people get convicted *than guilty people go free.* Third, *sooner or later the innocent are vindicated* - usually sooner rather than later. At the end of the day, the model *expresses more* fear of criminals *than government.*

- 5 -

## THE DUE PROCESS MODEL:

According to the **Due Process** model, it's more important to **guarantee the righs** of individuals to **fair procedures** (the government claims to provide, but in reality don't apply - a fraud upon the people at large; Title 18 USC § 1346), than to catch criminals. In fact, the best definition of due process is fair procedures. **"Fair procedures"** means decision-making according to formal rules growing out of the Bill of Rights and the due process clauses of the United States Constitutions (chapter 2). The commitment to decision making by formal rules is based on a **distrust of government power** and the need to control it. In Professor Paul Bator's hard words, "The criminal laws's **notion** of just condemnation and punishment is a **cruel hypocrisy** *visited by a smug society on the* **psychologically** and **economically crippled"** (Bator, 1963). So we have **thrown up barriers to government power** at each step in the criminal process to prevent further involvement in the risky business of criminal justice. It shouldn't surprise us that *due process models resemble's an obstacle course, not an assembly line* (Packer 1968, 170) (Fig. 1.6 Table 1.2).

*Creating due process obstacles is based on the idea* that **you can't find the truth informally** because **human failings** - like our **faulty powers** *of observation*, our **motivation** of **self-interest**, our **emotions**, and our **prejudices** - *stand in the way*. The model puts great confidence in the **adversary process** - *getting to the truth by fighting in court according to the* **formal rules of criminal procedure** (Chapter 7-8). So, in the due process model, the trial is the high point of criminal justice. Why? **Formal public proceedings** reduce the chances that **mistakes, emotions, and prejudices** *will infect decision making* because skilled **lawyers** argue their side of the story in front of **neutral judges** acting as **umpires**, and *impartial juries* decide **who's telling the truth.**

**Distrust of government power** and the **need to control** it also means operating according to the **presumption of innocence.** The government always has the burden to justify it's use of power even against people who turn out to be guilty. When all is said and done, *the* **due process model** *expresses more* **fear of Government** *than criminal.* (The purpose behind the Declaration of Independence, and Bill of Rights). Has the U.S government proved over time, that we can trust it with unbridled discretion, and rely upon the fact; that our government agents will always do right?

"A fundamental goal of our system of government, to the extent possible, we be governed by laws rather than men." City of Lebanon v. Baird, 756 S.W.2d 236, 242 (Tn. 1988) (Ultra vires); "It's the abiding truth that 'nothing can destroy a government more quickly than it's failure to observe its own laws,' or worse the charter of it's own existence." Mapp v.Ohio, 367 U.S. 643, 659, 81 S.Ct. 1684, 1694 (1961)

**For example,** modern times; Eric Snowden's complaint 6/27/13. The way USA / NSA's interpretation of FISA (Foreign Intelligence Surveillance Act); and it's legal authority under the American Patriot Act; the mass surveillance and bulk collection of American Citizens, stored electronic communications (Title 18 USC § 3122(a)), including pictures. See also: U.S. v. Omni International Corp., 634 F.Supp. 1438 (1986) (Supervisory power to prevent courts "from becoming accomplices to misconduct by inappropriately learning Atty./ client confidential information). **The question becomes,** *can we trust our government to* **police itself** ?

"Due Process' emphasizes Fairness between the state and the individual dealing with the state" (1991) Ross v. Moffit 417 U.S. 600, 609, 94 S.ct.2437, 2443. [Fundamental Fairness entitles indigent defendants to a adequate opportunity to present their claims Fairly within the adversary System," ] Cited Pennsylvania v. Finley 107 S.ct. 1990, 1999-2000 (1987) State v. Ray, 973 swd 246 n 248 (W.Grn) (1997)

European Process → The Civil-law System is inquisitional rather than adversarial and the Judge Normally questions the witness and prepares a written Summary of the evidence." Societe Nationale v. U.S. Dist. Court, S.D. Iowa, 107 S.Ct 2542, 2564-6- (1987) Note: This case is one addressing International treaties on Taking evidence interrogatories + Between France and the United States taking Evidence Abroad in Civil or Commercial (Matter) (the Hague Convention) Id at 2561 N. 8

# AMERICA'S COURTS AND THE CRIMINAL JUSTICE SYSTEM
## By David W. Neubauer - Eighth Edition (Instructor's Edition)

## CHAPTER TWO: THE LEGAL SYSTEM:

## THE ADVERSARY SYSTEM:

Law is both substantive and procedural. **Substantive law** creates legal obligations. Tort, contract, and domestic relations are examples of substantive criminal law. **Procedural law,** on the other hand, establishes the methods of enforcing these legal obligations. Trials are best-known aspect of American procedural law, but trials do not exist alone. Before trial there must be orderly ways to start lawsuits, conduct them, and end them. An important aspect of procedural law centers on the role lawyers and judges play in the legal process.

In many nations of the world, criminal investigations are conducted by a single government official whose function is to establish a unified version of what happened, seeking out facts that show the defendant's guilt as well those that indicate that he or she is innocent. Under the **adversary system,** the burden is on the prosecutor to prove the defendant guilty beyond a reasonable doubt, and the defense attorney is responsible for arguing for the client's innocence and asserting legal protections. The **judge** serves as a neutral arbitrator who stands above the fight as a **disinterested party,** *ensuring that each side battles within the established rules.* The **adversary system** *reflects two important premises;* the need for **safeguards** and the **presumption of innocence.**

### SAFEGUARDS:

The guiding assumption of the adversary system is that two parties, approaching the facts from entirely two different perspectives, will uncover more of the truth than would a single investigator, no matter how industrious and objective. Through cross-examination, each side has the opportunity to probe for possible biases in witnesses and to test what witnesses actually know, not what they think they know. The right to cross-examination is protected by the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with witnesses against him."

By putting power in several different hands, the adversary system creates another type of safeguard. Each actor is granted limited powers, and each has limited powers to counteract the others. If the judge is biased or unfair, the jury has the ability to disregard the judge and reach a fair verdict; if the judge believes the jury has acted improperly, he or she may set aside the jury's verdict and order a new trial. This diffusion of power in the adversary system incorporates a series of checks and balances aimed at curbing political misuse of the criminal courts.

In diffusing power, the adversary system provides a third safeguard: It charges a specific actor - the defense attorney - with asserting the rights of the accused. Defense attorney's search out violations of the rights of the accused. They function as perpetual challengers in the criminal court process and are ready at every juncture to challenge the government by insisting that the proper procedures be followed.

### PRESUMPTION OF INNOCENCE:

One of the most fundamental protections recognized in the American criminal justice process is the **presumption of innocence.** The state has the burden of proving defendant's guilty of alleged crimes; defendants are not required to prove themselves innocent. In meeting the obligation to prove the defendant guilty, the prosecutor is required to prove the defendant guilty **beyond a reasonable doubt.** This legal yardstick measures the sufficiency of the evidence; it means that the jury must be fully satisfied that the person is guilty. It does not mean the jury must be 100 percent convinced, but it comes close (Oran 1985). this criterion is more stringent than the burden of proof in a civil cases, in which the yardstick is the **preponderance of the evidence,** meaning a slight majority of the evidence for one side or the other; Case close-up: Two verdicts in the O.J. Trial illustrates how differing burdens of proof can lead to different verdicts.

- 7 -

## THE RIGHTS OF THE ACCUSED:

**Procedural law in the United States** places a heavy emphasis on protecting the individual rights of each citizen. A key feature of a democracy is the insistence that the prevention and control of crime be accomplished within the framework of law. The criminal process embodies some of society's severest sanctions: detention before trial, confinement in prison after conviction, and, in certain limited situations, execution of the offender. Because the powers of the criminal courts are so great, there is concern that those powers not be abused or misapplied. The Judeo-Christian tradition places a high value on the worth and liberty of each individual citizen.

Restrictions on the use and application of government power take the form of rights granted to the accused. One of the most fundamental protections is the right to remain silent. Another is the right to trial by jury. These protections exist not to free the guilty but to protect the innocent (see exhibit 2-2). Basing the criminal justice process on the necessity of protecting the individual liberties (of the innocent and guilty alike) obviously reduces the effectiveness of that process in fighting crime. To ensure that innocent persons are not found guilty, Anglo-American criminal law pays the price of freeing some of the guilty. The primary justification for providing constitutional safeguards for those caught in the net of the criminal process is to ensure that innocent persons are not harassed or wrongly convicted. The American legal system is premised on a distrust of human fact-finding. The possibility of wrongly convicting an innocent person arises when honest mistakes are made by honorable people. But it also arises when dishonorable officials use the criminal justice process for less-than-honorable ends. In countries without built-in checks, the criminal justice process *provides a quick and easy way for government officials to dispose of their enemies.* For example, a common ploy in a totalitarian government is to charge persons with the ill-defined crime of being an "enemy of the state." The possibility of political misuse of the criminal justice process by a tyrannical government or tyrannical officials is a major concern in the Anglo-American heritage.

Another reason, that democracies respect the rights of those accused or suspected of violating the criminal law is the need to maintain the respect and support of the community. Democratic government derive their powers from the consent of the governed. Such support is undermined if power is applied arbitrarily. Law enforcement practices that are brutal or overzealous are likely to produce fear and cynicism among the people - lawbreakers and law abiders alike. Such practices undermine the legitimacy that law enforcement officials must have to enforce the laws in a democracy.

