UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JON HALL #238941, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:19-cv-00628 |
| | ) JUDGE TRAUGER |
| DONALD TRUMP, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

This matter is before the court on the motion by the defendant, Tennessee Department of Correction (TDOC) Commissioner Tony Parker, to dismiss the plaintiff's case against him due to lack of personal involvement. (Doc. No. 24.) The plaintiff has responded in opposition (Doc. No. 31), and the matter is ripe for review.

Also pending before the court is the plaintiff's motion to amend his complaint in order to "clarify and elaborate on the fact that Defendant Parker sets the policies and procedures that have led to the deprivation of Plaintiff's constitutional rights" and "further explain why Defendant Parker is an appropriate and necessary party to this case." (Doc. No. 32 at 1.) The defendants oppose the amendment on the basis that it is insufficient to overcome Defendant Parker's pending motion to dismiss and is thus futile. (Doc. No. 35.)

Because these motions are related, the court has analyzed them together.

## I. PERSONAL INVOLVEMENT

A. STANDARD OF REVIEW

For purposes of a motion to dismiss under Rule 12(b)(6), the court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss. *Id.* at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

The *Iqbal* Court suggested that a district court considering a motion to dismiss "can choose to begin" its analysis "by identifying pleadings that . . . are not entitled to the assumption of truth." *Iqbal*, 555 U.S. at 679. As indicated above, pleadings that do not constitute factual allegations, including "bare assertions," a formulaic recitation of the elements, and "conclusory" or "bald" allegations, need not be accepted as true. *Id.* at 681. The question is whether the remaining factual allegations plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Rule 8 and must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6), unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss. Fed. R. Civ. P. 10(c). In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Commercial Money Ctr., Inc. v.*

*Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

B. ANALYSIS

Defendant Parker argues that government officials cannot be held liable on the basis of *respondeat superior* and that supervisory defendants are only liable when they are personally involved in unconstitutional conduct, at least by authorizing, approving, or knowingly acquiescing in such conduct. (Doc. No. 25 at 4–5.) He asserts that the plaintiff's Second Amended Complaint does not state a claim against him under this standard because it simply "essentially argue[s] that Commissioner Parker approves the policies and procedures related to death row inmates but has done nothing to release Plaintiff from solitary confinement." (*Id.* at 6.)

The plaintiff's proposed Third Amended Complaint, which he offers in direct response to Defendant Parker's motion, adds a number of allegations directed specifically at Defendant Parker. Specifically, the plaintiff would amend his complaint to allege that: a due process violation in connection with his psychological health and solitary confinement status "arises directly from the policies and procedures of the Tennessee Department of Corrections, which Defendant Parker runs and has the authority to change" (Doc. No. 30 at 2); the relief the plaintiff seeks "is systemic in nature and involves changes to the policies and procedures set and controlled by Defendant Parker" (*id.* at 3); Defendant Parker, as Commissioner, "provides final approval of rules applicable to death row inmates and is ultimately responsible for TDOC's policies and procedures, as well as for funding necessary to provide resources to prisons, prison personnel, and ultimately to prisoners," "has the authority to make changes in [the plaintiff's] procedures and living conditions," and "is the only Defendant with the authority to provide all of the systemic changes and resources [the plaintiff] seeks in this case" (*id.* at 4); many of the conditions about which he complains arise

3

"[p]er the policies and procedures that Defendant Parker has set and has the authority to change" (*id.* at 6, 7, 10, 11); Defendant Parker "has failed to provide the resources in the form of training and pay commensurate with the level of training" required to work with the plaintiff and others who are severely psychologically impaired (*id.* at 9); "Defendant Parker is the only official with the authority to provide" the necessary "systemic change to TDOC's policies and procedures—including but not limited to adequate training, psychological and medical care, more humane conditions, and funding for the above" as well as "ultimately an alternative to interminable solitary confinement." (*Id.* at 12, 17.)

The defendants argue that even the plaintiff's proposed new allegations would fail to state a claim "because they do not address Defendants' central concern that the allegations do not demonstrate that Commissioner Parker is personally involved in Plaintiff's alleged solitary confinement." (Doc. No. 35 at 3.) But the defendants overlook the fact that the plaintiff sues Defendant Parker only in his official capacity for prospective injunctive relief.

