# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JON HALL #238941** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CAPITAL CASE** |
| **v.** | ) | |
| | ) | |
| **TONY PARKER,** | ) | |
| **Tennessee's Commissioner of Correction,** | ) | |
| **in his official capacity,** | ) | |
| | ) | |
| **TONY MAYS,** | ) | **No. 3:19-cv-00628** |
| **Warden, Riverbend Maximum Security** | ) | **JUDGE TRAUGER** |
| **Institution, in his official capacity,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **MICHAEL KEYS,** | ) | |
| **Unit Manager, Death Row,** | ) | |
| **in his official capacity,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## FOURTH AMENDED COMPLAINT

---

## I.  INTRODUCTION

1.      Plaintiff Jon Hall ("Plaintiff" or "Mr. Hall"), files this Fourth Amended Complaint to add claims that Defendants have violated the Americans with Disabilities Act and Title 41, chapter 21, section 402 of the Tennessee Code, which prohibits correctional facilities from holding an inmate in solitary confinement for more than thirty days. Mr. Hall is a prisoner on Tennessee's death row, who has been held in solitary confinement with minimal environmental stimulation and virtually no opportunity for meaningful human contact for more than six years, without rational

justification, and without being afforded any meaningful process, grievance procedure, appeal process, or administrative remedy to address his confinement or rectify the serious mental and physical injuries and damage it has caused him.

2.      Mr. Hall suffers underlying mental and psychological disabilities and cognitive impairment making him particularly vulnerable to the mental and psychological effects of prolonged segregation in solitary confinement. The cumulative effect of this extreme punishment, and a corresponding deprivation of adequate psychological and medical care, has caused Mr. Hall to suffer a serious deprivation of the most basic constitutional guarantees of humane treatment.

3.      Defendants have been aware of the substantial risk of physical and psychological harm caused by committing Mr. Hall to permanent solitary confinement and they have acted with deliberate indifference to that risk. Mr. Hall has also suffered physical injury, especially a recent injury to his arm, to which Defendants have been deliberately indifferent and have failed to rectify. As a result, Mr. Hall has in fact suffered serious physical and psychological harm in violation of the Eighth Amendment.

4.      In addition, Defendants have violated Mr. Hall's rights guaranteed by the Due Process Clause of the Fourteenth Amendment. Placing Mr. Hall in a permanent state of solitary confinement is a deprivation of a legally cognizable liberty interest.

5.      Moreover, the deprivation of adequate psychological and medical care has in turn ensured that Mr. Hall lacks due process to address his confinement. Mr. Hall is caught in a catch-22—to get out of solitary confinement he must be psychologically healthy, but the conditions of his confinement cause him psychological damage, and the lack of psychological treatment means he cannot recover sufficiently to get out of solitary confinement. This catch-22 due process

violation arises directly from the policies and procedures of the Tennessee Department of Corrections, which Defendant Parker runs and has the authority to change.

6.      Furthermore, Defendants have violated Mr. Hall's rights under the Equal Protection Clause of the Fourteenth Amendment by treating him in a different manner from other similarly situated prisoners. Other prisoners have either not been placed in solitary confinement or have been released from solitary confinement for more egregious and recent violations than the six-year-old infractions that serve as the basis for Mr. Hall's solitary confinement.

7.      This disparate treatment is, additionally, a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. Mr. Hall is denied access to programs, benefits, services, and facilities that are available to other prisoners. He is denied this access because of his mental disability, and the Defendants have failed to make a reasonable accommodation for him.

8.      Finally, Defendants' actions are a direct violation of long-standing Tennessee statutory law. Tenn. Code Ann. § 41-21-402 states that the punishment of solitary confinement for disciplinary infractions "exceed thirty (30) days for each offense," but Mr. Hall has been held in solitary confinement far longer than thirty days without committing a new offense each thirty days.

9.      Mr. Hall has specifically requested psychological counseling so that he might improve his conditions, only to have Defendants deny that counseling. Defendants have further denied grievances filed by Mr. Hall to address his situation, including a recent grievance via which Mr. Hall requested psychological counseling.

10.      Through this action, Mr. Hall seeks a declaration that the Defendants' conduct violates 42 U.S.C. § 1983, the Americans with Disabilities Act, state statutory law, as well as the Eighth and Fourteenth Amendments to the United States Constitution, and he seeks injunctive relief as fashioned by this Court sufficient to address Mr. Hall's psychological and medical needs

and to provide him a path for relief from his prolonged and indeterminate solitary confinement. He also seeks psychological counseling and treatment to redress the deleterious psychological effects of his long term isolation in solitary confinement and appropriate medical care to address his serious medical needs. The relief Mr. Hall seeks is systemic in nature and involves changes to the policies and procedures set and controlled by Defendant Parker.

## II. JURISDICTION AND VENUE

11.     Mr. Hall's claims arise under the Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, the Americans with Disabilities Act, and Tenn. Code Ann. § 41-21-402.

12.     This court has jurisdiction for claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Mr. Hall's state law claim pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391 (b)(2) in that a substantial part of the events or omissions giving rise to the claims brought by Mr. Hall have occurred in this district.

