# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JON HALL #238941 | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:19-cv-00628 |
| | ) JUDGE TRAUGER |
| v. | ) |
| | ) |
| TONY PARKER, et al., | ) |
| | ) |
| Defendants. | ) |

## JOINT STATUS REPORT OF PARTIES RE: ECF 169

Pursuant to the Court's Order, ECF 169, the parties provide the following status report of negotiations related to Section VI.M of TDOC Policy 503.03 (the Death Row disciplinary matrix).

The parties met on January 16, 2025. Present at the meeting were: Eric Osborne and Bill Harbison for Plaintiff Jon Hall; Donna Green and Dawn Jordan for Defendant TDOC. Also present was Jennifer Brenner, the General Counsel for TDOC. The parties discussed the policy at issue and the concerns that Mr. Hall and his attorneys have about the policy.

Ms. Brenner then met with TDOC leadership to discuss the concerns raised in the meeting. After deliberation, TDOC determined that it could not offer any weakening of the current Death Row disciplinary matrix without endangering the safety of the Death Row inmates and prison staff.

**TDOC's Position:** There are a number of reasons for this determination, but two of the most influential are as follows: (1) TDOC has studied the issue and determined that the penological needs are such that the current matrix is appropriate and necessary. Death Row inmates must be treated differently than the general population when there is a disciplinary issue. Like Death Row

1

inmates, other inmates can move to a stricter security level as a result of a disciplinary conviction and thus lose the benefits and freedoms that they enjoyed at their former security level. But the other incidents of a disciplinary conviction are not present on Death Row. Non-Death Row inmates can lose the ability to *earn* sentence credits; they can *lose* sentence credits; discipline can have an adverse effect on future parole decisions; they can be moved to a different facility; and they can be referred to the District Attorney General or US Attorney for additional charges which would increase their time in prison. Death row inmates do not stand to lose an earlier release date, so the length of Program Level demotions must be used to deter disorder and bedlam among a group of inherently violent offenders. (2) All Death Row inmates, even those on Level C, will receive tablets on March 3, 2025 that will allow them to engage in educational programming; engage in approved classes such as parenting classes or life skills classes; watch approved television programs and movies; play approved games such as Sudoku and crossword puzzles; order commissary; access grievance and medical forms; access telemedicine; access Westlaw for legal research; access text and audio books (including any Bible, Quran, or other religious texts available online); correspond electronically with people who are on their visitation, phone, and attorney lists; and other features. TDOC has committed NOT to take these tablets as a disciplinary measure.

     Further, TDOC would point out that C level is not solitary confinement. The inmates are not placed in a dark sensory deprivation cell with no human interaction. The C-level cells are outfitted with private showers, a sink, a toilet, a desk and bookshelves. C-level inmates receive 2 hours a day of recreation in outdoor recreation areas where they can see and talk to other inmates (albeit it at a distance). They receive individual religious counseling; they receive individual

education; they receive 2 hours a week of legal help from legal assistants; they are entitled to two visits from friends and family each week; they may receive packages; they are allowed to do in-cell arts and crafts; they get at least one visit from the mental health team every month with the opportunity to have an out-of-cell meeting with the mental health staff once a month; and very soon, they will have around-the-clock access to all education, entertainment, and communication that the tablets have to offer. In short, a 12-month demotion to Level C is not incongruent with a serious violent disciplinary offense, such as assaulting a prison nurse or murdering a fellow inmate.

TDOC objects to Plaintiff's request for "discovery." This case has been settled. Plaintiff and his counsel agreed to the terms, including the disciplinary matrix. There is no ongoing issue in this case for which there should be discovery.

**Mr. Hall's Position:** Mr. Hall's counsel is grateful for TDOC's time and appreciates that TDOC will soon provide tablets to all inmates, including Mr. Hall, which we expect will be a major improvement in the quality of life of the inmates. But simply giving tablets does not address the issues.[1]

Counsel for Mr. Hall met with TDOC and its counsel on January 16, and after that meeting counsel were hopeful that TDOC would propose adjustments to the level system. Counsel also asked for information about the standard punishments for infractions by non-death-row inmates. On February 6, 2025, counsel learned that TDOC is unwilling to change the level-system infraction matrix one iota.