## DUE PROCESS:

The principal legal doctrine limiting the arbitrariness of officials is due process. Due process of law is mentioned twice in the constitution:

* "No person shall ...be deprived of life, liberty or property without due process of law." (5th amend.).

* "No state shall deprive any person of life, liberty or property w/o due process of ..." (14th amend.).

The concept of **due process of law** has a broad and somewhat elastic meaning, with definitions varying in detail from situation to situation. The core of the idea of due process is that a person should always be given notice of any charges brought against him or her, that a person should be provided a real chance to present his or her side in a legal dispute, and that no law or government procedure should be arbitrary. The specific requirements of due process vary somewhat, depending on the Supreme Court's latest interpretations of the Bill of Rights.

## BILL OF RIGHTS

A major obstacle to the ratification of the Constitution was an absence of specific protections for personal rights. Many leaders of the American Revolution opposed adoption of the Constitution, fearing a proposed national government, would threaten Americans rights, like the king of England.

TCA 8:39-11-203(e)(2) Fed Judge Made Law SoSa, 124 S. Ct. 2739, 2776 (2004)

*Problem: This is a federal Court applying federal law*
**Not on Point** *Zero consideration of Diversity of laws (Stote of tenn Const.)*
*Williams case is not a capital case 18 USC §3235*

## Williams v. United States, 582 F.2d 1039 (1978)

**RELEVANCE:** Cited by Federal Judge Breen, in Hall v. Bell, 05-1199-JDB-egb Document # 122 @ page 8, public record http://www.tnwd.UScouurts.gov/ for electronic filing and notification.

*"Privilege" USCA Art. IV §2*

*It is Fed Matter.* **1. Criminal Law KEY 997.4**

Inasmuch as "venue" is a *privilege* granted to accused rather than a jurisdictional prerequisite, issue of improper venue could not be asserted in post-conviction review proceeding. U.S.C.A., Const. Amend. 6; 18 U.S.C.A. § 3237; 28 U.S.C.A. § 2255. *Subject Matter Jurisdiction is never forfeited or waived: Defects require correction regardless of whether error Raised in Dist. Court. US v. Cotton 535 U.S. 625, 630 (2002)*

**2. Criminal Law KEY 997.3**

In order to obtain post-conviction relief for error at trial, not objected to by defendants, which is in violation or laws of the United States, claimed error of law must be a **fundamental defect** which results in a miscarriage of justice, or which presents exceptional circumstances where the need for remedy is apparent. U.S.C.A. Const. art. 3, § 1; Amend. 6; 18 U.S.C.A. § 2255.

*State v. Cleveland 959 SW2d 548, 553 (Tenn 1997) (defy Harmless error Analysis)*

**3. Criminal Law KEY 997.4**

Mere allegation of improper venue was not such a *fundamental defect* of law that accused would be entitled to post-conviction relief after not objecting to error at the time of trail. U.S.C.A. § art. 3, § 1; 18 U.S.C.A. § 3231; 28 U.S.C.A. § 2255.

**⌐ 1040**

*Key: This was a State Prosecution § 6, Art. 1 §6, outcome Test Eire v. Gravatt changes S.d.*

*Governed by tenn Const Art. 1 §9 Rules of State Courts*

Proper venue in (federal criminal prosecution) is twice assured in the Constitution. Article III, section 2, paragraph 3 provides:

The Trial of all Crimes, except in Cases of Impeachment, shall be held in the State where said crimes have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed. *Venue Provision - It specifies the Place of trial*

The Sixth Amendment elaborates:

*Fed word = District*

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial Jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. *Vicinage Provision - It specifies where juror must be selected*

These constitutional guarantees are reflected in the various venue statutes, including 18 U.S.C. § 3237, which governs "continuing offenses" such as the one with which Williams is charged:

. . . [A]ny offense against the United States begun in one district and completed in another in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

- 1 -

*Personal Privilege - is covered by Article IV, §2 of the U.S. Constitution... ©*

Williams v. U.S. Continue

The sole issue on this appeal is whether the right to proper venue guaranteed by these provisions can be asserted in a post-conviction review proceeding. The scope of inquiry under the habeas corpus power has expanded dramatically within the last few decades from its original limitation to

## Williams v. United States (Continued)

an investigation of the propriety of the jurisdiction asserted by the sentencing court. It is difficult to generalize about the variety of grounds upon which relief is now available. § 2255 itself is not particularly enlightening, providing that relief may be granted "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ."

Petitioner asserts that an allegation of improper venue is cognizable in a § 2255 proceeding on three separate grounds, though the three are intertwined. He contends that proper venue in a criminal case is a *Important* jurisdictional prerequisite, fundamental to our constitutional administration *Right...* of justice. Furthermore, denial of the right to a trial in the proper district is a denial of a constitutional [ 1041 right so important that it is guaranteed (twice) in the Constitution. Finally, such a trial with improper venue would have been conducted "in violation of the . . . laws of the United States," because proper venue is further mandated by 18 U.S.C. § 3237.  *18 USC § 3235*
                                                                                       *§ 32 35*

If proper venue is a jurisdictional prerequisite, the issue can be freely raised under § 2255, because a lack of jurisdiction means that the sentencing court was wholly without power to act, and any conviction obtained is void. Petitioner is not without support in his position that proper venue in a criminal case is a jurisdictional issue. The Fourth Circuit has described proper venue as a "jurisdictional imperative." United States v. Grossman, 400 F.2d 951, 953 (4th Cir.) cert. denied, 393 U.S. 982, 89 S.Ct. 453 (1968) and the Seventh Circuit has squarely held that an allegation of improper venue is a "jurisdictional challenge . . . [S]uch a jurisdictional attack is an appropriate subject of a § 2255 proceeding to determine if petitioner's claim of improper venue has any merit." Domer v. Smith, 422 F.2d 831, 832 (7th Cir. 1969). Furthermore, the language of Article III, section 2 is mandatory: "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." (Emphasis Added). *18 USC 3235*
                                                                                       *is subject-Matter*

Nevertheless, we conclude that the issue of venue is not a jurisdictional issue. In deciding a nearly identical issue the Supreme Court held long ago that the jury provisions set out in the same paragraph of the Constitution in the same mandatory language were a "valuable privilege bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the King and the arbitrary or partial judgment of the court," rather than being a necessary "part of the structure of government." *Key* The Court went on to rule that "article 3, § 2, is not jurisdictional," but *Confer* was meant to confer a right upon the accused which he may forego at his *A Right"* election. To deny his power to do so, is to convert a privilege into an imperative requirement." Patton v. United States, 281 U.S. 276, 296-298, 50 S.Ct. 253, 258 (1930).           *18 USC § 3235*

- 2 -

Confer-(1) Give ; (2) need to Discuss

We conclude that venue is likewise a privilege granted to the accused rather than a jurisdictional prerequisite, a conclusion which is consistent with the overwhelming case law holding that improper venue may be waived.

## Williams v . United States (Continued)

The jurisdiction of the federal courts, their power to decide cases, is established by Congress and the Constitution. Article III, § 1 vests the "judicial power," including the power to try federal crimes, in the Supreme Court and such inferior courts as Congress may ordain and establish. Congress has in turn provided that district courts have subject matter jurisdiction over all offenses against the laws of the United States, wherever the offense may have occurred. 18 U.S.C. § 3231. We do not believe that the constitutional provisions relied upon by the petitioner are a limitation on this power; rather they guarantee a privilege to the accused. United States v. Polin, 323 F.2d 549 (3d Cir. 1963).

Tw. State Const. Art. 1 3 9 = Right

[1,2] Since allegations of improper venue do not raise a question of jurisdiction, which would be cognizable under § 2255, the next question is whether the trying of a case in an allegedly improper district, "without objection" by the defendants, is "in violation of the Constitution or laws of the United States." At first glance, it seems to be both, but this is one of the phrases which the courts have never interpreted to be as broad as it appears. Given the rapid development of habeas corpus law in recent years, decisions as to whether any particular error is cognizable under § 2255 are not carved in stone, but the Supreme Court has provided some general guidance. The phrase does not permit collateral attack on every asserted error of law. Rather, in order to obtain § 2255 relief, the claimed error of law must be a fundamental defect which results in a miscarriage of justice, or which presents exceptional circumstances where the need for the remedy is apparent. Davis v. United States, 415 U.S. 333, 346, 94 S.Ct. 2298 (1974).

[3] A mere allegation of improper venue, in our judgment, fails to satisfy either § 1042 criteria. We do not disparage the importance of venue in a criminal trial; the venue provisions provide a necessary defense to the "unfairness and hardship to which trial in an environment alien to the accused exposes him." United States v. Johnson, 323 U.S. 273 275, 65 S.Ct. 249, 250 (1944). Mr. Justice Douglas has identified the origins of the constitutional venue provisions in the pre-Revolutionary British practice of transporting Americans to England or another colony for trial. Johnston v. United States, 351 U.S. 215, 224, 76 S.Ct. 739 (1956). Nevertheless, in the absence of any allegation of bad faith on the part of the Government or prejudice to the Defendant, improper venue will not ordinarily result in a "miscarriage of justice," an: presents no extraordinary need for post-conviction relief.

Most other circuit courts agree with the result reached here, though the reasoning is not always the same. The Eighth Circuit, in Houser v. United States, 508 F.2d 509 (8th Cir. 1974) held that as a "pretrial matter," venue is not subject to collateral attack because failure to raise the issue at trial constitutes waiver, relying on Fed.R.Crim.P. 12 (b) and (f) [3] Baeza v. United States, 543 F.2d 572 (5th Cir. 1976) (waived by guilty plea); Marcella v. United States, 344 F.2d 876 (9th Cir. 1965), cert denied, 382 U.S. 1016, 86 S.Ct. 630 (1966).