The plaintiff asserts in both his proposed Third Amended Complaint and his response to Defendant Parker's motion to dismiss that Defendant Parker is an appropriate official-capacity defendant pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). (Doc. No. 30 at 11 n.1; Doc. No. 31 at 2.) The *Ex Parte Young* doctrine "allow[s] federal courts to enjoin state officers in their official capacity from prospectively violating a federal statute or the Constitution." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014). It provides a narrow exception to the general rule that official-capacity suits against state officials are suits against the state and are, therefore, barred by sovereign immunity. *Id.* Accordingly, demands for injunctive relief are properly brought against a TDOC official in his official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when

4

sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."). To pursue such a claim against a state official in his official capacity, the official must only "have some connection with the enforcement" of the rule of law whose constitutionality is in question. *Ex parte Young*, 209 U.S. at 157. Proper defendants to an *Ex Parte Young* claim include "officials who have direct responsibility in the area in which the plaintiff seeks relief." *Bartlett v. Wengler*, No. 1:12-CV-00312-EJL, 2014 WL 4773959, at *5 (D. Idaho Sept. 24, 2014); *see also Muhammad v. Crosby*, No. 4:05CV193-WS, 2008 WL 2229746, at *19 (N.D. Fla. May 29, 2008), *aff'd sub nom. Muhammad v. Sapp*, 388 F. App'x 892 (11th Cir. 2010) (holding that *Ex Parte Young* claim is appropriately brought against "Defendants who currently have official capacity to provide a remedy through declaratory or injunctive relief"). That is a very different standard than the one asserted by Defendant Parker.

Citing cases such as *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984), Defendant Parker asserts that the plaintiff must allege Parker's personal involvement in a constitutional violation in order to state a claim against him. (Doc. No. 25 at 4–5.) Another district court in this circuit has concisely explained why that assertion is incorrect in the context of an official-capacity claim for injunctive relief:

> Defendants are simply incorrect on how the law operates here. It is true that in a suit for money damages against a state official sued in his or her individual capacity, the plaintiff must allege that the defendant was personally involved in the actions constituting a violation of the plaintiff's constitutional or statutory rights. *See, e.g., Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (a § 1983 plaintiff must show that each defendant "encouraged the specific incident of misconduct or in some other way directly participated in it"). But when only prospective injunctive relief is requested, that type of showing is unnecessary. The proper defendants in such an action are the ones who have the power to provide the relief sought, whether or not they were involved in the allegedly illegal conduct at issue. Otherwise, plaintiffs in these types of situations would potentially be left without any remedy if the groups of defendants who violated the law and those who could fix the problem if ordered

> to do so were mutually exclusive.
>
> *Ex parte Young*, 209 U.S. at 157, states the applicable principle in this way: "In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act. . . ." That is a different standard than the "personal involvement" test applied in cases like *Bellamy v. Bradley*, which are concerned with liability for money damages. As noted in *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988), "[p]ersonal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action." This Court has expressly followed that holding. *See, e.g., Brown v. Collins*, 2008 WL 4059887, *3 (S.D. Ohio Aug. 25, 2008) (Kemp, M.J.), *adopted and aff'd* 2009 WL 152315 (S.D. Ohio Jan. 20, 2009). Even the governor of a state can be a proper defendant for purposes of obtaining prospective injunctive relief in the proper circumstances based on the governor's duty to enforce the law. *See, e.g., Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n. 5 (6th Cir. 1982).

*Taaffe v. Drake*, No. 2:15-CV-2870, 2016 WL 1713550, at *5 (S.D. Ohio Apr. 29, 2016).

Even cases cited by Defendant Parker ultimately support this distinction, either expressly or implicitly. For example, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court stated broadly that government officials "may not be held accountable for the misdeeds of their agents" and that such an official "is only liable for his or her own misconduct." *Id.* at 677. But that holding was in the context of an action brought under *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971), which can only be pursued against federal officials in their individual capacities.[1] *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) ("[W]hile Plaintiffs characterize their claims as being asserted against Defendants in their 'official capacities,' many of the allegations in the Amended Complaint appear to raise *Bivens*-type claims that may be asserted against federal officials only in their individual capacities."); *Lathan v. United States*, No. 3:18 CV 2175, 2019 WL 857963, at *2 (N.D. Ohio Feb.

---

[1] In fact, the dissent in *Iqbal* observed that the questions under review in that case were: (1) whether certain allegations were "sufficient to state **individual-capacity** claims" against the defendants, and (2) whether a "high-ranking official may be held **personally** liable" for the actions of subordinates. *Id.* at 690 (Souter, J., dissenting) (emphasis added).

22, 2019) (holding that "Plaintiff cannot bring a *Bivens* claim against the United States, its agencies or its employees sued in their official capacities for denial of his constitutional rights" because "[t]he United States has not consented to suit in a *Bivens* action."). The same is true of *Shehee v. Lutrell*, 199 F.3d 295 (6th Cir. 1999). Those decisions did not involve official-capacity claims like the ones raised in the present case.

*Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988), is similarly distinguishable, because the issue on appeal in that case was whether state officials were entitled to qualified immunity. *Id.* at 420. The case does not include any discussion of the capacities in which the state official defendants were sued, but qualified immunity is a defense to damages suits against public officials in their individual capacities and is "not an available defense in an official-capacity suit." *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 483–84 (6th Cir. 2014) (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)). Accordingly, *Poe*, too, dealt only with the standard for a defendant's liability in his or her individual capacity.

*Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010), did involve a prisoner's claims against prison officials in their official and individual capacities. The Sixth Circuit first effectively disposed of the official-capacity claims by holding that the plaintiff's claims for declaratory and injunctive relief were moot and that the defendants were immune from suit for damages in their official capacities. *Id.* at 289. After turning to the claims against the defendants in their individual capacities, the court discussed the personal-involvement standards to make prison officials "**personally** liable" under Section 1983. *Id.* at 292 (emphasis added). Those standards were not the basis for its dismissal of the official-capacity claims. Likewise, the Sixth Circuit in *Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2008), approved dismissal of the plaintiff's claim for damages against prison officials in their official capacities before separately addressing the requirements

7

"for a supervisor to incur **personal** liability." *Id.* at 572, 575 (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (emphasis added). And in *Gregory v. City of Louisville*, 444 F.3d 725, 751–52 (6th Cir. 2006), the Sixth Circuit addressed the liability of individual city employees separately from the liability of the city—the equivalent of any claims against them in their official capacities.

In *Miller*, the Sixth Circuit expressly determined that the lack of allegations that an official was personally involved in a violation indicated that the plaintiff's claim was against the defendants in their official capacities:

> Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995). On appeal, Miller makes no argument that Byam or Cook should incur personal, supervisory liability. Indeed, Miller presents no evidence or argument that these two defendants had any personal involvement in the alleged misconduct. Accordingly, as it appears that Byam and Cook are being sued in their official capacities, we treat the claims against them as being claims against the County.

*Miller*, 408 F.3d at 817 n.3. The court found that the claim for county liability failed for other reasons, but the lack of personal involvement by the official-capacity defendants was not the basis for rejecting the claim.

Of all the cases cited by Defendant Parker in support of his motion to dismiss,[2] the only

---

[2] In their response in opposition to the plaintiff's motion to amend, the defendants also cite this court's recent dismissal of Defendant Parker for lack of personal involvement in *Hugueley v. Parker*, No. 3:19-CV-00598, 2019 WL 3890367, at *2 (M.D. Tenn. Aug. 16, 2019). But that opinion, too, is distinguishable for several reasons. First, Defendant Parker was sued in that case in both his individual and his official capacities, so the personal-involvement standard appropriately applied to the individual-capacity claim. This case does not involve an individual-capacity claim against Defendant Parker. Moreover, there were no allegations in *Hugueley*, as there are here, that Defendant Parker is the only defendant with the authority to provide the full extent of relief sought through the official-capacity claim. After finding that Plaintiff Hugueley failed to state a claim against Defendant Parker in his individual capacity, therefore, there was no reason in that case for the court not to dismiss the official-capacity claim against him as redundant to those against the other defendants in that case, as it did: "Any injunctive relief available to the plaintiff will still be available from the remaining defendants in their official capacities."

one that is not clearly distinguishable is *Bellamy*, in which the Sixth Circuit affirmed a directed verdict for supervisory prison officials where the plaintiff did not show that they had "actively participated in or authorized any harassment" of the plaintiff. *Bellamy*, 729 F.2d at 421. Aside from the phrase "in their official capacities" in the caption of the case, *Bellamy* contains no discussion of the capacity in which the defendants were sued or the type of relief the plaintiff sought from them. But whatever question *Bellamy* might raise about the scope of the personal-involvement standard is adequately answered by more recent cases like *Heyerman v. County of Calhoun*, 680 F.3d 642 (6th Cir. 2012), in which courts are perfectly clear that the standard applies only to individual-capacity claims:

> Persons sued in their **individual capacities** under § 1983 can be held liable based only on their own unconstitutional behavior. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) (unpublished opinion) ("Personal involvement is necessary to establish section 1983 liability"); *see also Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants").
>
> . . .
>
> Section 1983 liability, however, cannot be premised solely on a theory of respondeat superior, or the right to control employees. *Hays v. Jefferson Cty.*, 668 F.2d 869, 872 (6th Cir. 1982). Supervisory officials are not liable in their **individual capacities** unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* at 874. Heyerman's attempt to hold Mladenoff liable in her **individual capacity** for her alleged failure to adequately supervise assistant county prosecutors or for her adherence to or continuation of a policy that, in Heyerman's words, "abdicated" her responsibility "to act on remand orders," "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Phillips v. Roane Cty.*, 534

---

*Hugueley*, 2019 WL 3890367, at *2; *see* Fed. R. Civ. P. 12(f) (authorizing courts to strike any "redundant [or] immaterial" matter); *Jones v. Heyns*, No. 1:12-CV-1341, 2014 WL 1607621, at *3 (W.D. Mich. Apr. 22, 2014) ("Although the Court recognizes that most cases dismissing redundant official capacity claims involve claims against both the entity itself and employees of the entity, courts also dismiss multiple official capacity claims in the prison context, allowing actions to proceed solely against a warden or director in his or her official capacity.") That is not the case here, in light of the plaintiff's distinct allegations.