## III.  PARTIES

14.     Plaintiff is 55 years old. He has been in prison for the past 22 years. He was convicted of first degree murder and sentenced to death in 1997. He has been confined in jail awaiting trial or in prison for the past 25 years and has been held in solitary confinement for nearly six years. Mr. Hall has been sentenced to execution in the event that pending post-conviction proceedings are not successful.

15.     Defendant Tony Parker is the Commissioner of the Tennessee Department of Corrections ("TDOC"). He provides final approval of rules applicable to death row inmates and is ultimately responsible for TDOC's policies and procedures, as well as for funding necessary to provide resources to prisons, prison personnel, and ultimately to prisoners. As the Commissioner, Defendant Parker has the authority to make changes in Mr. Hall's procedures and living conditions. Mr. Parker is the only Defendant with the authority to provide all of the systemic changes and resources Mr. Hall seeks in this case. He is sued in his official capacity.

16.     Defendant Tony Mays is the Warden of Riverbend Maximum Security Institution ("Riverbend"). He is in charge of implementing rules and procedures for death row. He has the authority to make changes in Mr. Hall's living conditions. He is sued in his official capacity.

17.     Defendant Michael Keys is Mr. Hall's Unit Manager. He too has responsibility for implementing rules and procedures for death row. He has authority to review and approve recommendations to change Mr. Hall's living conditions. He is sued in his official capacity.


## IV.  CLAIM FOR RELIEF

18.     Mr. Hall is on death row at the Riverbend Maximum Security Institution in Nashville, Tennessee. Death row at Riverbend is composed of 96 cells in 4 pods. Each pod has two tiers, with 12 cells on each tier. The conditions of confinement on death row are guided by policies and procedures that classify prisoners at different levels known as A, B and C. When a prisoner first enters death row, he or she is immediately placed at Level C, also known as mandatory segregation or solitary confinement, for 18 months. The classification level is reviewed the first time after these 18 months have passed. Every month following the first reclassification,

the inmate's status level is reviewed again through Unit Review Panel Hearings conducted by a Unit Review Panel consisting of a group of staff appointed by the Unit Manager.

19. Level C is the most severe and restrictive form of incarceration on death row. Based on factors considered by the Unit Review Panel, a Level C prisoner can be recommended to be elevated to Level B. After reaching Level B, the Unit Review Panel can recommend a prisoner be elevated to Level A. Reaching Level B or Level A means the prisoner is allowed many more privileges and opportunities for human contact.

20. In Mr. Hall's case, the classification system and the Unit Level Review procedures set by TDOC and under the control of Defendant Parker have proved meaningless. Defendants have arbitrarily, and without legitimate penological interest, intentionally maintained Mr. Hall in a prolonged and indefinite state of the most restrictive state of solitary confinement.

21. The policies and procedures set by TDOC and under the control of Defendant Parker are such that Defendants have intentionally, or with reckless indifference, denied Mr. Hall any meaningful review of their decisions, and the opportunity for elevation to higher levels.

22. Mr. Hall is forced to live in extreme isolation for 24 hours a day in a cell about eight feet wide, twelve feet long and eight feet tall. The cell has a concrete floor and concrete walls. There is one window that is approximately four inches wide and four feet high that does not open. Outside the window, Mr. Hall can only see the back of the A-pod recreation cage, a razor wire fence, a road that enters the prison's main entrance, and an airport where airplanes can take off and land in the far distance. The cell contains a steel framed bed with a thin mattress, a small desk, a TV and radio, a used word processor, and a stainless steel toilet and sink and an in-cell shower. The door to his cell is made of solid steel and includes a service slit opening/flap and a rectangular in-set window that looks into the pod. The air in his cell is recycled, often leaving him

uncomfortably hot or cold. He is served all meals by a guard through the slit opening/flap in the door. Mr. Hall eats, sleeps, washes and uses the toilet all within his small concrete and steel cell.

23.     Mr. Hall describes his conditions of confinement as akin to eating and sleeping in your bathroom.

24.     Through the rectangular in-set window in the door to his cell, Mr. Hall can see the other death-row inmates socializing, eating together, and otherwise spending time together. Mr. Hall is thus able to see prisoners exercising the privileges that are denied to him, further aggravating his mental anguish as to his conditions of confinement and further elevating his depression.

25.     As a matter of policy, Mr. Hall is allowed one hour out of his cell a day for exercise by himself in a small wired cage. Since being placed into solitary confinement, he has never been allowed into the cage with another person. Due to his poor physical and mental health, as well as depression resulting from and arising while held in solitary confinement, Mr. Hall has not been out of his cell to the exercise cage in a long time.

26.     Per the policies and procedures that Defendant Parker has set and has the authority to change, Mr. Hall is not allowed to have a normal human conversation with another prisoner. Prisoners who have Level A status and who are allowed outside of their cells are instructed to stay at least six feet away from Mr. Hall's door, making any communication with other inmates very difficult if not entirely impractical. If Mr. Hall shouts out to other prisoners through the slit opening/flap in his cell door, he exposes himself to a misconduct charge which would adversely impact his ability to move to a less restrictive level.

27.     Per the policies and procedures that Defendant Parker has set and has the authority to change, Mr. Hall is not allowed to join any other inmates for vocational, recreational,

educational, or behavioral programming or group religious services. Outside religious and vocational visitors are not allowed to see Mr. Hall.

28.     Administrative conditions regarding the amount and circumstances of communication opportunities with the outside world are also extremely limited for Mr. Hall. He shares a phone with eight other prisoners. The phone is essentially a pay phone on a steel base with rollers that can be pushed to his cell and the receiver passed through the slit opening/flap in his door. Charges for local calls are $2.30 for thirty minutes. Long distance in-state calls cost approximately $9.00 for thirty minutes. When he is able to gain access to the phone, calls have to be collect or pre-paid. Mr. Hall has no access to email.

29.     Visitation in Mr. Hall's case is extremely restrictive.

30.     The list of people permitted to visit is highly restricted. Essentially, the only people who may visit Mr. Hall are his family, his attorneys, and the prison chaplain (since outside religious visitors are not permitted). He has children, but he is estranged from them.  Mr. Hall's sister lives far away and rarely comes. Her last visit—a non-contact visit, meaning Mr. Hall could not embrace, touch, or otherwise have any physical contact—was in August of 2018.

31.     Visitation with legal counsel is also restrictive in Mr. Hall's case. During visits with counsel, Mr. Hall's hands remain handcuffed to a belly waist chain and his feet remain shackled.

32.     Because of the very limited nature of his life in his cell, his extremely limited amount of recreation time (which, because of his poor physical health and depressed mental state, Mr. Hall does not use), and his lack of visitations, Mr. Hall's days are always the same.

33.     Mr. Hall describes his days as being similar to the movie Groundhog Day, or like being buried alive.

34.     Solitary confinement of such prolonged duration has caused substantial harm and continues to place Mr. Hall at risk of substantial harm to his physical health due to the extraordinary restrictions on both his mobility and ability to exercise, the effect that his solitary-induced mental health condition has on his motivation and ability to sleep, and the extreme stress placed on him by his conditions of confinement. Mr. Hall has gained weight and generally suffers from poor physical health.

35.     The nature of his confinement has caused Mr. Hall to suffer direct physical harm, which Defendants have refused to rectify. For example, on June 9, 2019, Mr. Hall injured his arm so seriously that he needs physical therapy. Despite the injury, he was never given a cast for his arm. Subsequently, officials at Riverbend admitted that Mr. Hall needs physical therapy, but when they took him for special needs treatment, he was informed that the healthcare providers were unable to provide the therapy that he needs. Mr. Hall was further informed that his arm was broken in two places, but because twenty-five days passed between his injury and when he was seen, his arm could not be set. As of the filing of this complaint, Defendants have failed to provide the physical therapy that Mr. Hall needs.

36.     In addition to the substantial harm caused to his physical health, Mr. Hall has suffered harm to his mental health. He had a history of psychological, emotional and cognitive impairment before he was committed to permanent solitary confinement, having been diagnosed as having a debilitating neurological, psychological, and functional impairment.

37.     Mr. Hall's crime itself was the result of psychological, emotional, and cognitive impairment—he killed his wife in an emotional altercation. This fact is well known to the Defendants through, among other means, their involvement in his post-conviction litigation.

38.     The death of his wife and the subsequent estrangement from his children has caused Mr. Hall to suffer from severe depression. Defendants are well aware of Mr. Hall's depression, yet they have failed to offer Mr. Hall cognitive therapy or to train personnel at Riverbend as to how to work with individuals suffering from such severe psychological impairment.

39.     Defendant Parker as Commissioner of TDOC has failed to provide the resources in the form of training and pay commensurate with the level of training that personnel at Riverbend need to work with Mr. Hall and other individuals suffering from such severe psychological impairment.

40.     The conditions under which Mr. Hall is confined—alone in his cell 24 hours a day, 7 days a week, 365 days a year—make his mental conditions worse due to the sensory deprivation and lack of social interaction that accompany this extreme form of punishment.

41.     Indeed, as a result of his solitary confinement and social isolation, Mr. Hall repeatedly suffers from delusions and conspiracy theories.

42.     The decline in Mr. Hall's physical and mental health makes it difficult to perform basic tasks: he reports difficulties thinking, inability to focus, lack of concentration and short-term memory, stress, anxiety, irritability, tunnel vision (in which his attention becomes stuck on intensely unpleasant thoughts), excessive sleeping, and depression. Neuroscience has established that prolonged isolation damages brain function and physically diminishes parts of the brain. Mr. Hall's deepening physiological and mental health problems are well established adverse reactions to prolonged solitary confinement.

43.     Despite the obvious and thoroughly documented risks and harms that result from long-term solitary confinement, and despite knowing of his mental health condition, Defendants have been deliberately indifferent to the psychiatric and emotional harm caused by his solitary

confinement. Once a month, Mr. Hall is visited by a psychologist for only a few minutes at his cell door. This "mental health review" is done in conjunction with the monthly Unit Level Review Panel Hearing that also takes place at his cell front. Defendants have not provided Mr. Hall adequate psychological and psychiatric treatment; he has no meaningful psychiatric treatment at all. Per the policies Defendant Parker has set and has the authority to change, Mr. Hall is not permitted to engage in individual therapy, group therapy, or structured educational, recreational, or life-skill-enhancing activities. Mr. Hall receives some ground-up medications that the prison personnel assert are psychiatric medicines; however, because those medicines are ground up, he does not trust the medicines and refuses to take them.

44.     The mental health staff at Riverbend are aware of Mr. Hall's condition and that solitary confinement exacerbates it. On several occasions, the Riverbend mental health staff have recommended that Mr. Hall be moved out of solitary confinement because of his mental illness, but Defendants have not acted on that recommendation.

45.     Mr. Hall has also specifically requested cognitive retraining and other psychological aid to help him overcome his conspiracy theories and other delusions. In October 2019 he specifically requested such help via grievance #19-0368/00338190, but Defendants (and their supporting personnel) denied this request, stating that the grievance process cannot be used to "change a medical diagnosis."

46.     Mr. Hall has been held in solitary confinement for over six years and the remedy he ultimately seeks is to be released from solitary confinement.

47.     Tennessee's standard grievance procedure gave Mr. Hall no opportunity to challenge his custody level. If there were any procedures available to him, they were not knowable by him or any other prisoner in his situation or they were so confusing that no inmate could make

use of them. It should be noted here that Defendant Mays, the Warden of Riverbend, was unaware of any procedure by which Mr. Hall could challenge his custody level.

48.     In Mr. Hall's case, the entire classification system and the Unit Level Panel Review Hearings have turned out to be meaningless. Although Defendants have represented to Mr. Hall that his living conditions can change and that he will be rewarded for his good behavior, these representations have proven false. Defendants Mays and Keys always exercise their unconstrained authority to keep Mr. Hall in the most restrictive conditions of solitary confinement.

49.     Defendants claim Mr. Hall's solitary confinement is necessary because he is a "safety and security risk." But Defendants have not actually assessed whether Mr. Hall remains a safety and security risk. Defendants' deliberate indifference to the known serious risks of harm caused by prolonged solitary confinement and their lack of any assessment of Mr. Hall's current safety and security risk is an arbitrary exercise of power, not the fair result of any reasonable process.

50.     The Unit Level Panel Review Process, a procedure set by TDOC which only Defendant Parker can change,[1] creates a deck that is stacked against a person with the cognitive and psychological difficulties Mr. Hall suffers from. Because of his solitary confinement and lack of social interaction, Mr. Hall suffers from severe depression and conspiratorial delusions. These handicaps in turn cause him to feel hopeless—as if he is "buried alive" or living in the movie Groundhog Day—such that he engages in verbal remonstrances against his conditions. Then those verbal outbursts are used as an excuse to keep him in solitary confinement.

---

[1] Presumably, Tennessee Governor Bill Lee also has the authority, via executive order, to change TDOC's procedures; however, per the standards set out in *Ex Parte Young* and subsequent case law, Mr. Hall sues the Tennessee state official most responsible for and connected to the unconstitutional policies and procedures—in this case, that is Defendant Parker.

51.     For Mr. Hall, the entire situation is Kafkaesque. His conditions cause Mr. Hall psychological harm. Suffering as he does, Mr. Hall engages in verbal outbursts. Those outbursts are then used as the basis to keep him in the conditions that continue and increase the psychological harm.

52.     To use another literary analogy, Mr. Hall faces a catch-22. To get out of solitary confinement, he must exhibit good behavior, including good verbal behavior. But the mental harm caused by his solitary confinement makes it impossible for him to exhibit the behavior necessary.

53.     The process provided by the prison is therefore illusory. Because of the mental conditions the Defendants have caused by placing Mr. Hall in solitary confinement for nearly six years, he is unable to do what the prison requires for him to get better conditions. There is no due process because there is no process available at all that Mr. Hall could use. His solitary confinement will be interminable.

54.     For Mr. Hall to break this cycle, he must have improved conditions and/or receive mental and psychological help. But Defendants have denied that to Mr. Hall. When he filed a grievance asking for precisely such help, it was denied on the spurious ground that Mr. Hall's request for cognitive retraining was an attempt to challenge a medical diagnosis.

55.     Mr. Hall is therefore denied due process, both as to the Unit Level Review Process and as to other procedures he can ostensibly use to improve his conditions.

56.     To unwind this bureaucratic, Kafkaesque knot, Mr. Hall needs systemic change to TDOC's policies and procedures—including but not limited to adequate training, psychological and medical care, more humane conditions, and funding for the above. Defendant Parker is the only official with the authority to provide that necessary relief.

57.     Furthermore, upon information and belief, Mr. Hall has also been deprived of the equal protection of the law.  On information and belief, other prisoners who have engaged in violent and significantly more dangerous behavior while in prison than Mr. Hall have either not been placed in solitary confinement or have not been kept in similar solitary confinement conditions for years.

58.     Mr. Hall has had fewer and less severe disciplinary incidents than other inmates who have been granted Level B and Level A status. For example, a number of death row inmates who are on death row for heinous incidents while in prison, such as murdering another inmate, have obtained A Level status, lost it and had it reinstated. Other death row inmates have assaulted guards and have been granted and lost and regained A Level status. Several death row inmates have been caught with cell phones on death row and have nonetheless been granted A and B level status. But Mr. Hall has never killed another inmate and has not assaulted a guard for at least five years.

59.     Mr. Hall is being punished uniquely, in a way other prisoners are not being punished.  Therefore, he is a class of one—he has been treated differently than other, similarly situated prisoners.

60.     Placing Mr. Hall in a permanent state of solitary confinement is a deprivation of a legally cognizable liberty interest. Mr. Hall has no meaningful procedural ability to present any rebuttal to the Defendants' decisions or other procedural safeguards to prevent such arbitrary decisions. He has unsuccessfully submitted grievances and tried to appeal decisions relating to his living conditions to no avail. He has written letters to the Defendants on the subject, but they go unanswered. Without a change in procedures and policies, there is simply no meaningful review

process available to Mr. Hall other than that offered by this Court. He has exhausted all available administrative remedies.

61.     Mr. Hall has a significant interest in leaving these restrictive conditions and serving some part of his remaining life outside of solitary confinement.

62.     Mr. Hall's prolonged and indefinite detention in solitary confinement presents an atypical and significant hardship in relation to other prisoners on death row who are able to have contact visits, time outside their cells, participation in activities, and human contact.

63.     Defendants' decision to keep Mr. Hall in a permanent state of mandatory solitary confinement inflicts, and will continue to inflict, great mental suffering as well as physical distress upon Mr. Hall.

64.     The duration of Mr. Hall's solitary confinement and the corresponding denials of basic human needs such as social interaction, environmental stimuli, exercise, sleep and proper psychological and medical care which attend Mr. Hall's long-term isolation demonstrate that his conditions of confinement are so objectively sufficiently serious as to constitute a denial of the minimal civilized measure of life's necessities.

65.     Existing court precedent has established that long-term placement in solitary confinement results in the deprivation of basic human needs. *See, e.g., In re Medley*, 134 U.S. 160, 168, (1890); *Davis v. Ayala*, 135 S. Ct. 2187, 2210 (2015) (Kennedy, J., concurring) ("[R]esearch still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price").

66.     The Fourth Circuit Court of Appeals recently found that "[p]rolonged solitary confinement exacts a heavy psychological toll that often continues to plague an inmate's mind even after he is resocialized." *Incumaa v. Stirling*, 791 F.3d 517, 534 (4th Cir. 2015). The Third Circuit

recently reviewed the "robust body of scientific research on the effects of solitary confinement" and found a "scientific consensus" that such confinement "is psychologically painful, can be traumatic and harmful, and puts many of those who have been subjected to it at risk of long-term . . . damage." *Williams v. Sec'y Penn. Dep't of Corr.*, 848 F.3d 549, 566-67 (3d Cir. 2017), *cert denied sub nom. Walker v. Farnam*, 138 S. Ct. 357 (2017), and *cert denied sub nom. Williams v. Wetzel,* 138 S. Ct. 357 (2017); *see also, e.g., Grissom v. Roberts*, 902 F.3d 1162, 1176-77 (10th Cir. 2018) (Lucero, J., concurring) (reviewing academic literature and determining that "solitary confinement, even over relatively short periods, renders prisoners physically sick and mentally ill . . .. These harms, which are persistent and may become permanent, become more severe the longer a person is exposed to solitary confinement.").

67.     A number of courts have also found—based on empirical evidence—that solitary confinement poses an objective risk of serious psychological and emotional harm to inmates, and therefore can violate the Eighth Amendment. *See, e.g., Johnson v. Wetzel*, 209 F. Supp. 3d 766 (M.D. Pa. 2016) (the Eighth Amendment protects an inmate's physical and mental health and the denial of basic human needs caused by long-term isolation violates the Eighth Amendment); *Palakovic v. Wetzel*, 854 F.3d 209, 225-26 (3d Cir. 2017) ("acknowledg[ing] the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement"); *Ashker v. Brown*, No. C 09-5796, 2013 WL 1435148, at *4-5 (N.D. Cal. Apr. 9, 2013); *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678-79 (M.D. La. 2007) ("it is obvious that being housed in isolation in a tiny cell for 23 hours a day for over three decades results in serious deprivations of basic human needs"); *McClary v. Kelly*, 4 F. Supp. 2d 195, 208 (W.D.N.Y. 1998) ("[T]hat prolonged isolation from social and environmental

stimulation increases the risk of developing mental illness does not strike this Court as rocket science").

68.     Most recently, the Fourth Circuit Court of Appeals found that "the challenged conditions of confinement on Virginia's death row -- under which inmates spent, for years, between 23 and 24 hours a day alone, in a small . . . cell with no access to congregate religious, educational, or social programming pose a substantial risk of serious psychological and emotional harm." *See Porter v. Clarke*, No. 18-6257, 2019 U.S. App. LEXIS 13398 (4th Cir. May 3, 2019) (internal quotations omitted).

69.     Mr. Hall himself has put Defendants on notice that his excessive incarceration in solitary confinement has deprived him of basic human needs through grievances, appeals and letters. In addition, the precedent cited above and widely published psychological and penological academic literature describing and quantifying mental health effects of prolonged solitary confinement have put Defendants on notice of the harm. *See, e.g.*, citations and statements in "Brief of Amici Curiae Professors and Practitioners of Psychiatry In Support of Plaintiffs-Appellees and Affirmance" in *Porter v. Clarke*, 2019 U.S. App. LEXIS 13398. A copy of the Amici Curiae Brief is incorporated here by reference and attached as Exhibit A. The risks associated with being forced to live in a very small concrete and steel area, in complete isolation for nearly 6 years, are so obvious that no reasonable person can claim to be unaware of them.

70.     Defendants have been aware of and deliberately indifferent to the harms and risks of severe mental pain and suffering caused by Mr. Hall's long-term solitary confinement. Despite this knowledge, Defendants have held Mr. Hall in solitary confinement without penological purpose. Defendants knew or reasonably should have known that their actions would violate the constitutional rights of Mr. Hall.

71.     When Mr. Hall asks why he remains in solitary confinement after years of good conduct, Defendants have articulated no valid basis. Defendants' refusal to give Mr. Hall the treatment he needs for his mental and psychological health so that he might improve his conditions, coupled with policies and procedures that make it impossible for him to improve his conditions without that treatment, indicates their readiness to hold Mr. Hall in solitary confinement for the rest of his life. Defendants knew or reasonably should have known that their actions would violate Mr. Hall's constitutional rights.

72.     Defendant Parker is the state official with the authority and position to effect positive change. As Commissioner of TDOC, Defendant Parker has the authority to provide adequate training, increased pay commensurate with that training, additional personnel, improved living conditions, more flexible and forgiving review procedures coincident with the increased training and improved conditions, and ultimately an alternative to interminable solitary confinement.

## V. CAUSES OF ACTION
## COUNT I: EIGHTH & FOURTEENTH AMENDMENTS (CRUEL AND UNUSUAL PUNISHMENT)

73.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

74.     By their policies and practices described herein, Defendants have deprived and continue to deprive Mr. Hall of the minimal civilized measure of life's necessities, and have violated his basic human dignity and his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution for each of the reasons set forth below.

75. First, the cumulative effect of extremely prolonged solitary confinement, along with the deprivation of good medical and mental health care, and other crushing conditions of Mr. Hall's confinement constitute a serious deprivation of at least one of his basic human needs, including but not limited to normal human contact, environmental and sensory stimulation, mental and physical health, physical exercise, sleep, nutrition, and meaningful activity.

76. Second, extremely prolonged exposure to these deprivations of basic human needs is currently imposing serious psychological pain and suffering and permanent psychological and physical injury on Mr. Hall.

77. In addition to his current psychological and physical pain, the likelihood that Mr. Hall will remain in solitary confinement for the foreseeable future subjects him to a significant risk of future debilitating and permanent mental illness and physical harm.

78. Third, Defendants' actions, individually and collectively, in depriving Mr. Hall of necessary treatment and thereby ensuring Mr. Hall stays in solitary confinement are not legitimately related to security or other penological needs of isolating a prisoner from others, but rather are an arbitrary exercise of power rather than the result of a fair and reasonable process.

79. Finally, Defendants' continuation of Mr. Hall's solitary confinement for nearly 6 years under debilitating and extreme conditions strips him of his basic dignity and humanity in violation of contemporary standards of human decency and constitutes cruel and unusual treatment prohibited by the Eighth and Fourteenth Amendments to the United States Constitution.

80. The policies and practices complained of herein have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities.

81.     Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

82.     It should be obvious to Defendants and to any reasonable person that the conditions imposed on Mr. Hall for so many years causes tremendous mental anguish, suffering, and pain. Moreover, Defendants have repeatedly been made aware, through administrative grievances and written complaints that Mr. Hall is currently experiencing significant and lasting injury. Defendants have been deliberately indifferent to his serious medical and psychological needs.

## COUNT II: FOURTEENTH AMENDMENT
### (DUE PROCESS AND EQUAL PROTECTION)

83.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

84.     Defendants, acting under color of state law in their official capacities, have deprived Mr. Hall of a liberty interest without due process of law by: (1) failing to provide Mr. Hall with notice of what he can do to get relief from the conditions of his solitary confinement; (2) placing Mr. Hall in a position that exacerbates his mental conditions thereby preventing him from exhibiting the behavior necessary to be released from solitary confinement; (3) creating a review process that makes it impossible for Mr. Hall to exhibit the behavior necessary to get out of solitary confinement and thereby making a predetermination that Plaintiff will stay in solitary confinement until he dies; (4) failing to provide the mental health treatment Plaintiff must have to make the review process work; (5) denying Plaintiff's requests for cognitive therapy based on spurious grounds related to his diagnosis rather than engaging the substance of his complaint; and (6) failing to provide a meaningful appeal of these decisions, thus rendering the Level classification system and the periodic reviews he receives substantively and procedurally meaningless. Defendants'

arbitrary decisions and their denial of due process are in violation of the Fourteenth Amendment to the United States Constitution.

85.     The conditions and the duration of Defendants' confinement of Mr. Hall constitute an atypical and significant hardship as compared with the ordinary incidents of prison life on death row for three basic reasons: (a) the exceedingly harsh and isolated conditions of solitary confinement; (b) the lengthy duration of solitary confinement; and (c) the cumulative adverse physical and psychological effects that result from such confinement.

86.     Mr. Hall has been held in the extreme conditions described above for nearly 6 years. Upon information and belief, this prolonged commitment to solitary confinement is atypical in comparison to the ordinary disciplinary and administrative segregation imposed in Tennessee on death row or otherwise.

87.     Because indefinite commitment to solitary confinement constitutes a significant and atypical hardship, Mr. Hall is entitled to meaningful notice of how he might alter his behavior to get relief, as well as meaningful and timely periodic reviews and appeals to determine whether he still warrants solitary confinement. Defendants have denied and continue to deny any such notice or meaningful review.

88.     Defendants, acting under color of state law in their official capacities, also violate Mr. Hall's due process rights by retaining him in conditions that amount to an atypical and significant hardship without legitimate penological interest, as this detention occurs without reliable evidence that providing relief from the harsh conditions of solitary confinement will present a danger to the safety and security of other prisoners or prison staff.

89.     Defendants have also denied Mr. Hall the equal protection of the law. Defendants intentionally treated Mr. Hall differently from others similarly situated and there was no rational basis for the difference in treatment.

90.     Other death row inmates have committed the same infractions but have not been placed in solitary confinement or have been released from solitary confinement. Moreover, other prisoners have committed far worse infractions, including the murder of other inmates and violent attacks on prison personnel, yet they either were not placed in the same level of solitary confinement as Mr. Hall or have been released from those confinement conditions.

91.     Defendants have rendered the periodic review processes and the mental and/or medical health evaluation processes meaningless and of no effect as those processes relate to Mr. Hall while these same processes are appropriately, properly, and/or meaningfully applied to other similarly situated prisoners at Riverbend.

92.     Other prisoners committing the same or similar crimes and having the same or similar disciplinary records while in solitary confinement have been afforded meaningful reviews and meaningful procedural safeguards to protect their Due Process and Constitutional rights resulting in level changes and/or release from solitary confinement further illustrating that any penological justifications advanced by Defendants for Mr. Hall's prolonged and continued solitary confinement are pretext for his predetermined indefinite period of solitary confinement.

93.     Defendants have intentionally and consistently ignored periodic Unit Level Review recommendations and recommendations by medical and/or mental health care professionals to change Mr. Hall's level.

94.     Mr. Hall has been treated different from other similarly situated individuals without a legitimate state interest to justify the treatment. There is no rational basis for the different

treatment of Mr. Hall. Mr. Hall has therefore suffered an equal protection violation under the class of one theory.

95.     Each Defendant, individually and collectively, have violated Mr. Hall's rights under the Fourteenth Amendment of the United States Constitution to due process review of the ongoing necessity of his solitary confinement.

## COUNT III: AMERICANS WITH DISABILITIES ACT

96.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

97.     The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the public entity, or be subjected to discrimination by any entity."

98.     The ADA "unambiguously extends to state prison inmates." *Penn. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 208 (1952).

99.     Mental illness is a disability within the ambit of the ADA.

100.    Mr. Hall suffers from a mental illness and/or mental impairment, there is a record of such impairment and Mr. Hall is regarded as having such an impairment within the meaning of 42 U.S.C. § 12102.

101.    Mr. Hall's mental illness, even when mitigated through medical treatment, constitutes a mental impairment that substantially limits him in several major life activities, including, but not limited to, learning, reading, concentrating, thinking, communicating, and neurological limitations. These limitations on his life activities have a profound effect on Mr. Hall's life.

102.     Mr. Hall suffers severe limitation of major life activities as a result of progressively deteriorating neurological functions. Specifically, Mr. Hall suffers from short-term memory loss, significant stress, anxiety, and depression, irritability, tunnel vision, and excessive sleeping, all of which are categorized as neurological limitations to major life activities under 42 U.S.C. §§ 12102(2)(A)-(B).

103.     Mr. Hall is a qualified individual with a disability as defined in 42 U.S.C. § 12102.

104.     Defendants have knowledge of Mr. Hall's disability.

105.     On several occasions, Defendants have deliberately ignored recommendations by the Riverbend mental health staff that Mr. Hall be moved out of solitary confinement as a result of his mental illness.

106.     Accordingly, Mr. Hall has been discriminated against *per se* because 42 U.S.C. §§ 12101(a)(2) and (a)(5) designate the isolation and segregation of individuals with disabilities as a serious and pervasive form of discrimination.

107.     Defendants are public entities within the meaning of 42 U.S.C. § 12131.

108.     Mr. Hall is entitled to be free from discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

109.     Riverbend is a public entity that provides services including, but not limited to, rehabilitation programming, medical care and mental health care.

110.     Solitary confinement is a denial of and/or results in the denial of the services, programs and activities that Riverbend offers inmates to rehabilitate and/or address mental, emotional and physical health issues.

111.    Mr. Hall has been denied access to groups, activities, group therapy and proper medical and mental health treatment by virtue of the extremely restrictive conditions of his solitary confinement.

112.    Mr. Hall's mental health care is comprised only of brief check-ins at the door of his cell.

113.    The restrictions on Mr. Hall's medical and mental health care as well as the restrictive manner, method, mode and frequency of his medical and mental health care is all controlled by and/or dictated by Defendants, their actions, and their policies and procedures.

114.    Defendants are required to provide reasonable accommodations and/or modifications in policies, practices, or procedures needed by qualified mentally ill inmates such as Mr. Hall to benefit from the services provided by Riverbend.

115.    Defendants failed to make or implement accommodations and/or reasonable modifications needed by Mr. Hall, who suffers from a mental illness disability.

116.    Defendants failed to accommodate Mr. Hall's mental disabilities and denied him the benefits and services of their facilities by reason of his mental disability by, among other things, holding Mr. Hall in solitary confinement for years despite his mental impairment, failing to provide him an alternate means to progress out of solitary confinement and failing to account for his mental illness in the repeated reviews of his segregation.

117.    Defendants' failure to make reasonable accommodations is tantamount to denying access and is a violation of the ADA.

118.    Defendants' discrimination was intentional and/or represents deliberate indifference to the strong likelihood that the actions and/or omissions, and to the extent applicable,

adoption of the policies that led to these actions and/or omissions, would likely result in a violation of federally protected rights.

119.    Defendants' discriminatory actions and/or omissions are the proximate cause and cause in fact of Mr. Hall's injuries and an exacerbation of his mental illness.

## COUNT IV: TENN. CODE ANN. § 41-21-402

120.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

121.    Tenn. Code Ann. § 41-21-402 states that prisoners may be punished by solitary confinement for "any… violat[ion] of any of the regulations of the penitentiary" for a period not exceeding thirty days for each offense.

122.    Riverbend's current policy establishes a minimum punishment of twelve (12) months of isolation in Level C for any infraction.

123.    As a result, Riverbend's punitive policies of 12-month isolation periods is a facial violation of Tenn. Code Ann. § 41-21-402.

124.    This 12-month segregation punitive policy also directly conflicts with TDOC Index #506.16(H), which defines punitive segregation as "[t]he confining of an inmate as a result of a disciplinary conviction, for no longer than 30 days, as punishment for the commission of an infraction."

125.    On several occasions, the Unit Review Hearing Panel has recommended that Mr. Hall be allowed to ascend from Level C to Level B, only for the Warden to overrule the recommendations pursuant to the 12-month punishment policy.

126. Mr. Hall has often come painfully close to completing a 12-month period of isolation, only to be cited for an infraction, which allows the Warden to restart the clock and force Mr. Hall to stay on Level C for at least another 12 months.

127. Facially, and as applied to Mr. Hall, Riverbend's 12-month punitive measures are clear violations of Tennessee law, which sets the maximum punishment for infractions at 30 days of solitary confinement.

## VI. PRAYER FOR RELIEF

125. Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Mr. Hall has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendants, their agents and others working in concert with them, as alleged herein, unless he is granted the relief he requests. The need for relief is critical because the rights at issue are paramount under the United States Constitution.

WHEREFORE, Plaintiff requests that this Court grant him the following relief:

a. Declare that Defendants' policies and practices of committing Plaintiff to prolonged and indefinite solitary confinement under the conditions set forth in this Complaint violate the Eighth and Fourteenth Amendments to the United States Constitution and Tennessee Code Annotated Section 41-21-402;

b. Issue injunctive relief as fashioned by this Court providing for:

i. alleviation of the conditions of Plaintiff's confinement so that Plaintiff is no longer incarcerated under conditions of isolation, sensory deprivation, environmental deprivation, and lack of social and physical human contact;

ii.    meaningful review and rights to appeal decisions regarding the continued need for Plaintiff's solitary confinement and meaningful review of Plaintiff's confinement level in the future;

iii.    adequate medical care to the Plaintiff to provide relief from his cognitive, mental, and psychologic conditions that he already possessed and which have been exacerbated by his solitary confinement, including but not limited to cognitive therapy; and

iv.    adequate medical care to the Plaintiff to provide physical therapy and other relief necessary to heal his injured arm and other medical care as necessary to fix the physical ailments that have arisen as a result of his extended time in solitary confinement;

v.    adequate resources at Riverbend to provide the procedures, review, training, and mental and physical therapy requested herein;

c.    Exercise the Court's discretion to provide funds, either through the funds available to this Court or through coordination with the Federal Public Defender's Office for the Middle District of Tennessee, so that Mr. Hall can engage appropriate experts, including a psychiatrist and physician;

d.    Award the costs of this suit and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable law;

e.    Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court; and

f.    Award such other and further relief as the Court deems just and proper.

Dated:  March 20, 2020                    Respectfully submitted,


                                          */s/William L. Harbison*
                                          William L. Harbison (#7012)
                                          Eric G. Osborne (#29719)
                                          SHERRARD ROE VOIGT & HARBISON, PLC
                                          150 3rd Avenue South, Suite 1100
                                          Nashville, Tennessee  37201
                                          Phone:  (615) 742-4200
                                          Fax:  (615) 742-4539

                                          *Attorneys for Plaintiff Jon Hall*

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email and U.S. mail on this 20th day of March, 2020:

      Thomas J. Aumann
      Eric A. Fuller
      Office of the Tennessee Attorney General
      Civil Law Division
      UBS Building, 20th Floor
      315 Deaderick Street
      Nashville, Tennessee 37243

      *Counsel for Defendants*

                               */s/William L. Harbison*