There are many problems with the current system that are illustrated by Mr. Hall's circumstances. For example, TDOC notes that "a 12-month demotion to Level C is not incongruent

---

[1] Mr. Hall has, via separate motion, filed with this Court to request a computer. Mr. Hall informs counsel that he needs a computer to do legal work and that the tablets will not be sufficient for that purpose.

3

with . . . murdering a fellow inmate." Counsel does not dispute that murder should be severely punished – indeed, we have met many TDOC guards via this process, appreciate their work and professionalism, and earnestly desire for them to be safe. But Mr. Hall was not accused of murder. He was accused of "fighting" in an altercation in which Mr. Hall insists he was the victim who was attacked. Counsel were never provided the video to see if Mr. Hall was indeed innocent, as he asserted, or otherwise. Mr. Hall then insists he was denied a hearing on the infraction. TDOC stated that Mr. Hall waived a hearing. Once again, counsel do not have information to assess the truth. Finally, the documents provided by TDOC show that the normal punishment for "fighting" is 30 days of restrictive custody, but because of the level system and because fighting is classified as a serious offense, Mr. Hall would have been subjected to a year in Level C for an infraction he insists he did not commit, for which he insists he was deprived of due process, and for which the punishment for a non-death-row inmate would be 30 days (plus a loss of good conduct time-served reductions).

These are serious problems that need to be addressed. At a minimum, there is a due process concern whereby it appears that inmates may be falsely accused of infractions and unable to vindicate any rights at all since TDOC does not permit counsel at infraction hearings. Furthermore, it is not clear why fighting should be punished for the same 12-months as murder – in fact, in no other context would assault and murder ever be treated with the same level of punishment. So it appears that TDOC (a) may need to build in some procedural protections for inmates, (b) should consider some changes to the level-system punishment matrix, and (c) at a minimum should look at what is considered a serious offense and what is not, because the punishment for fighting versus murder appears disproportionate, which may be a violation of the Eighth Amendment.

4

Unfortunately, counsel for Mr. Hall do not have adequate information to propose changes, and, since TDOC has not proposed any changes itself, at this stage Mr. Hall's counsel needs more information.

To that end, Mr. Hall's counsel respectfully requests leave of this Court to conduct limited discovery for the purpose of proposing changes to the level system matrix, internal prison due process, and classification of offenses. Specifically Mr. Hall's counsel would like:

(1) Production of documents that show how offenses are categorized under the level system.

(2) The prison's procedures for disciplinary infraction hearings.

(3) Documents showing the rationale and basis for the current matrix and the need for prisoner and guard safety.

(4) Production of the infraction policies and punishments for non-death-row inmates as a comparison.

(5) A deposition of a corporate official of TDOC to obtain TDOC's official position on these issues.

If desired by the Court, counsel respectfully requests that the Court schedule a status conference to discuss these issues.

Respectfully Submitted:

*s/William L. Harbison*
William L. Harbison (#7012)
Eric G. Osborne (#29719)
Alice E. Haston (#38708)
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
Phone: (615) 742-4200
*Attorneys for Plaintiff Jon Hall*

*s/Bradley A. Maclean*
Bradley A. Maclean
1702 Villa Place
Nashville, TN 37212
brad.maclean9@gmail.com
*Guardian Ad Litem*

*/s/ Dawn Jordan* (#20383)
*/s/ Donna Green* (#019513)
Office of the Tennessee Attorney General
P.O. Box 20207 Nashville, TN 37202
Phone: 615-741-6440
dawn.jordan@ag.tn.gov
Donna.green@ag.tn.gov
*Attorneys for TDOC*

6

# CERTIFICATE OF SERVICE

       I hereby certify that the foregoing document has been filed with the Court's Electronic Filing System and that the following have been served via electronic filing:

William L. Harbison (#7012)
Eric G. Osborne (#29719)
Alice E. Haston (#38708)
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201

Bradley A. Maclean
1702 Villa Place
Nashville, TN 37212

On February 10, 2025.

                                          *S/Dawn Jordan*
                                          DAWN JORDAN