- 3 -

State v. Hall, 8 S.W.3d 593, 603-04 (Tn. 1999)

## DENIAL OF RIGHT TO TESTIFY

[16 - 17] At the conclusion of proof in both the guilt and the penalty phase, the trial court sought to have the defendant take the stand to confirm that he knowingly and intelligently decided not to testify at trial after consultation with his attorneys. On both occasions, the defendant refused to be sworn to testify unless the trial court removed the "flag of war," i.e., the United States flag, from the courtroom. [f.n. 6] The trial court refused to remove **\*604** the flag and proceeded to inquire of defense counsel whether counsel had explained the defendant's right to testify and whether the defendant had knowingly and voluntarily waived this right. Counsel indicated that they fully explained to the defendant the complementary rights to testify in one's own defense and to be free from self-incrimination, after which he chose not to testify. The defendant now asserts that the trial court's refusal to remove the flag infringed on his right to testify on his own defense. *We note that the defendant **did not file any motion** during the guilt or sentencing phase expressly requesting **removal of the flag** so he could exercise his right to testify.* This issue was not raised in either the Motion for New Trial or in the Court of Criminal Appeals. Technically the issue has been waived. Tenn.R.App.P., Rule 3(e), & 36(a). In any event, a trial court's refusal to remove the United States flag from the courtroom does not violate anyone's constitutional rights. This issue is wholly without merit. *State v. Ray, 973 SW2d 296, 298 (Tn. Crim App. 1997) (The Function of a Judge is ... [not] a Prosecution, to uncover hidden wrongs, to build a case. His conclusion is [not] to be announced on a case developed by himself.)*

N. 6. Although the record is not completely clear, the defendant apparently perceived gold fringe ornamentation on the courtroom flag to be symbolic of martial law jurisdiction. We note that the display of the United States flag with gold fringe is common in many ceremonial settings, including courtrooms. From a historical and legal standpoint, the use of fringe on the flag has no inherent or established symbolism. It has nothing to do with the jurisdiction of the court or with martial law. Its purely a decorative addition to enhance the appearance of the flag. *See fringe on the flag?* New England Journal of Vexillogy (Online edition, 1997): Data Summary Sheet No. 1 3/95, Flag Research Center (1995); see also Schnieder v. Schlaefer, 975 F.Supp. 1160, 1163 (E.D. Wis. 1997) (Finding that fringe on the flag was not of any legal significance affecting the jurisdiction of the court and holding all future claims based on this argument "frivolous and sanctionable"); Sadlier v. Payne, 974 F.Supp. 1411, 1414 (D. Utah 1997) (Holding yellow fringe on flag does not convert state courtroom into a "foreign state power."); McCann v. Greenway, 952 F.Supp. 647, 650 (W.D. Mo 1997) (Reviewing history of the American Flag); United States v. Greenstreet, 912 F.Supp. 224, 229 (N.D. Tex. 1996) (Finding fringed flag did not limit federal district court's jurisdiction); Vella v. McCammon, 671 F.Supp. 1128, 1129 (S.D. Tex. 1987) (holding yellow fringed flag did not divest federal court of jurisdiction to impose penalties for civil and criminal contempt.)

**NOTE:** There was a pro-se motion filed, T.T.R. V. 2, Pg. 153-155; RE: Flag. See also: Post-Con. Rec. Vol. 3, P. 377. State's position: State v Gilbert 751 SW2d @ 462 (Tn 1988) (Waive venue by testifying)

## MISCONSTRUING CONSTITUTION LAWS TO DENY PRIVILEGES AND IMMUNITIES

Jon Hall's **Motion For Summary Judgment / Fraud Upon the Court,** *shows the type of persecution here arising under dual sovereignty, Title 28 USC § 1367; TCA § 16-3-504, to breath life into a void judgment for fraud, by* **arising under** the **law of the flag** 22 USC § 454. New Deal Legislation by FDR 1933, turned Jefferson theory; *the Government can do only what was explicitly enumerated by the Constitution;* **to** the Government can *do anything it wants* **as long as** it is not specifically *prohibited* by the *Constitution,* abusing U.S. Const. *Art. 1, § 8 cl 3;* **commerce clause;** & **(Art. 1, § 8,** cl **11, war powers;** & *Art. 1, § 8,* cl **18, make laws necessary & proper);** *creating* **criminal / civil hybrid laws,** that in this case VIOLATED Tn. Const. Art. 1, § 15, and US Constitution Art. 1, § 9 (2) suspending habeas corpus, or *preempting laws in summary manner,* under mask of **discretion,** that violate **1st, 4th, 5th, 6th, 8th, 9th, 10th, & 14th** Amendments. *By construing informal laws* in **ultra vires** (Tn. Const. Art. 1, § 20), to **breath life** into a **void judgment** that **prejudice** *due process, & equal protection of state law on privileges (Tn. Const. Art. 1, § 8, and Art. XI, § 2 & 8) with scheme to defraud* Title 18 USC § 1346. *Government's treat citizen's as chattel,* and applying **Monroe Doctrine** by *presidential War against crime control policy* TCA § 4-5-216 & 16-3-403; *to deny public equal protection rights.* Making **strict construction of statutes inapplicable,** TCA § 39-11-203(e); by **equity jurisdiction courts,** *using* **collusion,** and **implied contracts** inside Court's bar, in violation of Title 28 USC § 1359. Abusing **inferior powers** and **misled citizens** *with contemptuous contracts* that refuse *due process and equal protection of law on* **privileges** and rights secured by **U.S. Const. Art. IV, § 2 (1)** *and (Tn. Const. Art. 1, § 8, and Art. XI, § 2 & 8);* **Ninth, Tenth** and **Fourteenth** Amendments. See: **Magevny v Karsch** 65 SW2d @ 565 (Tn 1933) (Powers; **strict construction irrelevant;** *burden shifting presumptions);* & lies about source of power. State v Hall 8 SW3d 593, 603-04 n.6 (Tn 1999) (Flag). *Trial Tech. Rec, Vol. II, page 193, § 2 (Flag);* **Jackson Sun News** 2/4/97 @ pg. 3A, said: **"A shackled Hall,** wearing gray slacks and light blue cotton shirt with an *American Flag* pocket protector, seemed to grow weary of repeated trips to jury room during the selection process." **NOTE: Coercion & Duress** - restrained & led by armed guards, under threat of death, makes any assumed implied contract a void **unconscionable adhesion contract.**

"The flag is the symbol of the Nation's power, the emblem of freedom in its truest and best sense, and that all lovers of the country, **the flag signifies** government resting on the **consent** of the governed; **liberty regulated by laws;** protection of the weak against the strong; security **against the exercise of arbitrary power** and absolute safety for free institutions against foreign aggression." Halter v. Nebraska, 205 U.S. 34, 43, 27 S.Ct. 419 (1907). "The flag identifies United States merchant ships; Title 22, USC § 454; and [t]he laws of the Union protect our commerce wherever the flag of the country float." Texas v. Johnson, 109 S.Ct. 2533, 2551 (1989). 10 USCA § 4594; 18 USC § 715; 1925, 34 Op. Atty. Gen. 483.

**Equity Jurisdiction** - A court's power to grant relief not available **at law** when justice so demands. **Ultra Vires** - Beyond the power. City of Lebanon v. Baird, 756 SW2d 236, 242, n. 2 & 245 (Tn. 1988) (Ultra vires - Govt. not permitted to rely on unauthorized acts to work a fraud; estoppel remedies).

The Federal Constitution is the sole source of power of United States to define and punish crimes. C.J.S. Vol. 22, § 12. For e.g. Post-Conviction: TCA § 40-30-203 (Grounds For Relief), is 10th Amend.

In construing the Constitution, the whole instrument **must** be taken into consideration and no part so construed as to impair or destroy any other part. Volmer v. City of Memphis, 792 S.W.2d 446, 448 (Tn. 1990). **NOTE:** Amendment IX: Rules of construction of constitution. The enumeration in the constitution, of certain rights, shall not be **construed** to deny or disparage others retained by the people.

**Penumbra Doctrine** - The doctrine of **constitutional law** that the rights specifically guaranteed in the **Bill of Rights** have "penumbras" creating other rights that are not specifically enumerated. Thus, for example, **freedom of association** is more than the **right to attend a meeting.** Privacy is also an example of a penumbra right.

The **implied powers** of the Federal Government predicted on the **necessary and proper clause** of the United States Constitution, Article 1, § 8 (18), permits **one implied power** to be **engrafted** on another **implied power.** CITED: Black's Law Dictionary. Bell v. Thompson, 125 S.Ct. 2825 ___ (2005) (The court of appeals relied upon its **equitable powers** to supplement the record on appeal (US Const. Art. 3, § 2 (1) and its **inherent powers** to reconsider our opinion prior to the issue of the mandate, which has not issued in Thompson v. Bell, 373 F.3d 688, ___ (2004)).

The Supreme Court has admitted the phrase **"arising under"** masks a welter of issues regarding the **interelation** of Federal and **State Authority.** Evans v. Evans, 668 F.Supp. 639, 643 (M.D. Tn. 1987) **NOTE:** Document 110, PageID1352 (4/14/10) (Jurisdiction issue construed).

The Supreme Court has interpreted the principle of the case as requiring in cases of diversity jurisdiction that a Federal Court adjudicating claims **arising under** state law arrive at substantially the same **outcome** as would a court of the State in which it sits. Guaranty Trust Company vYork, 326 U.S. 99, ___ (1945). **NOTE:** Title 18 USC § 715 (Eagle Insignia- represents the Department of Interior).

**OUTCOME TEST** - The rule that, in a diversity of citizenship case, the federal court should apply state law to ensure the same result as would have been attained in state court. (Pendent Jurisdiction 28 U.S.C. § 1367; discretionary & plenary jurissdiction TCA § 16-3-504.

**Pendent jurisdiction** - will allow a federal court to decide claims alleging violations of the **state's** common law, regulations, statutes, or constitution that are not **federal constitutional nature,** as long as long as you have a non-frivolous federal law claim as well as arising from the same facts. Hagans v. Lavine, 415 U.S. 528, 545-47, 94 S.Ct. 1372 (1974).

**IMPLIED CONTRACT** - Is one not created or evidenced by the explicit agreement of the parties, but inferred by operation of the law, as a matter of reason and justice, from their acts or conduct, the circumstances surrounding the transaction, making it reasonable, or even necessary, assumption that a contract existed between them by (tacit-silent) understanding. Black's Law Dictionary.

**PREEMPTION CLAUSE** - The doctrine that once congress has enacted legislation in a given field, a state may not enact a law inconsistent with the federal statute. 5 U.S.C.A. § 601 (Rgegulatory functions, Ch. 6 Definitions); and Article VI., cl. 2, (Supremacy clause). Profill Development, Inc. v. Dills, 960 S.W.2d 17, 27 (T.App. 1997) (Under the Supremacy Cause, federal law may **preempt** the conflicting **state law** where: (1) Congress enacts a federal law that explicitly preempts **State authority,** (2) where Congress **impliedly** enacts a **pervasive scheme** of **federal regulation** that occupies a field leaving the state's no room to supplement the scheme, or (3) where **State law** actually **conflicts** with **federal law.** Where Congress expressly addresses the issue of federal preemption of **State law,** courts should **limit their preemption analysis** to the meaning of the **state law provision** instead of addressing the issue of **implied preemption**.)

**WELL PLEADED COMPLAINT** - Removal based on **federal question jurisdiction** is usually governed by well pleaded complaint rule. **28 USCA § 1441(b).** Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

**ABSTENTION DOCTRINE** - A principle often applied by the federal courts, under which the court declines to deide a matter if it can be decided by a state court.

**ADHESION CONTRACT** - Contract made by dominant party (usually form contract) & presented on a take-it-or-leave-it basis to a weaker party, who has no real oppurtunity to bargain on its terms.

**UNCONSCIONABLE CONTRACT** - is a contract in which a dominant party has taken unfair advantage of a weaker party, who has little or no bargaining power, and has imposed terms and conditions that are unreasonable and one-sided.

*Documents received to be given to Kelley Henry for upcoming Jan 2019 oral argument in the 6th cir.*

*Gaye Nease 01/15/2019 received 1 exhibits*

IN THE UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

Jon Douglas Hall, )
    Petitioner, )     **CAPITAL CASE**
Vs. )     CASE Nos. 10-5658; & 15-5436
Tony Mayes; Ernest Lewis, & Brandon )
Watwood, Warden(s) / Respondents. )

### MOTION FOR SUMMARY JUDGMENT / FRAUD UPON THE COURT

Comes now Petitioner Jon Hall, under Fed.R.Civ.P., Rule 56.01, for Summary Judgment in this action. There is no genuine dispute regarding the void record, just the results from misapplication of **bogus dictum** fraud used on State claims. The Madison Co. court is **in want of jurisdiction**. Chambers v Nasco 111 S.Ct. 2123, 2132 (1991) (Temple of justice defiled). In support of this motion, Hall claims:

1. The State has misrepresented **consent** was given, and **Rule 21** was followed in this matter, by asserting **two inconsistent positions,** in two different lawsuits **addressing the same facts,** within their knowledge, on **whether Tn.R.crim.P., Rule 21 was followed,** to prevail in both cases. Banker's Life Ins. v. Simmons 561 SW2d 460, 465 (Tn. 1977) (clean hands). In support of this view, the claimant states:

> (a) On December 5, 2002, (ADA) Alfred Earl's, presented the **FIRST** defense regarding a venue change, claiming: "The issue here is not the **IMPROPRIETY** of the granting or filing of the motion for a change of **venue**." Post Conviction Rec. (PCR ); Vol. 3, P. 377. Judicial **admission** implies proper **procedure** regarding a venue change **were not followed.** NOTE: The relevant part of Hall v. State, 2005 WL 22951 (1/5/05), listed as **EXHIBIT [1].**

> (b) On Nov. 5, 2003, (DAG) Jennifer Smith, presented the **SECOND** defense regarding a venue change, claiming: **"Tenn.R.CrimP. 21 gave the trial court authority** to grant a change of venue upon motion of the defendant, **as occurred in this case."**

2. *The State relied on **bogus dictum** taken from* State v. Hall 8 SW3d 593, 595 (Tn. 1999), that said: "the case was transferred from Henderson County to Madison County upon defendant's own motion for a change of venue." *Misapplying* **Judge made common law** taken from State v Nichols 877 SW2d 722 (Tn 1994); because a **motion** *for a change of venue,* must be supported by an **application / affidavits** under Tn.R.Crim.P, Rule 21(b); & TCA § 20-4-203, *to grant a competent court* authority *to act.*

3. *Extrinsic* **parol evidence** was also used, taken from dictum in Hall v State 2005 WL 22951 (1/5/05), Marked **EXHIBIT [1].** Stated: (*13 Regarding the change of venue, **Mr. Ford recalled reading newspapers articles** & determinied a change of venue was **"absolutely necessary."** He said that this matter was discussed with petitioner at length and that a motion was filed with his permission. Mr. Ford said Judge Lafon granted the change *without a hearing.* Mr. Ford **become aware of Hall's dissatisfaction with change of venue after the fact).** **Conclusionary statement** never proved by record to find **consent!**

- 1 -

*Proposed Exhibit For Lawsuit, @ Pg 24 § 68. Jon 7/20/19*
*See also; Page 31 § 86 - 87*

4. Also **dictum** in <u>Hall v. State</u>, 2005 WL 22951 (1/5/05), listed as **EXHIBIT [1]**; <u>stated</u>: (* 19 The **petitioner testified** that he *neither waived his right to a preliminary hearing* **nor asserted that he wanted to change venue to Madison County.** When questioned as to the possibility of testifying, he said his attorneys conducted a mock examination & they told him he should not testify. The petitioner said **he wanted to testify before a Henderson County Jury.** He added, however, that he also "argu[ed] an issue about the fact that the **FLAG** had a **gold fringe** and an **eagle on top** of it, and I told 'em that I felt that it was a ... representative of **a war court...**"). *This* **dictum** *was* **ignored** *by the court*. NOTE: **end of relevant dictum.** (<u>Begin</u>: * 22 Summary of Trial Court's **Findings of Fact** and Conclusions of Law.)

5. In <u>Hall v State / Bell</u> 2006 WL 2000502 *2 (7/19/06); listed as **Exhibit [2]**. (Petitioner asserts that he's entitled to habeas corpus relief because "he did not agree to a change of venue and the venue change was contrary to established law and procedure depriving the receiving court of jurisdiction." The record demonstrates petitioner filed two motions seeking a change of venue with the Henderson County trial court. The State apparently consented to the second of these motions and **the trial court authorized the change to Madison Co. under Rule 21 of the Tennessee Rules of Criminal Procedure.** [Taken from **dictum** in <u>State v Hall</u> 8 SW3d 595 (Tn 1999)] While the petitioner **now claims** that his trial counsel did not have his *permission to file the second motion,* that is **not a cognizable claim** for habeas corpus relief. <u>Archer</u> 851 SW2d at 164. In our view, the petitioner has failed to establish that the Madison Co. court was without jurisdiction. Thus, the court did not err by dismissing petition without a hearing. *Note:* **Gist of claim** shifted by *courts. Show me* **sine quo non records;** Tn.R.Evid. 703, 901(a)!

6. In <u>Hall v. Bell / State et. al.</u>, 2012 WL 1366612 (Tn.Crim.App. 3/16/12); listed as **Exhibit [3]**, the relevant part relies upon: <u>Hall v. State / Bell</u>, 2006 WL 2000502 * 2 (Tn.Crim.App. 7/19/06); and <u>provides</u>: The petitioner first contends that his conviction and sentence are **void** because the trial venue was transferred from Henderson County to Madison County **without his consent.** He argues that the trial court erred in changing the venue **without a hearing** and **over his objection.** The state also notes that this issue was **previously resolved** by this court in the Petitioner's first petition for habeas corpus relief. **We agree with the State.** Id. @ *2. **NOTE: If resolved show underlying data Tn.R.Evid Rule 703.**

The Petitioner contended in his first habeas corpus petition that the trial court lacked jurisdiction because he did not consent to the change of venue from Henderson to Madison County. This court stated the record showed that the "petitioner filed two motions seeking a change of venue with the Henderson County trial court." Jon Douglas Hall, slip op. at 1. This court also concluded that the petitioner's claim was **not a claim for which habeas corpus relief could be granted** Id. citing <u>Archer</u>, 851 S.W.2d at 164.) **WRONG: See:** Trial Trans. of Evid., V. 1, P. 7-8 **(Objection);** On face of trial record!

A **previous adjudication** of an issue **bars a petitioner** from raising the same issue in a subsequent petition for habeas corpus relief. <u>Meyers v. State</u>, 462 S.W.2d 265, 269 (Tn. 1970). **The Petitioner is prohibited from litigating this issue again in his second petition for relief.** Id. @ * 2.

- 2 -

_

7. In <u>Hall v Bell / State et. al.</u> 2012 WL 1366612 (5/17/12); listed as **Exhibit [4]**, the court used **dictum** at * 13, to *supply* <u>extrinsic **parol testimony**</u> *to fix an evidentiary* <u>**void**</u> trial record, and said:

In support of his request for rehearing, Petitioner contends the *issue of whether his conviction and sentence were* <u>**void**</u> because the trial venue was **transferred to another county** without his **consent** *was not previously decided.* **This is not accurate.** In the petitioner's first petition for habeas corpus relief, he argued he did not agree to a change of venue, which deprived the trial court of jurisdiction and rendered his conviction and sentence void. <u>Hall v. State / Bell</u>, 2006 WL 2000502 * 3 (Tn.Crim.App. 7/19/06) (Hall II). This court concluded that the record showed that "the Petitioner filed two motions seeking a change of venue with the Henderson County court," that the State consented to the second of these motions," and that **the trial court granted a change of venue pursuant to Tn. Rules Crim. Procedure 21.** Although Hall contends **the State perpetrated a fraud upon the trial court** during his first petition for habeas corpus relief, this court's review of the record showed defendant, through counsel, requested a change of venue. Likewise, *counsel testified at the **post-conviction hearing*** that a "*change was 'absolutely necessary*,'" the change was discussed with Defendant, & the motion for change of venue was filed with Defendant's **consent**, although venue change **not at issue.** <u>Hall v State</u> 2005 WL 22951 *13 <u>dictum</u> (1/5/05) (Hall I). Because issue was already decided, Petitioners not entitled to a rehearing... **When parties <u>agree</u>,** a <u>hearing</u> <u>is</u> unnecessary. This court's **opinions** *are* <u>not</u> *<u>inconsistent</u>*? **NOTE:** <u>Act</u> interpreted in **<u>summary</u> manner** *by a* <u>*special*</u> *or* **limited court!** Tn.R.Evid 703 & 901(a).

### SCHEME TO DEFRAUD / UNRAVELING THE MYSTERY:

8. Court powers granted (in 1933 F.D.R), at **variance** with criminal law, under Tn.R.Crim.P. 1 (e); Hall tried to protect <u>to his</u> <u>prejudice</u>, were illegally applied T.T.R., V. 2, P. 150-153; & PCR P. 1026-27 (Right to present defense). See <u>Magevney v Karsch</u> 65 SW2d @ 565 (Tn 1933), listed as **Exhibit [5]**.

9. *Reviewing court's* **failed to perform** their **duty** to decide **subject-matter jurisdiction** over the venue change and of accused on record (ignoring Tn.R.Crim.P. 1 (e); & Tn.R.Evid., 703, & 901(a)). <u>Trusty</u> 919 SW2d @ 309, N 4 (Tn 1996). Appellate court <u>must</u> determine whether trial & appellate court <u>have</u> **jurisdiction over the subject-matter** (TCA § 40-13-210; **Every jurisdictional fact must appear on record)** whether or not issue is presented for review, beyond a reasonable doubt. Tn.R.App.P. 13(b); & 13(e).

10. Courts *denied **strict construction of statutes*** and **shifted burden** by producing a **fraud** under the **unclean hands doctrine.** <u>Simmons</u> 561 SW2d @ 465 (Tn 1977). Then, **misapplied** off point common law & <u>dictum</u> to ignore Strict Construction rules in criminal cases. The State did not meet its **burden** under TCA § 39-11-201(e); using a ***<u>limited jurisdiction</u>***. Hall's Madison Co. judgment is **void.** Tr. Tech. Rec. V. 1, P. 2 (Henderson Co. indictment); & Tr. Tech. Rec., V. 2, P. 179 (Madison Co. Judgment).

11. The trial court **applied a <u>special</u>** or **limited jurisdiction,** in a war court, and in a **summary manner** (<u>See:</u> *supra fact* § 5 & 7) **ignored the written law**, applying judge made law, in violation of TCA § 39-11-203(e)(2) (common law defenses void); & § 16-3-403 (Rules not to affect substantive rights).

- 3 -

12. The Court's misapplication of <u>dictum</u> <u>fraud</u> (comments unnecessary to support decision; as specified on supra page 1, § 2 & 3); was used as a **[bogus] conclusive presumption,** cannot meet the strictness of Tn.R.Evid., Rules 703, & 901(a) (underlying data; and requirement of condition precedents) of relevant evidence, to support a trier of fact; that the matter in question, is what the proponent claims. (e.g., underlying trial record: *<u>does not support the</u>* **claim,** that Tn.R.Crim.P., Rule 18, 21(b), 21(f), 23(a), & 43(a), *<u>was actually</u>* ***<u>followed.</u>*** Thus, its irrelevant evidence. Tn.R.Evid. Rule 403. This overt act of fraud by the court was committed in collusion with the State, Title 18 USC § 1359; by way of the State's Motion to Dismiss, backed with (6) page Memorandum of Law, listed as **Exhibit [6].**

13. Here, a true analysis of the **disputed material facts** *(conclusive presumption);* necessary for the consideration of the first state habeas corpus. Proves **how** the court did not follow strict construction of law, that enabled the State to win and accept the **bogus** prior rulings it got, shown by **Exhibit(s) [1-4].**

14. One form of usurpation of power on the part of the court in rendering a judgment, is where it attempts to disregard the limitations prescribed by law restricting its jurisdiction. ... Where a court has jurisdiction over the parties and subject-matter, yet makes a decree that is not within powers granted by law of it's organization, it's decree is <u>void</u>. ... The [Rule] for a judgment by a court of **limited** **jurisdiction,** is that every jurisdictional fact <u>must</u> appear on record or judgment is <u>void</u>. <u>Richardson v.</u> <u>Mitchell</u> 237 SW2d @ 584 (Tn 1950) (TCA § 40-13-210; Jurisdictional To Support Alleged Judgment.

## APPLICATION OF THE LAW:

15. **Dicta** - Plural of **dictum**. *Latin* for *obiter dictum.* Dicta are expressions or comments in a court opinion that are not necessary to support a decision; they are <u>not</u> <u>binding</u> <u>authority</u> and have **no value** **as precedent.** *HERE: Hall was* **prejudiced.** Supra § 8: <u>Prejudiced</u> right to testify. PCR V. 8, pg. 1026-27)

16. **In this case,** *the courts have* **erroneously** *relied upon* **<u>extrinsic</u> <u>fraud</u>** *or* **dictum,** as it's *exclusive, material* **evidence** *in support of <u>the</u> <u>records</u>* **regularity,** that attached a <u>bogus</u> **conclusive presumption,** to meet its burden on Hall's **facially void** trial record. <u>Dictum</u> shown **@ supra fact § 2 & 3,** does not prove subject-matter jurisdiction, without supporting application or affidavits, as mandated by Tn.R.Crim.P., Rule 21(b), & TCA § 20-4-203. Courts are held to a higher standard and charged with knowledge of the law. <u>State v. Sexton</u> 948 SW2d @ 751 (Tn.App 1997) (Judge's charged with knowledge of the law).

17. **Statutes** *may make proof of one fact, by evidence of another fact, <u>by way of</u>* **presumption.** <u>State</u> <u>v. Runion,</u> 654 SW2d 407 (Tn. 1983). In some cases, **presumptions** *impermissibly shifts the burden from the State <u>to the</u>* **accused,** *and thus terms are a <u>violation of</u>* **due process.** <u>Allen,</u> 99 S.Ct. 2213 (1979). The *appropriate way to <u>apply</u>* **Tennessee law** *to the applicable* **facts,** is discussed in <u>State v.</u> <u>Ritchie,</u> 20 SW3d 624, 630 N. 14 (Tn. 2000); and the Tennessee Supreme Court **said** *in pertinent part:* that ***Presumptions*** *are* <u>reversed</u> in <u>special</u> or <u>limited</u> <u>jurisdiction,</u> (applying law in a **summary manner).** <u>See also:</u> Facts & conclusions of law presented in claimant's: **Memorandum of law,** listed as **Exhibit [7].**

- 4 -

18. There is **no reliable underlying record** *to Support the* State's <u>bogus</u> **conclusive presumption** of validity or correctness on underlying trial record; just <u>dictum</u> **FRAUD!** Tn.R.Crim.P. 1(e); Tn.R.Evid. Rule 703 & 901(a). Hall's genuine habeas corpus claims, affirmatively appear on the facially <u>void</u> trial record, and <u>conclusively</u> <u>defeat</u> *the State's* **burden of proof** on claims. TCA § 39-11-103(a) (Territorial jurisdiction); 39-11-201(e) (jurisdiction; burden of proof): and TCA § 40-13-210 (Every jurisdictional fact must be on record). There is **no legitimate disputed fact** (<u>dictum</u> fraud)**,** the State can rely on. The State **failed to put up valid evidence** of **sine quo non records,** on the **nul tiel** record. *Res ipsa loquitur!*

19. ***None*** *of the essential requisites of* T.C.A. § 20-4-203, §20-4-204, & § 20-4-209, affirmatively **appear on the record,** or order changing venues from Henderson County, to Madison County, Tennessee. The **condition precedents,** declare that certain preconditions <u>shall</u> <u>be</u> <u>made,</u> that is: (1) three (3) affidavit(s) are **demanded** under TCA § 20-4-203; and (2) venue hearing transcripts mandated under TCA § 20-4-209, as expected by Tn.R.Evid., Rule 901(a) to show **consent;** a cognizable claim **on record,** to support a finding by a trier of fact; the matter in question, <u>is</u> <u>what</u> <u>the</u> State <u>claims</u>; e.g. that **Rule 21 was followed.** To be a valid **presumption,** it would have to meet the rigors of Tn.R.Evid., Rule 703 (Legal expert testimony) for admission under *FOUNDATIONAL REQUIREMENTS;* that underlying **facts** or **record** are trustworthy. Evidence must be relevant. Tn.R.Evid. 403. These general **requirements of technical evidence,** hold concerns that a witness who presents results, is **qualified to interpret them,** when STATE rely on records (Rule 901(a). **A genuine claim.** Tn.R.Crim.P Rule 1(e).

## GROUNDS FOR SUMMARY JUDGMENT:

20. The Madison County record, fails to show acts were done to comply with the statutory mandates of written law. The court in absence of accused, in collusion with court officer's, granted a **void** venue motion lacking "cause" affidavits is in **ultra vires,** and lost subject-matter jurisdiction of offense, & accused. The **burden of proof** of TCA § 39-11-201(e), quoted in <u>State v Smith</u> 906 SW2d 6, 10 (Tn 1985) (Holds: **Rule 21,** contemplates **"cause"** be shown on record, and venue **must** be proved to determine case on its merits); e.g. Mandatory provision of T.C.A. § 20-4-203, § 20-4-204, § 20-4-209.

21. *This trial record is* **void** *and* **facially and insufficient** under Tn.R.Evid., Rule 901(a): (identification of a **condition precedent** *to support trier of fact,* **a matter in question** e.g. **face of record;** when it is <u>not</u> **what** proponent claims.) <u>Odell v Koppee</u> 52 Tn. 88 (1871) (Presumption will not be made to point of violating demands of other statutes). A <u>legal</u> <u>presumption</u> is a presumption for convenience. When contrary proof is made an assumption is waived, for **its no longer logical to assume a fact** *rebutted by* ***plain data.*** <u>Ramsey</u> 571 SW2d @ 827 (Tn. 1978)**. The Court's actions** in concert with the State, to usurp equity powers in a **summary manner** to **shift the burden of proof** to accused, put court in **ultra vires.** Tn.R.crim.P. 1(e). Clearly, the Tenn. Supreme Court was not advised of motion to remove flag of war. (T.T.R. V. 2, P 153-55; Flag motion). <u>State v Hall</u> 8 SW3d @ 604 N.6 (Tn. 1999).

- 5 -

22. **Consent** is a dispositive question, and a **genuine issue** *for summary judgment* issues, when the shoe is on the district attorney's feet. See: e.g. Lewis v. Metro Gen. Sessions Ct. 949 SW2d 696, 703 (Tn.Cr.App. 1996) ("The general sessions court would have no authority to dispose of the case absent the **CONSENT** of the district attorney general or his representative. All that rendered the judgment as facially valid.") In that light, the pretrial objection regarding a venue change, on the face of the trial record, (Trial Tran. of Evid., P. 7-8; TCA § 20-4-105); & (Trial Tech. Rec. P. 153-155), and the reversed presumption of validity on **underlying record; prove the insufficient "sparse record," is facially void.** It is essential for the order made (Tr.Tech.Rec., Vol. 2, Pg. 152 ; 9/16/96 Venue Change Order), that **Hall** was actually notified, or the error is apparent on the record, by the papers, or in the minutes of a hearing, that consent was given. As such, this record reveals, an absence of subject-matter jurisdiction over a Henderson Co. indictment (Tr.Tech.Rec. V. 1, P. 2; indictment), on a Madison Co. Judgment (Tr.Tech.Rec V. 2, P 179 Judgment). This is a **cognizable claim** for **relief,** TRAP 13(b) & (e)!

23. **Put up the sine quo non** (indispensable records; showing "cause," and "consent"), on face of trial record under Tn.R.Evid., Rule 901 (a). Applying law in a **summary manner** *and* **inconsistent opinions;** in criminal cases, **ignored strict construction of the law, (supra pg. 1-2, § 2, 3, & 5).** Tn.R.Crim.P., Rule 1 (e). Hall's conviction & sentence has always been facially void. Byrd v Hall 847 SW2d @ 214 (Tn 1993) (Put up **sine quo non** [indispensable records, TCA § 20-4-203 & § 20-4-209] or shut up. **Evaluating Summary Judgment** F.R.C.P. 56). Hall's innocent on Madison Co. judgment, a miscarriage of justice, failure to state a claim on which relief can be granted. Sclup v Delo 513 US 298, 327 (1995)

24. Both cognizable claims, i.e. **Rule 21 not followed;** and **lack of consent claims,** shown on face of the record, are contrary to the law, and the **miscarriage of justice** made in prior proceedings: i.e. State v. Hall, 2006 WL 2000502 *2 (7/16/06 Nash.); demand habeas corpus relief. Because, these claims have been decided on **misleading dictum** and not on the merits! **Remove** the **bogus dictum,** and **presumption** that cannot meet tests under Tn.R.Evid. Both the record and circumstantial facts clearly preponderates against the prior judgments. The *burden of proof* shifts to show regularity on actual records appearing on the face of the record, in a **special** territorial court **in want of jurisdiction.** Dunn, 877 F2d 1275, 1277 (6th 1989) (Burden shifts). T.R.A.P Rule 13 (b) & (e). A trial record is facially **void,** or it isn't !

## CONCLUSION:

25. *This record shows,* the **States proof** of regularity relies on a bogus **conclusive presumption** taken from dictum, that is not binding authority. The courts have **misapplied the dictum** to impermissibly **shift burden of proof.** In State v Ritchie 20 SW3d 624, 630, n.14 (Tn 1999) the Court said; *"Presumption* are **reversed** *in special or limited jurisdiction."* The rule for a judgment like this, is: *Every* **jurisdictional fact** *must affirmatively appear on record or the judgment is* **void;** for **want of jurisdiction)** TCA § 40-13-210 (Every jurisdictional fact must appear on record).

- 6 -

7. In Hall v Bell / State et. al. 2012 WL 1366612 (5/17/12); listed as **Exhibit [4]**, the court used **dictum** at * 13, to *supply* **extrinsic parol testimony** *to fix an evidentiary* **void** *trial record*, and said:

In support of his request for rehearing, Petitioner contends the *issue of whether his conviction and sentence were* **void** because the trial venue was **transferred to another county** without his **consent** *was not previously decided.* **This is not accurate.** In the petitioner's first petition for habeas corpus relief, he argued he did not agree to a change of venue, which deprived the trial court of jurisdiction and rendered his conviction and sentence void. Hall v. State / Bell, 2006 WL 2000502 * 3 (Tn.Crim.App. 7/19/06) (Hall II). This court concluded that the record showed that "the Petitioner filed two motions seeking a change of venue with the Henderson County court," that the State consented to the second of these motions," and that **the trial court granted a change of venue pursuant to Tn. Rules Crim. Procedure 21.** Although Hall contends **the State perpetrated a fraud upon the trial court** during his first petition for habeas corpus relief, this court's review of the record showed defendant, through counsel, requested a change of venue. Likewise, *counsel testified at the* **post-conviction hearing** that a "*change was 'absolutely necessary,'*" the change was discussed with Defendant, & the motion for change of venue was filed with Defendant's **consent,** although venue change **not at issue.** Hall v State 2005 WL 22951 *13 dictum (1/5/05) (Hall I). Because issue was already decided, Petitioners not entitled to a rehearing... **When parties agree,** a hearing is unnecessary. This court's **opinions** *are* not *inconsistent?* **NOTE:** Act interpreted in **summary manner** *by a* **special** *or* **limited court!** Tn.R.Evid 703 & 901(a).

### SCHEME TO DEFRAUD / UNRAVELING THE MYSTERY:

8. Court powers granted (in 1933 F.D.R), at **variance** with criminal law, under Tn.R.Crim.P. 1 (e); Hall tried to protect to his prejudice, were illegally applied T.T.R., V. 2, P. 150-153; & PCR P. 1026-27 (Right to present defense). See Magevney v Karsch 65 SW2d @ 565 (Tn 1933), listed as **Exhibit [5].**

9. *Reviewing court's* **failed to perform** their **duty** to decide **subject-matter jurisdiction** over venue change and accused on record (ignoring Tn.R.Crim.P. 1(e); & Tn.R.Evid. 103(d), 402, 703, & 901(a)). Trusty 919 SW2d @ 309, N 4 (Tn 1996). Appellate court must determine whether trial & appellate court have **jurisdiction over subject-matter** (TCA § 40-13-210; **Every jurisdictional fact must appear on record)** whether or not issue is cited on review, beyond a reasonable doubt. T.R.A.P. 13(b); & 13(e).

10. Courts *denied* **strict construction of statutes** and **shifted burden** by producing a **fraud** under the **unclean hands doctrine.** Simmons 561 SW2d @ 465 (Tn 1977). Then, **misapplied** off point common law & dictum to ignore Strict Construction rules in criminal cases. The State did not meet its **burden** under TCA § 39-11-201(e); using a **limited jurisdiction.** Hall's Madison Co. judgment is **void.** Tr. Tech. Rec. V. 1, P. 2 (Henderson Co. indictment); & Tr. Tech. Rec., V. 2, P. 179 (Madison Co. Judgment).

11. The trial court **applied a special** or **limited jurisdiction,** in a war court, and in a **summary manner** (See: *supra fact* § 5 & 7) **ignored the written law,** applying judge made law, in violation of TCA § 39-11-203(e)(2) (common law defenses void); & § 16-3-403 (Rules not to affect substantive rights).

- 3 -

12. The Court's misapplication of <u>dictum</u> <u>fraud</u> (comments unnecessary to support decision; as specified on supra page 1, § 2 & 3); was used as a **[bogus] conclusive presumption**, cannot meet mandates of Tn.R.Evid., Rules 103(d), 402, 703 & 901(a) (underlying data; and requirement of condition precedents) of relevant evidence, to support a trier of fact; that the matter in question, is what the proponent claims. (e.g., underlying trial record: <u>*does not support the* **claim**</u>, that Tn.R.Crim.P., Rule 18, 21(b), 21(f), 23(a), & 43(a), <u>*was actually* **followed**</u>. Thus, its irrelevant evidence. Tn.R.Evid. Rule 402. This overt act of fraud by the court was committed in collusion with the State, Title 18 USC § 1359; via State's Motion to Dismiss, backed with (6) page Memorandum of Law, listed as **Exhibit [6]**.

13. Here, a true analysis of the **disputed material facts** *(conclusive presumption);* necessary for the consideration of the first state habeas corpus. Proves **how** the court did not follow strict construction of law, that enabled the State to win and accept the **bogus** prior rulings it got, shown by **Exhibit(s) [1-4]**.

14. One form of usurpation of power on the part of the court in rendering a judgment, is where it attempts to disregard the limitations prescribed by law restricting its jurisdiction. ... Where a court has jurisdiction over the parties and subject-matter, yet makes a decree that is not within powers granted by law of it's organization, it's decree is <u>void</u>. ... The [Rule] for a judgment by a court of **limited jurisdiction**, is that every jurisdictional fact <u>must</u> appear on record or judgment is <u>void</u>. Richardson v. Mitchell 237 SW2d @ 584 (Tn 1950) (TCA § 40-13-210; Jurisdictional To Support Alleged Judgment.

### APPLICATION OF THE LAW:

15. **Dicta** - Plural of **dictum.** *Latin* for *obiter dictum.* Dicta are expressions or comments in a court opinion that are not necessary to support a decision; they are <u>not</u> <u>binding</u> <u>authority</u> and have **no value as precedent.** *HERE: Hall was* **prejudiced.** Supra § 8: <u>Prejudiced</u> right to testify. PCR V. 8, pg. 1026-27)

16. **In this case,** *the courts have* **erroneously** *relied upon* **extrinsic** **fraud** *or* **dictum,** as it's *exclusive, material* **evidence** *in support of* <u>*the*</u> <u>*records*</u> **regularity,** that attached a <u>bogus</u> **conclusive presumption,** to meet its burden on Hall's **facially** **void** trial record. <u>Dictum</u> shown **@ supra fact § 2 & 3**, does not prove subject-matter jurisdiction, without supporting application or affidavits, as mandated by Tn.R.Crim.P., Rule 21(b), & TCA § 20-4-203. Courts are held to a higher standard and charged with knowledge of the law. State v. Sexton 948 SW2d @ 751 (Tn.App 1997) (Judge's charged with knowledge of the law).

17. **Statutes** *may make proof of one fact, by evidence of another fact,* <u>*by way of*</u> **presumption.** State v. Runion, 654 SW2d 407 (Tn. 1983). In some cases, **presumptions** *impermissibly shifts the burden from the State* <u>*to the*</u> **accused,** *and thus terms are a* <u>*violation of*</u> **due** **process.** Allen, 99 S.Ct. 2213 (1979). The *appropriate way to* <u>*apply*</u> **Tennessee** *law to the applicable* **facts,** is discussed in <u>State v. Ritchie</u>, 20 SW3d 624, 630 N. 14 (Tn. 2000); and the Tennessee Supreme Court **said** *in pertinent part:* that *Presumptions* are <u>reversed</u> in <u>special</u> or <u>limited jurisdiction</u>, (applying law in a **summary manner).** <u>See</u> also: Facts & conclusions of law presented in claimant's: **Memorandum of law,** listed as **Exhibit [7]**.

- 4 -

18. There is **no reliable underlying record** *to Support the State's* bogus **conclusive presumption** of validity or correctness on underlying trial record; just dictum **FRAUD!** Tn.R.Crim.P. 1(e); Tn.R.Evid. Rule 402, 703 & 901(a). Hall's genuine habeas corpus claims, affirmatively appear on the facially void trial record, & conclusively defeat *State's* **burden of proof** on claims. TCA § 39-11-103(a) (Territorial jurisdiction); 39-11-201(e) (jurisdiction; burden of proof): and TCA § 40-13-210 (Every jurisdictional fact must be on record). There is **no legitimate disputed fact** (dictum fraud)**,** the State can rely on. The State **failed to put up valid evidence** of **sine quo non records,** on the **nul tiel** record. *Res ipsa loquitur!*

19. *None* of the essential requisites of T.C.A. § 20-4-203, §20-4-204, & § 20-4-209, affirmatively **appear on the record,** or order changing venues from Henderson County, to Madison County, Tennessee. The **condition precedents,** declare that certain preconditions shall be made, that is: (1) three (3) affidavit(s) are **demanded** under TCA § 20-4-203; and (2) venue hearing transcripts mandated under TCA § 20-4-209, as expected by Tn.R.Evid., 402, 703, & 901(a) to show **consent;** a cognizable claim **on record,** to support a finding by a trier of fact; the matter in question, is what the State claims; e.g. that **Rule 21 was followed.** To be valid, a **presumption,** it would must meet rigors of Tn.R.Evid., 103(d), 402, 703 (Legal expert testimony) for *entry on FOUNDATIONAL REQUIREMENTS;* that underlying **facts** or **record** are trustworthy. Evidence must be relevant. Tn.R.Evid. 402. These **requirements on technical evidence,** hold concerns a witness who presents results, is **qualified to interpret them,** when STATE rely on records (Rule 901(a). **A genuine claim.** Tn.R.Crim.P Rule 1(e).

### GROUNDS FOR SUMMARY JUDGMENT:

20. The Madison County record, fails to show acts were done to comply with the statutory mandates of written law. The court in absence of accused, in collusion with court officer's, granted a **void** venue motion lacking "cause" affidavits is in **ultra vires,** and lost subject-matter jurisdiction of offense, & accused. The **burden of proof** of TCA § 39-11-201(e), quoted in State v Smith 906 SW2d 6, 10 (Tn 1985) (Holds: **Rule 21,** contemplates **"cause"** be shown on record, and venue **must** be proved to determine case on its merits); e.g. Mandatory provision of T.C.A. § 20-4-203, § 20-4-204, § 20-4-209.

21. *This trial record is facially void and insufficient* under Tn.R.Evid., Rules 402, & 901(a): (identification of a **condition precedent** *to support trier of fact,* **a matter in question** e.g. **face of record;** when it is not **what proponent claims.**) Odell v Koppee 52 Tn. 88 (1871) (Presumption will not be made to point of violating demands of other statutes). A legal presumption is a presumption for convenience. When contrary proof is made an assumption is waived, for **its not logical to assume a fact** *rebutted by plain data.* Ramsey 571 SW2d @ 827 (Tn 1978) (Tn.R.Evid. 103(d). **The Court's actions** in concert with the State, to usurp equity powers in a **summary manner** to **shift the burden of proof** to accused, put court in **ultra vires.** Tn.R.crim.P. 1(e). Clearly, the Tn. Supreme Court was not advised of motion to remove flag of war. (T.T.R. V. 2, P 153-55; Flag motion). State v Hall 8 SW3d @ 604 N.6 (Tn. 1999).

- 5 -

22. **Consent** is a dispositive question, and a **genuine issue** *for summary judgment* issues, when the shoe is on the district attorney's feet. See: e.g. <u>Lewis v. Metro Gen. Sessions Ct</u>. 949 SW2d 696, 703 (Tn.Cr.App. 1996) ("The general sessions court would have no authority to dispose of the case absent the **CONSENT** of the district attorney general or his representative. All that rendered the judgment as facially valid.") In that light, the pretrial *objection* regarding a venue change, *on the face* of the trial record, (Trial Tran. of Evid., P. 7-8; TCA § 20-4-105); & (Trial Tech. Rec. P. 153-155), and the reversed presumption of validity on **underlying record;** *prove insufficient* **"sparse record,"** *is* **facially void.** It is essential for the order made (Tr.Tech.Rec., Vol. 2, Pg. 152; 9/16/96 Venue Change Order), that **Hall** was actually notified, or the error is apparent on the record, by the papers, or in the minutes of a hearing, that consent was given. This record exposes, an absence of subject-matter jurisdiction over a Henderson Co. indictment (Tr.Tech.Rec. V. 1, P. 2; indictment) on a Madison Co. Judgment (Trial Tech. Rec V. 2, P 179 Judgment). <u>This</u> is a **cognizable** <u>claim</u> *for relief* **on** *the face.* TRAP 13(b) & (e)!

23. **Put up the sine quo non** (indispensable records; showing "cause," and "consent"), on face of trial record under Tn.R.Evid., Rule 901 (a). Applying law in a **summary manner** *and* **inconsistent opinions;** in criminal cases, **ignored strict construction of the law, (supra pg. 1-2, § 2, 3, & 5).** Tn.R.Crim.P., Rule 1 (e). Hall's conviction & sentence has always been facially <u>void. Byrd v Hall</u> 847 SW2d @ 214 (Tn 1993) (Put up **sine quo non** [indispensable records, TCA § 20-4-203 & § 20-4-209] or shut up. **Evaluating Summary Judgment** F.R.C.P. 56). Hall's innocent on Madison Co. judgment, a <u>miscarriage of justice,</u> failure to state a claim on which relief can be granted. <u>Sclup v Delo</u> 513 US 298, 327 (1995)

24. Both cognizable claims, i.e. **Rule 21 not followed;** and **lack of consent claims,** shown on face of the record, are contrary to law, and a **miscarriage of justice** made in prior proceedings: i.e. <u>State v. Hall</u>, 2006 WL 2000502 *2 (7/16/06 Nash.); demand habeas corpus relief. These claims have been decided on **misleading dictum** and <u>not on merit</u>! **Remove bogus dictum,** and **presumption** that do not meet tests on Rules of Evid. The <u>circumstantial</u> **facts** on <u>record</u> clearly preponderates against prior judgments. The *burden of proof* **shifts** to show regularity by <u>actual records appearing on face of record,</u> by a **special** territorial court **in want of jurisdiction.** <u>Dunn,</u> 877 F2d 1275, 1277 (6th 1989) (Burden shifts). Tn.R.Evid. 103(d), 402, 703, & 901(a); T.R.A.P 13 (b) & (e). A trial record is facially **void,** or it isn't !

### CONCLUSION:

25. *This record shows,* the **States proof** <u>of</u> regularity relies on a <u>bogus</u> **conclusive presumption** taken from <u>dictum,</u> that is <u>not binding authority.</u> The courts have **misapplied the dictum** to impermissibly **shift burden of proof.** In <u>State v Ritchie</u> 20 SW3d 624, 630, n.14 (Tn 1999) the Court said; *"Presumption are <u>reversed</u> in special or <u>limited jurisdiction</u>."* The rule for a judgment like this, is: *<u>Every</u>* **jurisdictional fact** *<u>must</u> affirmatively <u>appear on record</u> or the judgment is* <u>void</u>; for **want of jurisdiction)** TCA § 40-13-210 (Every jurisdictional fact must appear on record).

- 6 -

26. The Court's <u>dictum</u> <u>fraud</u>, cannot meet the standards of **material evidence rule** on foundational requirements under the Tn.R.Evid., Rules 403, 703, & 901(a); **to prove** Tn.R.Crim.P., Rule 18, 21, 23(a), & 43(a), was followed, since the underlying record is void. <u>Richardson</u> 237 SW2d @ 585 (Tn 1950) (<u>limited</u> court must show every jurisdictional fact). The Courts have used the State's bogus defense, & misapplied the law in the first habeas corpus case. To persecute & defraud Hall, for attacking the Court's integrity, by granting the State unjust decisions. Shown by **Exhibits [1-4].** <u>See</u> <u>attached</u>: Jennifer Smith's; Motion to Dismiss; & Memorandum of Law, a **fraud** marked as **Exhibit [6]**.

27. There is no genuine issue as to material facts in dispute on <u>nul</u> <u>tiel</u> <u>records</u>. **Consent** <u>was</u> <u>not</u> <u>given</u> and **Tn.R.Crim.P.** **21** <u>was</u> <u>not</u> <u>followed</u>. The **bogus** **conclusive presumption** applied to underlying record is **res gestae proof** of illegal <u>special</u> equity or <u>limited</u> <u>jurisdiction</u>, in excess of jurisdiction, acting in **summary** **manner** defile Tn.R.Crim.P, 1(e). Stiking the judicial machinery with <u>dictum</u> <u>fraud</u> *to deny* *strict construction of written laws* and illegally **shifting burden of proof** in criminal cases to **prejudice** **accused** by violating **due process.** T.R.A.P. 13(b) & (e). See Memorandum of Law; marked **Exhibit [7].**

28. Its an **undisputed fact**, *the State cannot put up* **material Rule 21 records** or **show consent,** relying on deceptive tools: **judge made law,** <u>parol</u>, or extrinsic <u>dictum</u> <u>fraud</u>; to make **inherently unreliable** **case.** The Court's **application of law** <u>does</u> <u>not</u> <u>obey</u> the rules of evidence **demanded in criminal cases.**

Wherefore, a Court <u>must</u> grant summary judgment to Claimant under Tn.R.Civ.P. 56.01, on the underlying <u>facially</u> <u>void</u> trial record. The State is in **want of jurisdiction.** *Inconsistent opinions are* **res** **gestae facts** *and resolves no conflicts.* <u>McInturff</u> 565 SW2d @ 482 (Tn 1986) See: Supra fact 3, **Exhibit** **[1]** (<u>dictum</u> @ *13; Rule 21 followed <u>without</u> <u>a</u> <u>hearing</u>.); & supra fact 5, **Exhibit [2]** (**finding** @ *2; Rule 21 **followed**). *A legal impossibility.* The State did not meet its burden of proof **on "sparse** **records,"** TCA § 39-11-201(e); heard only counsel's <u>void</u> unilateral venue motion, **over Hall's pretrial** **objection** *and* <u>tried</u> **Hall** <u>on</u> <u>counsel's</u> <u>plea</u>, (T.T.R. V. 1, P. 179). <u>McCoy</u> <u>v</u> <u>La</u>. 584 US __ (2018) (Autonomy). Entitling Hall to habeas corpus relief already asked for in original State habeas corpus. Nothing is moot & proximate cause of ongoing irreparable injuries. Exposing him to same illegality.

Respectfully submitted,

*[signature]*

Prisoner # 238941 RMSI

I _[signature]_ , declare under penalty of perjury, the forgoing facts are true & correct. Except claims based on information & belief, as to those claims, Hall feels these facts are true & correct.

Sworn and subscribed before me on this the 16th day of January 2019.

Notary Public: _[signature]_

My Commission Expires: _3 8 2021_

- 7 -



# TENNESSEE DEPARTMENT OF CORRECTION
## INMATE INQUIRY - INFORMATION REQUEST

RECEIVED
MAR 12 2019
MAILROOM

Riverbend Maximum Security Institution
**INSTITUTION**

Jon Hull
**INMATE NAME** *(Please Print)*

238941
**INMATE NUMBER**

UNIT: 2   ROOM / BED: A-207   DATE: 3/13/19

☒ Mail Room

ROUTED TO: ☐ Unit Manager   ☐ Inmate Relations Coordinator (IRC)   ☐ Counselor   ☐ Job Coordinator

**1. Inmate Inquiry/Request:**

I need PROOF of Mailing Legal Work "Judicial Complaint With "Motion For Summary Judgment / Fraud Upon Court" Sent to Office of the 6th Civ. Executive @ 503 Potter Stewart Courthouse 100 E. 5th St. Cinn. Ohio, 45230 ON 2/25/19 AM outgoing Thanks, Jon

**2. Action by Counselor/IRC:**

Fwd to Mail Room

_____   3/12/19
**COUNSELOR / IRC SIGNATURE**   **DATE**

**3. Action by Record Office:**

Jon Hull TDOC #238941 Was logged in Outgoing Legal Mail Book on Page 78 on 2/25/19 top of the page.

By: Cyn Hodges Mailroom Clerk   3/13/19
**RECORD'S OFFICE STAFF SIGNATURE**   **DATE**

RECEIVED
MAR 12 2019

**4. Sentence Management Service (SMS) Response:**

_____   _____
**SMS STAFF SIGNATURE**   **DATE**

CR-3118 (Rev. 1-07)   White - Inmate   Canary - Record Office   Pink - Counselor IRC   RDA 1167

TENNESSEE DEPARTMENT OF CORRECTION
INMATE INQUIRY - INFORMATION REQUEST

RECEIVED
FEB 0 8 2019
RMSI
238 MAILROOM

*Riverbend Maximum Security Institution*
INSTITUTION

*Jen Hall*
INMATE NAME *(Please Print)*

INMATE NUMBER

UNIT: _2_          ROOM / BED: _A-207_          DATE: _2/7/19_

ROUTED TO: ☐ Unit Manager   ☐ Inmate Relations Coordinator (IRC)   ☐ Counselor   ☐ Job Coordinator

1. Inmate Inquiry/Request:
   Can I Get Proof I mailed out legal Mail
   on 1/23/19 to 6 Circuit; and on 1/24/19 to
   State Atty. Gen. of Tennessee.
   Thnks Jen

2. Action by Counselor/IRC:
   1/23/19
   Jen Hall according to the legal Log Book pg 61
   Jon D. Hall TDOC# 238941
   Chief Deputy Clerk Susan Rogers
   100 E. 5th Street
   540 Potter Stewart Courthouse
   Cincinnati Ohio 45202-3988
   COUNSELOR / IRC SIGNATURE                    DATE

3. Action by Record Office:
   1/24/19
   Jen Hall TDOC# 238941 according to the Legal Log Book pg 61
   Office of the Attorney General
   State of Tenn. Herbert Slatery III (A.G.)
   Post Office Box 20207
   Nash. TN 37202
   RECORD'S OFFICE STAFF SIGNATURE              DATE

4. Sentence Management Service (SMS) Response:
   Both were sent out as dated above
   and stamped with that date on the front of
   envelope.
   *C. Hodges*   2/8/19
   SMS STAFF SIGNATURE                          DATE

CR-3118 (Rev. 1-07)        White - Inmate      Canary - Record Office      Pink - Counselor IRC   RDA 1167