> F.3d 531, 543 (6th Cir. 2008); *see also Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (indicating that where there is an absence of evidence of personal involvement in the underlying misconduct, failure-to-train claims against individual defendants are properly deemed to be brought against them in their official capacities and are treated as claims against the county).

*Id.* at 647–48 (emphasis added); *see also Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 563 (6th Cir. 2011) (holding that neither defendant "can be held liable in his individual capacity unless he 'either encouraged the specific incident of misconduct or in some other way directly participated in it,' but that either of them might still be "liable, if at all, in his *official* capacity, i.e., rendering the County liable") (emphasis in original); *Price v. Edwards*, No. 17-10601, 2018 WL 802025, at *5 and n.5 (E.D. Mich. Feb. 8, 2018) (holding that plaintiff stated an *Ex Parte Young* claim against state officials in their official capacities, even though his "failure to allege any personal involvement by either . . . defeats the individual capacity claims"); *Burke v. Thompson*, No. 5:15-cv-00007, 2016 WL 2587212, at *8 (W.D. Ky. May 4, 2016) ("A claim that an official failed to supervise, without more, must be brought against a supervisor in his official capacity, not his individual capacity."); *Hundal v. Lackner*, No. EDCV 08-00543-CAS MA, 2011 WL 1935734, at *6 (C.D. Cal. Apr. 12, 2011), *report and recommendation adopted*, No. EDCV 08-00543-CAS, 2011 WL 1979044 (C.D. Cal. May 20, 2011) (rejecting defendants' personal-involvement argument in context of an *Ex Parte Young* claim and explaining "[t]he issue here is not defendants' personal responsibility for the alleged RLUIPA violation, but whether their duties and responsibilities are such that, if plaintiff prevails in this action, they have the authority to grant him relief").

Accordingly, Defendant Parker's argument for dismissal is without merit, and his motion to dismiss will be denied.

## II. AMENDMENT OF THE COMPLAINT

A. STANDARD OF REVIEW

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." "However, a motion to amend may be denied where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). On the point of futility, the United States Court of Appeals for the Sixth Circuit has explained that "where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993). Whether to grant or deny an amendment under Rule 15(a) is usually a matter within the district court's discretion, but it must state a basis for any denial of such a motion. *Riverview Health*, 601 F.3d at 512.

B. ANALYSIS

This case presents several factors supporting leave to amend, including the complexity of the case and the lack of any indication of bad faith or intentional delay in amending the complaint. Moreover, the plaintiff's motion was filed well before the March 20, 2020 deadline for motions to amend in this case. (*See* Doc. No. 28.) The defendants expressly "do not contend there has been any undue delay in filing, bad faith, repeated failure to cure deficiencies, or undue prejudice" in connection with the plaintiff's motion. (Doc. No. 35 at 2.)

Instead, the defendants suggest the motion should be denied because "Plaintiff's counsel gave no notice of an intent to amend the complaint, be it through a phone call, email, or other correspondence." (*Id.* at 3.) They devote much of their response to arguing the question of whether the plaintiff was authorized to file his amendment without agreement or leave of court. (*Id.* at 1–

11

3.)  But that question was rendered moot when the plaintiff filed his motion for leave, and the defendants do not cite any law for the proposition that the plaintiff was obligated to notify them before doing so.  Any implication that the amendment might have been accomplished by consent but for the alleged lack of notice is belied by the defendants' current opposition.  The lack of advance notice, therefore, is not a basis for denying the amendment.

The defendants also oppose the plaintiff's motion to amend on the basis that it would be futile. (Doc. No. 35 at 3–4.)  But for the reasons the court has explained herein, the plaintiff's complaint as amended would withstand Defendant Parker's motion to dismiss.  Accordingly, the plaintiff's motion to amend will be granted.

### III. CONCLUSION

Defendant Parker's motion to dismiss is grounded on a standard that does not apply to this case and will be denied.  For that reason, the plaintiff's timely motion to amend his complaint is not futile, and the defendants have not established any other reason to deny it.  The motion to amend will therefore be granted.

An appropriate order shall enter.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE